```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,    ) CRIMINAL ACTION NO.:
                                   ) 23-343-ACR
 4              Plaintiff,         )
            vs.                    )
 5                                 )
      CHARLES EDWARD LITTLEJOHN,   ) Washington, D.C.
 6                                 ) January 29, 2023
                Defendant.         ) 10:00 a.m.
 7    _____ )

 8
                       TRANSCRIPT OF SENTENCING HEARING
 9                  BEFORE THE HONORABLE ANA C. REYES
                       UNITED STATES DISTRICT JUDGE
10

11    APPEARANCES:

12    For the Government: Jonathan E. Jacobson, Esquire
                          Jennifer A. Clarke, Esquire
13                        U.S. Department of Justice
                          Public Integrity Section
14                        1331 F St. NW
                          Ste 3rd Floor
15                        Washington, DC 20004

16    For the Defendant:  Lisa Manning, Esquire
                          Noah Cherry, Esquire
17                        Schertler, Onorato, Mead & Sears, LLP
                          555 13th Street, N.W.
18                        Suite 500 West
                          Washington, DC 20004
19

20    Also Present:       Andre Wilson, U.S. Probation

21    Reported by:        Christine T. Asif, RPR, FCRR
                          Official Court Reporter
22                        United States District Court
                          for the District of Columbia
23                        333 Contitution Avenue, NW
                          Washington, D.C., 20001
24                        (202) 354-3247

25    Proceedings recorded by machine shorthand; transcript produced
      by computer-aided transcription
```

```
1                    P R O C E E D I N G S

2              THE CLERK:  This is criminal action 23-343, United

3    States of America versus Charles Edward Littlejohn.

4              Would the parties please come forward and identify

5    themselves for the record.

6              MR. JACOBSON:  Good morning, Your Honor.  Jonathan

7    Jacobson for the United States.

8              THE COURT:  Good morning, sir.

9              MS. MANNING:  Good morning, Your Honor.  Lisa

10   Manning and Noah Cherry on behalf of Mr. Littlejohn.

11             THE COURT:  Good morning, ma'am.

12             MS. CLARKE:  Jennifer Clarke, United States as well

13   and with us at table is Cole Ashcraft with TIGTA.

14             THE COURT:  I'm sorry, I didn't grab your name.

15             MS. CLARKE:  Jennifer Clarke.

16             THE COURT:  Okay.  Good morning, ma'am.

17             MS. CLARKE:  Good morning.

18             THE COURT:  We are here for the sentencing of the

19   defendant --

20             THE CLERK:  One more, Your Honor.

21             THE COURT:  Oh.

22             MR. WILSON:  Good morning, Your Honor.  Andre Wilson

23   from probation.

24             THE COURT:  Thank you.  I'm sorry, Mr. Wilson.

25             We are here for the sentencing of the defendant
```

1    Charles Littlejohn, who has pled guilty to unauthorized

2    disclosure of tax returns and return information in violation

3    of Title 18, Section 7213(a)(1) of the United States Code.

4        Mr. Littlejohn, I never quite know how to start

5    sentencing proceedings, because typically I would say good

6    morning, but I know that this is not a good morning for you.

7    I know that this may well be the worst morning of your life or

8    one of them.  And I want you to know that I know that and I'm

9    sympathetic to it.  And the courtroom is packed.  You have the

10   worst seat in the house and I am sorry for that.

11       I wish more than you can possibly know that we were

12   meeting under different circumstances, because I have read the

13   29 letters from your friends and family.  And they uniformly

14   speak to a person of immense intelligence, deep caring, and

15   unwavering loyalty.  And I think anyone who has read those

16   letters knows that to call you a friend is a privilege.  And

17   I've already handled enough sentencings to know that you can

18   be an upstanding person and commit bad acts, even colossally

19   bad acts.  Unfortunately, those two things are not mutually

20   exclusive.  If they are we wouldn't be here today.

21       And I'm saying this all up front because at this

22   hearing we will be spending quite a long time dissecting your

23   failures.  And I have to do that because in this country, in

24   order to take away someone's liberty, a judge like me is

25   required, thankfully, to set forth all of the reasons for her

1   decisions.  And that is important because we require full

2   transparency, again, before taking away someone's liberty.

3            And somehow we've gotten to a point in our society

4   in which someone as intelligent and law abiding as you,

5   thought it was not only acceptable, but a moral imperative to

6   break the law to target the sitting President of the United

7   States and a thousand other Americans.  And to have the frank

8   and thorough discussion we need to have to address fully what

9   occurred, I will need to use stark and harsh language.

10  Language I won't be able to cushion to spare your feelings or

11  that of you and your friends and family.  And let me say right

12  now if I could do it differently, I would.

13           And I realize that this might not provide you with

14  much solace, but I want you to know that I have studied and

15  thought and struggled deeply about your sentence.  And there

16  have been very few days since I took your plea that I have not

17  thought about your sentence in some way.  Yesterday I brought

18  my laptop and all of my papers in here and I sat at defense

19  table.  And I sat in the seat that you're sitting in right now

20  to do my final preparation.  And I worked there in particular

21  to make it impossible for me to forget that I'm going to be

22  responsible today for taking away someone's liberty, someone

23  with friends and family who love him.  Someone who has

24  repeatedly answered the call to help others and someone whose

25  actions were guided, however misguided the thought was, by a

1    genuine belief of doing the right thing.

2         Today, however, I am of course in a different chair.

3    And my responsibility today is to the oath I took to support

4    and defend the Constitution of the United States against all

5    enemies foreign and domestic, because let me be absolutely

6    clear, what you did in targeting the sitting President of the

7    United States was an attack on our constitutional democracy.

8    And whatever the motivation, I have to punish it with a

9    firmness of purpose that such an attack demands.

10        All right.  So before we continue a housekeeping

11   matter, I want to briefly address an issue that arose last

12   week.  On January 23rd, 2024, my chambers received via email a

13   letter from the Republican members of the U.S. House of

14   Representatives Committee on Ways and Means.  I read the

15   letter the same day and via my clerk told the signatories that

16   I was carefully considering the information and thanking them

17   for their time.  The next day via email, Mr. Littlejohn's

18   counsel objected to the Court's consideration of this letter

19   and any similar letters, because the members are neither

20   parties in the case nor victims.

21        I disagree.  The Supreme Court has made clear that

22   both Congress and the Sentencing Commission have expressly

23   preserved the traditional discretion of sentencing courts to,

24   quote, conduct an inquiry broad in scope, largely unlimited,

25   either as to the kind of information they may consider or the

1    source from which it may come.  *Pepper v. U.S.* 562 U.S. 476,

2    489 to 11, *U.S. v. Tucker* 404 U.S. 443-446, 1972.

3         Also, nothing in the letter prejudices

4    Mr. Littlejohn's preparation for today's hearing.  It does not

5    contain any new information not already available and

6    indisputably properly before me in the record.  And while the

7    letter does reflect the unremarkable fact that certain members

8    of Congress feel strongly about what sentence I should impose

9    today, that fact has zero impact on me or my decision.

10         There are two side effects of the letter, I should

11    tell people about.  It reminded me that there's a Ways and

12    Means episode of the *West Wing*, which as I recalled was quite

13    good.  So I rewatched it as I unwound one night last week.  It

14    was not helpful to do that because coincidentally it starts

15    off with an outside shot of this very courthouse.  It also

16    gives me an excuse to mention that for those who are

17    interested in how we got to an income tax, including its

18    introduction during the civil war, its affects on that war's

19    outcome, I highly recommend to you a recent book by Roger

20    Lowenstein entitled:  *Ways and Means, Lincoln and His Cabinet*

21    *and the Financing of the Civil War*.  All that aside and for

22    the avoidance of any doubt, the Court has not and will not

23    base any part of its sentencing decision on the January 23rd,

24    2024 letter.

25         Turning to the materials I have reviewed.  I have

1    reviewed -- received and reviewed the presentence report and

2    sentencing recommendation from the probation department.  And

3    the following documents submitted by counsel in advance of the

4    hearing:  The plea agreement and statement of offense signed

5    by Mr. Littlejohn.  Sentencing memorandum from the government

6    and from Mr. Littlejohn, including letters and articles in

7    support.  Six victim impact statements filed under seal by the

8    government.  I am going to be reading from some of those today

9    and the government has indicated it has no objection to that.

10   I will, of course, not use any identifying information.  The

11   notice of supplemental authority by Mr. Littlejohn filed on

12   Saturday and the response by the government filed on Sunday.

13           I also want to briefly address another issue that

14   arose over the weekend.  On Saturday I emailed the parties to

15   be prepared to address today at this hearing a certain legal

16   question.  And I attached -- or my clerk attached three cases

17   for the parties to discuss at the hearing.  Yesterday, the

18   government filed a short brief addressing the question.  I

19   have not reviewed that brief because I did not authorize a

20   filing.  I made it clear in my email to be prepared to discuss

21   the issue today only.  And I'm not averse, Mr. Jacobson, to

22   reading more paper, but doing so would be unfair to Ms.

23   Manning who abided by my instructions.  I, therefore, order

24   the clerk of the Court to strike the filing, docket 32.  And,

25   Mr. Jacobson, you can of course make the arguments you made

1    there today.

2              All right.  Let me start with the presentence

3    report.  Probation filed the final presentence report and

4    sentencing recommendation in this matter on January 22nd,

5    2024.

6              To the government, does the government have any

7    objection to any of the factual determinations set forth in

8    the presentence report?

9              MR. JACOBSON:  No, we do not, Your Honor.

10              THE COURT:  Are you expecting an evidentiary hearing

11    or do you have any witnesses present in the courtroom?

12              MR. JACOBSON:  Your Honor, there are at least -- at

13    least one victim is present in the courtroom, but we're not

14    anticipating calling any witnesses at sentencing.

15              THE COURT:  All right.  Mr. Littlejohn, are you

16    fully satisfied with your attorney in this case?

17              THE DEFENDANT:  I am, Your Honor.

18              THE COURT:  As well you should be.  She has done a

19    terrific job on your behalf.

20              THE DEFENDANT:  I agree.

21              THE COURT:  Do you feel that you have had enough

22    time to talk with her about the probation department's

23    presentence report and the papers filed by the government in

24    connection with the sentencing?

25              THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  Ms. Manning, have you and your client

2    read and discussed this presentence report?

3          MS. MANNING:  We have, Your Honor.

4          THE COURT:  Do you have any objections to the

5    presentence report?

6          MS. MANNING:  No, Your Honor.

7          THE COURT:  Are there any disputed issues of fact?

8          MS. MANNING:  No, Your Honor.

9          THE COURT:  All right.  Could you please, Ms.

10   Manning, also confirm for the record that there are no

11   objections to paragraph 16 of the report, in particular to the

12   part that says, "In 2017 Defendant Littlejohn sought

13   employment with Company A for a third time.  He acknowledged

14   that one of the reasons he decided to reapply to Company A was

15   the possibility of being signed to a project that might allow

16   him with access to taxpayer information for then President

17   Donald Trump, who he viewed as, quote, dangerous and a threat

18   to democracy, end quote, which he could then provide to the

19   media."

20         MS. MANNING:  No objection, Your Honor.

21         THE COURT:  All right.  Thank you.

22         Hearing no objection, I will accept the factual

23   recitation in the presentence report regarding the

24   circumstances of the offense.  And, therefore, the facts as

25   stated in the presentence report will be my findings of fact

1    for the purpose of this sentence.

2            The presentence report lays out the probation

3    office's calculation of the initial advisory guideline range

4    that applies in this case.  This calculation was done using

5    the 2023 guidelines manual and is as follows:  Beginning with

6    the offense level, the applicable guideline in this case is

7    U.S.S.G. 2H3.1, which has a base offense level of 9.  A

8    two-level increase applies for Mr. Littlejohn's role in the

9    offense under U.S.S.G. 3B1.3, because he used in his

10   position -- he used his position of trust with Company A,

11   which provided access to IRS taxpayer data, and knowledge of

12   IRS security procedures to access unmasked taxpayer data and

13   download the data for dissemination to the public.

14           The parties have stipulated that a two-level

15   increase applies for obstruction of justice under Section

16   3C1.1 because Mr. Littlejohn willfully obstructed or impeded,

17   or attempted to obstruct or impede the administration of

18   justice with respect to the investigation, prosecution, or

19   sentencing of the instant offense of conviction, and the

20   obstructive conduct related to the defendant's offense of

21   conviction and any relevant conduct.  That brings

22   Mr. Littlejohn's adjusted offense level to 13 before two

23   additional adjustments are applied.

24           First, Mr. Littlejohn meets the criteria for an

25   adjustment under Section 4C1.1 so, therefore, a two-level

1    decrease applies.  Second, Mr. Littlejohn has clearly

2    demonstrated acceptance of responsibility for the offense.

3    Accordingly, the offense level is further decreased by two

4    levels under Section 3E1.1(a).

5            Specifically, I note that as the presentence report

6    quoting defense counsel's statement explains, quote,

7    Mr. Littlejohn has cooperated with the government's

8    investigation and agreed to plead guilty prior to the

9    expiration of the statute of limitations for the offense.  He

10   voluntarily sat for two proffers with the Department of

11   Justice Public Integrity Section and TIGTA agents, and

12   provided additional information to the government through

13   counsel.

14           Mr. Littlejohn has taken responsibility for his

15   conduct, assisted with the discovery of additional evidence,

16   and shared information with the government with the aim of

17   preventing future breaches of IRS databases.  In addition to

18   providing factual and highly technical proffers to the

19   government, Mr. Littlejohn shared with TIGTA ways in which the

20   IRS could detect and deter future thefts and illegal

21   disclosures of IRS data, end quote.  Therefore, prior to

22   considering any departures or variances Mr. Littlejohn's total

23   offense level is 9.

24           Are there any objections to the calculation of the

25   offense level, Mr. Jacobson?

1          MR. JACOBSON:  No, Your Honor.

2          THE COURT:  Ms. Manning?

3          MS. MANNING:  No, Your Honor.

4          THE COURT:  Turning to the applicable Criminal

5    History Category, the presentence report has found that

6    Mr. Littlejohn has a Criminal History Category of zero and,

7    therefore, is being designated in Criminal History Category I.

8          Any objections?

9          MR. JACOBSON:  No, Your Honor.

10          MS. MANNING:  No, Your Honor.

11          THE COURT:  Based on the offense level and Criminal

12    History Category I, I have just discussed, the presentence

13    report calculates the initial advisory guidelines range to be

14    four to ten months of imprisonment.

15          Having determined the applicable guidelines range

16    the next step for me is to consider departures.  The

17    government seeks a upward departure pursuant to Application

18    Note 5 of U.S.S.G. 2H3.1.  That note states that there are

19    certain examples in cases in which an upward departure may be

20    warranted.  And that can include that the offense level

21    involved personal information, means of identification,

22    confidential phone records information, or tax return

23    information of a substantial number of individuals.  And that

24    the offense caused or risked substantial non-monetary harm to

25    individuals whose private or protected information was

obtained.  Mr. Littlejohn concedes that a two- to four-level

upward departure is appropriate under Application Note 5,

Section 2H3.1 because its disclosures involved, quote, tax

return information of a substantial number of individuals,

docket 25 at 1 and 5.

        Ms. Manning, am I correct that Mr. Littlejohn

concedes up to a four-level departure to offense level 13 is

appropriate here?

        MS. MANNING:  Yes, Your Honor.

        THE COURT:  All right.  That would establish a final

advisory guideline range of 12 to 18 months of imprisonment.

I will impose, as Mr. Littlejohn concedes is appropriate here,

a four-level upward departure from offense level 9 to offense

level 13 for the following reasons under Application Note 5 of

2H3.1.  The offense covered personal information and tax

return information of a substantial number of individuals,

over a thousand.  The offense, of course, caused or risked

substantial non-monetary harm and resulted in a substantial

invasion of privacy.

        As one victim wrote in an impact victim statement to

me, quote, the information and data in one's tax filings are

deeply private and profoundly personal, it is not just dollars

and cents.  It included my home address, Social Security

number, driver's license number, banking and financial data,

and certain health data.  And not just mine, that of my wife

1    and children.

2          Our privacy was not only violated by the stealing of

3    the information and the publishing of the information, but

4    also by the unscrupulous journalist who used the information

5    to harass me and my family.  Specifically, they trespassed on

6    my property, left threatening notes on my doorstep and

7    intimidated my wife.  Cars were lined up outside of our home

8    day and night, end quote.

9          Mr. Littlejohn targeted and violated the rights of

10   victims by invading their privacy.  Those victims were

11   wealthy.  And the wealthy and poor alike are entitled to equal

12   protection of our laws, laws that guarantee Americans their

13   sensitive tax data will not be disclosed.  Indeed, when

14   accepting this position I took an oath to, quote, do equal

15   right to the poor and to the rich, end quote.  And to be sure,

16   as applied, that usually means that the poor should not be

17   treated any worse because they do not have means.  But it

18   works both ways.  The wealthy are no less entitled to privacy

19   than other Americans.  They are no less hurt by its intrusions

20   than other Americans.  And as victims they are no less

21   entitled to my consideration of their harm than other

22   Americans.

23          Therefore, following the four-level upward departure

24   from offense level 9 to offense level 13, the final advisory

25   guideline range for Criminal History Category I is 12 to 18

months, increased from 4 to 10 months in the initial advisory guideline range.

Prior to the upward departure, the applicable guideline range was in Zone B of the sentencing table. Under Zone B the minimum term of imprisonment may be satisfied by one, a sentence of imprisonment; two, a sentence of imprisonment that includes a term of supervised release; or three, a sentence of probation that includes a condition or combination of conditions that substitute for confinement.

The Court also notes, as Mr. Littlejohn argues, that if the offense is in Zone B, Application Note 10 provides that if the defendant received an adjustment under 4C1.1, as Mr. Littlejohn did, then quote, a sentence other than a sentence of imprisonment is generally appropriate, end quote.

The four-level upward departure, however, removes the offense to Zone C as in C. under the guidelines because the offense is in Zone C of the sentencing table, the minimum term may be satisfied a sentence of imprisonment, a sentence of imprisonment that includes a term of supervised release, provided that at least one half of the minimum term is satisfied by imprisonment. And that's 5C1.1(d).

Are there any objections to the guidelines framework and its calculation?

MR. JACOBSON:  No, Your Honor.

MS. MANNING:  No, Your Honor.

1           THE COURT:  All right.  Now, 18 U.S.C. 3553 requires

2    me to consider a variety of factors including the sentencing

3    range the guidelines proscribe, which I have just discussed

4    and will discuss in more detail below, and the applicable

5    penal statutes.

6           The charge of unauthorized disclosure carries a

7    statutory maximum of five years, that is 60 months of

8    imprisonment.  As set forth above, based on the calculations,

9    the resulting final guidelines imprisonment range is 12 to 18

10   months.

11          With respect to supervised release the Court may

12   impose a term of supervised release not more than three years.

13   The guideline range for a term of supervised release is 1 to 3

14   years.  If a sentence of imprisonment of one year or less is

15   imposed a term of supervised release is optional.  Supervised

16   release is required if the Court imposes a term of

17   imprisonment of more than one year or when required by

18   statute.

19          I further note that community service may be ordered

20   as a condition of supervised release, but that under the

21   guidelines it generally should not be imposed in excess of 400

22   hours.

23          With respect to probation the defendant is eligible

24   for not less than one nor more than five years of probation.

25   Under the guidelines, if probation is imposed, the term shall

1    be at least one year but not more than five years if the

2    offense level is 6 or greater as it is here.

3        The statute of conviction sets a maximum fine of up

4    to $5,000, which as the PSR notes, would make the guidelines

5    range between $2,000 and $5,000 at offense level 9, but

6    following the upward departure to offense level 13 the

7    statutory fine of $5,000 becomes the guidelines range.

8        Is there any objection to that calculation of the

9    guideline range of $5,000 for the fine level for offense level

10   13.

11       MR. JACOBSON:  I'm sorry, Your Honor, I'm just

12   looking at 5B1.2.  No, there's no objection.

13       MS. MANNING:  No objection, Your Honor.

14       THE COURT:  A special assessment of $100 per count

15   is mandatory.  In determining the fine amount the Court shall

16   consider among other factors the expected cost to the

17   government of any imprisonment, supervised release, or

18   probation component of the sentence.  The presentence report

19   states that pursuant to 18 U.S.C. 3663, and the guidelines,

20   restitution shall be ordered in this case.  To date, however,

21   no restitution requests have been received from the government

22   and, therefore, my understanding is that restitution is not

23   warranted in this case.

24       Mr. Jacobson, is that correct?

25       MR. JACOBSON:  Your Honor, we have not received

1    requests for restitution, so I believe Your Honor is

2    correct.

3            THE COURT:  All right.  Are there any objections to

4    the statutory and guidelines framework I have described above?

5            MR. JACOBSON:  None from the government.

6            MS. MANNING:  No, Your Honor.

7            THE COURT:  Before I discuss the other sentencing

8    factors that will bear on my final decision I will at this

9    point notify the parties of the sentence the probation office

10   has recommended, taking into account the guideline range, the

11   available sentencing, and all the factors of 3553(a).  The

12   recommendation is 18 months of incarceration, three years of

13   supervised release, and a $4,000 fine.  The recommendation of

14   probation office is not based on any facts or circumstances

15   that have not already been revealed to the parties in the

16   presentence report.

17           At this point I would love -- I would like to give

18   the opportunities -- the parties an opportunity to address the

19   Court.  Mr. Jacobson.

20           MR. JACOBSON:  Thank you, Your Honor.

21           THE COURT:  Mr. Jacobson, before you start, can you

22   explain the difference please between a plea reached on an

23   information and one reached after an indictment, and how that

24   difference might account for the single felony charge that we

25   see today.

1        MR. JACOBSON:  Well, Your Honor, a plea reached on

2   an information is usually the result of a negotiated

3   resolution between the parties, whereas a plea reached after

4   an indictment, frequently is a result of an inability or

5   unwillingness on the defendant to accept responsibility before

6   indictment.

7        THE COURT:  So it's possible that the government was

8   prepared to bring a number of counts against Mr. Littlejohn,

9   had he been -- had he forced you to go to indictment, but

10  because you were able to do all of that before he pled, all we

11  see today is the one count that he agreed to.

12       MR. JACOBSON:  That's correct, Your Honor.

13       THE COURT:  All right.  And you have asked that I

14  sentence Mr. Littlejohn to the statutory maximum penalty of 60

15  months in prison, but Mr. Littlejohn has accepted

16  responsibility, he has cooperated with the government, and he

17  has shown remorse.  And typically a sentencing judge takes

18  those factors into account in reducing a sentence, so what do

19  I do?

20       MR. JACOBSON:  Well, Your Honor, if I may be heard,

21  I think that generally my -- the explanation I intended to

22  give here today would be responsive to the question Your

23  Honor's asked.

24       THE COURT:  Okay.  Well, then I also want to know

25  what charges Mr. Littlejohn would have faced had he elected to

1    proceed to trial, and whether if convicted those crimes would

2    have involved additional potential sentencing exposure.

3            MR. JACOBSON:  Your Honor, because that event never

4    came to pass, the government did not reach a determination,

5    any kind of final determination about what charges would have

6    been brought in the absence of this information.

7            THE COURT:  But what would he have been exposed to?

8            MR. JACOBSON:  That would be a function of what the

9    charges would be and because we never ultimately --

10            THE COURT:  Well, Mr. Jacobson, I'm trying to help

11    you here.

12            MR. JACOBSON:  Sure.  I understand, Your Honor.

13            THE COURT:  I'm trying to figure out what sentence

14    he was facing had he gone to trial, versus what sentence he's

15    facing today, and if the fact his cooperation has already been

16    taken into account, because instead of facing whatever

17    sentence he would have faced he is now facing the five-year

18    maximum.

19            MR. JACOBSON:  Your Honor, I think it's fair to say

20    that facing that five-year maximum is a benefit that was

21    accorded to this defendant.

22            THE COURT:  Okay.  Well, explain that to me in

23    detail, not just tell me it's a benefit.  I need some actual

24    something.

25            MR. JACOBSON:  I understand, Your Honor.

1          THE COURT:  And I'll let you proceed.

2          MR. JACOBSON:  The concern that I have, Your Honor,

3    is I can't get into internal deliberations --

4          THE COURT:  No, I know you can't get into internal

5    deliberations.  But we're dealing with someone who, by your

6    own words, pulled off the biggest heist in IRS's history.  And

7    I think -- I need know before I make a sentencing decision,

8    and I think the public deserves to know why we're here and

9    he's only facing one felony count.  And I'm giving you every

10   opportunity to make it clear to the public why that happened.

11   And you can do that, I am confident, without disclosing

12   confidential work product and without disclosing your plea

13   negotiation.  And I expect and hope that you're prepared to do

14   that today.

15         MR. JACOBSON:  I am, Your Honor.

16         THE COURT:  Okay.  Go ahead.

17         MR. JACOBSON:  So, Your Honor, ultimately this 7213

18   count, this 7213(a)(1) count was the most readily provable

19   felony that covered all of the defendant's conduct.  His

20   guidelines today would be the exact same whether we had

21   charged him with a thousand counts of 7213 or whether we had

22   charged --

23         THE COURT:  But it wouldn't be the same if you had

24   charged him with other counts.  I mean, he stole government

25   data.  That's not a disclosure count.  That's different than

1    the disclosure count.  I mean, DOJ prosecutors can get pretty

2    creative on what kind of counts to bring.  So that's really

3    what I'm looking at here.

4          MR. JACOBSON:  The core misconduct here, though,

5    Your Honor, is the theft and the disclosure of the tax

6    returns.

7          THE COURT:  Yeah, but the one you charged him on was

8    just on disclosure.  You have separate theft counts the

9    government can bring; right?

10         MR. JACOBSON:  You're talking about 18 U.S.C. 1641?

11         THE COURT:  I'm talking about any number of things

12   I'm confident the government can bring against someone who

13   steals government property.

14         MR. JACOBSON:  Your Honor, there may have been

15   hurdles to charging a 641 theft of government property count

16   here.

17         THE COURT:  I'm sorry, are you representing to me

18   that someone can steal thousands and thousands and thousands

19   of taxpayer information and the only count that the government

20   could possibly bring is a disclosure count, because I'm

21   confident that that's not the case.  And I'm not sure why

22   you're fighting me on this, I'm trying to help you.

23         MR. JACOBSON:  No, I understand, Your Honor.  I just

24   want to be clear -- I want to both be responsive to Your

25   Honor's questions, but also not get into the determinations

1    that were made internally within the Justice Department about

2    a charging decision in this case.  I can say, Your Honor,

3    though, that it is conceivable that additional charges could

4    have been brought.  Ultimately, we never reached a

5    determination about what those charges might have been because

6    we reached a negotiated resolution with Mr. Littlejohn.  But

7    at the end --

8            THE COURT:  I'm sorry, so you're telling me that

9    when you reached your decision you didn't even bother to

10   figure out what you could have brought?  I'm sure that's not

11   the case.

12           MR. JACOBSON:  Your Honor, we did consider

13   alternative charges, but because we never reached a

14   determination, there was never a moment where it was -- where

15   a decision was made, we absolutely can bring this count, this

16   count, this count, we've conducted the research, we've made a

17   determination that these charges are viable.  We ultimately,

18   Your Honor, did not get to that point.  But the bottom line is

19   that the conduct, the core misconduct here is the disclosure

20   of the tax returns.  And whether the government could have

21   been creative or risked, you know, taken -- rolled the dice on

22   charges that might not have been at the core of the

23   misconduct, that is a difficult question, Your Honor.  I'm not

24   prepared to talk about --

25           THE COURT:  Well, I suggest at some point, sir, you

become prepared to talk about it.  Because I -- the fact that
he did what he did and he is facing one felony count, I have
no words for.  And what I thought you were going to tell me
today is something a little bit more specific than what you
just told me.  That would make it make a little bit more
sense.  Go ahead.

            MR. JACOBSON:  I understand Your Honor's concerns.
But ultimately the 7213, that is the misconduct --

            THE COURT:  Well, then we're back to my initial
question then, which is if that is all he's going to be
charged with, if that's all he could possibly have been
charged with, how could I possibly give him 60 months?

            MR. JACOBSON:  Because, Your Honor, among other
things the guidelines directly contemplate -- your Honor did
recognize that the guidelines recognize an enhancement is
appropriate when --

            THE COURT:  How can I vary upwards without taking
into account he cooperated and give him something for that?

            MR. JACOBSON:  Your Honor, I think a variance is
still appropriate -- an upward variance is still appropriate
here looking at the volume --

            THE COURT:  I agree an upward variance is
appropriate.  My question is, how can I upward vary to 60
months if he's cooperated, and you're giving me literally
nothing else to say that he got a benefit already.

1          MR. JACOBSON:  Your Honor, I can explain to you why

2     we believe this case justifies an upward variance, but at the

3     end of the day, the government's charging decision here

4     yielded this one count.  And this one count covers the full

5     extent of the defendant's misconduct.  And with a statutory

6     cap of 60 months, that gives Your Honor space to give a

7     sentence that we believe is just here.  Whether we had brought

8     a thousand counts or one count, we would be standing up here

9     seeking the same 60 months.  So, ultimately, the outcome we

10    believe would be the same, whether we had brought additional

11    counts or not, in terms of our sentencing recommendation.

12    There's space here within the statutory maximum to achieve a

13    just outcome here.

14          So Your Honor, I want to start by talking about --

15    talking about this offense.  And just backing out at a high

16    level about what happened here.  The enormous magnitude of the

17    defendant's crime is unparalleled in the history of the

18    Internal Revenue Service.

19          THE COURT:  Which might account for the reason that

20    I'm questioning why he's being charged with one felony

21    count.

22          MR. JACOBSON:  Well, Your Honor, as --

23          THE COURT:  You don't have to repeat yourself.  I'm

24    just -- go ahead.

25          MR. JACOBSON:  Over the course of two years the

1    defendant, who's an experienced and successful professional,

2    was entrusted with access to Americans' unmasked taxpayer

3    data.  He repeatedly abused that trust by stealing and

4    disclosing thousands of citizens tax returns and return

5    information.  The disclosures were intended to damage his

6    victim's reputations and through that criminal damage he

7    sought to influence an election and to reshape our nation's

8    political discourse and political process.

9          Along the way he tried to cover his tracks by

10   destroying evidence and subverting the investigation that he

11   knew would follow his disclosures.  But he was unsuccessful

12   and he stands here today having committed again one of the

13   most serious crimes in the IRS's history.

14         The harm, it's worth noting, Your Honor, is also an

15   ongoing harm.  Even after the plea in this case, as Your Honor

16   is aware, there was an article that was published by one of

17   the news organizations that contained some of the information

18   the defendant had disclosed to that news organization.  But

19   the harm wasn't even limited to the victims whose data the

20   defendant stole.  The damage was more extensive.  All

21   Americans are obligated to provide an enormous amount of

22   financial information about their private lives to the IRS, to

23   the government.  And in exchange, in turn, what we expect from

24   the government, and what we expect from the IRS, is that they

25   will secure that data.  They will protect that data.  The

1    defendant's crime undermined that faith.  It undermined that

2    trust.

3            The crime justifies a significant sentence here, a

4    sentence that communicates to the public and that individuals

5    who weaponize their privileged access to private data for

6    their own personal political agendas, and to advance those

7    agendas, will face grave and serious consequences.  A 60-month

8    sentence here would send a message that no one is above the

9    law.  Whatever --

10           THE COURT:  If I give him 60 months and nothing off

11   for cooperation, won't it also send a message that if you

12   break the law, don't cooperate with the government, because

13   just roll the dice at trial, because you're only going to get

14   the maximum any way?

15           MR. JACOBSON:  Your Honor, I want to correct a mis-

16   -- a possible misimpression from -- that might have arisen

17   from the PSR and from the defendant's statements to probation.

18   The defendant's not getting a 5K.  He's not provided

19   substantial assistance within the meaning of the guidelines.

20   His cooperation is not cooperation within the meaning of the

21   guidelines.

22           THE COURT:  But it's cooperation.  I mean, you took

23   it, you didn't say to him we don't need your help.

24           MR. JACOBSON:  That's correct, Your Honor.  But what

25   he did was to help remediate the harm he caused.  It's not as

1    though he went out and assisted the government in prosecuting

2    numerous co-conspirators.  That's not what happened here, Your

3    Honor.  What he did was he accepted responsibilities for his

4    actions and he assisted in two proffers, Your Honor, and some

5    limited assistance locating some of the USB drives.  That's

6    the cooperation here.  It's two proffers, Your Honor.  So the

7    cooperation -- I don't want the Court to be under the

8    impression that this defendant should have gotten a 5K but

9    didn't.

10          THE COURT:  No, I understand the Sentencing

11   Guidelines.  Go ahead.

12          MR. JACOBSON:  Understood, Your Honor.  I just want

13   that to be clear.  His cooperation is cooperation within

14   colloquial parlance.  It's not cooperation within the meaning

15   of the guidelines.

16          I want to briefly highlight three points here, Your

17   Honor.  First, the sheer volume of the individuals who were

18   directly impacted by the defendant's disclosures, at least

19   some of whom are here in the courtroom today.  The defendant

20   disclosed over 8,000 annual income tax returns, including

21   annual income tax returns for approximately 7,600 individuals

22   and over 600 entities.  Some of that information has already

23   been published.  But other victims have essentially no choice

24   but to sit and wait to see if embarrassing details about their

25   private financial lives and the private financial lives of

their family are going to be published tomorrow, next week,
next month, next year.  As one victim explained, there's fear
that the victim's tax information will be, quote, further
disseminated or used for additional unlawful purposes for
reputational attacks.

         But the tax returns are just the tip of the iceberg
here, Your Honor.  The defendant also disclosed tons of
additional tax information that might have been associated
with those returns, but wasn't an actual tax return.  Taking
into account that additional type of information, the
disclosures affected approximately 18,000 individuals.
Affected 73,000 businesses.  Again, the magnitude of the harm
is immense and it's unprecedented and it justifies a 3553
variance, even setting aside the departure under the
application note that Your Honor's already imposed.  It's
exceptional.  It's unusual.  It's not like any other 7213 case
that's ever been brought.

         The second factor I want to highlight Your Honor, is
the extensive planning and the careful execution of this
offense here.  The defendant plotted his thefts and
disclosures over the course of approximately two full years.
He learned over time to exploit IRS's -- exploit loopholes in
the IRS's systems.  He went back in over and over and over
again to seek more taxpayer information to disclose to the
news organizations.  He spread the data around multiple

1    different devices and to two different news organizations.

2         This case is not about a momentary lapse in judgment

3    in an otherwise law abiding life.  That's not what this case

4    is.  Instead, for years this defendant was abusing his

5    position of trust to secretly and repeatedly extract and

6    divulge personal details of the thousands of -- of thousands

7    of Americans who willingly provided that information to the

8    government.

9         A final point, Your Honor, and I think this is an

10   important point with regard to the variance, is that the

11   government's request for 60 months here is in part based on

12   general deterrence.  As I mentioned earlier, the Court should

13   take this opportunity to communicate an appropriate message

14   about the seriousness of disclosing taxpayer data.

15        The defendant's brief cited numerous 7213 cases that

16   yielded probationary sentences.  And we have two responses to

17   those cases.  First, ultimately those cases involve situations

18   that look nothing like what happened here.  You had cases

19   where an individual was disclosing a small number or even one

20   tax return for private financial gain.  I think an example

21   could be the Washington case that the defense cited, which was

22   an IRS employee looked at her ex-husband's tax return in order

23   to increase child support payments.  And that's the general

24   flavor of those 7213 cases that were cited by the defendant.

25   There is no meaningful comparison between those cases and what

1    happened here.  I think that's apparent on the face also even,

2    frankly, of the defendant's brief, which accurately

3    characterized some of the information from those cases.

4         But more fundamentally, the probation sentences in

5    the in the other 7213 cases, and some of the lighter sentences

6    in the classified information cases, reinforce rather than

7    undermine the need for a significant sentence here.  Criminal

8    activity of this kind, of the nature that's involved here, it

9    often involves sophisticated individuals who undertake their

10   disclosures after careful execution, careful planning,

11   thinking through, researching the consequences of what those

12   actions might be.  Crimes like that, Your Honor, are uniquely

13   susceptible to general deterrence.  These aren't crimes of

14   passion.  These aren't crimes that occur because a thought

15   momentarily popped is a into someone's head.  These crimes

16   take a long time to be planned out and to be executed.

17        And individuals out there who might be considering

18   similar offenses, whether for economic reasons, for

19   ideological reasons, for political reasons, they need to see

20   and they need to understand, Your Honor, that the consequences

21   will be serious, they will be substantial, and they will be

22   severe.  And the space that Your Honor has, as a result of

23   even this single charge that covers all of the conduct here,

24   the space that Your Honor has gives an opportunity for you to

25   do justice here and to recognize all of the aggravating

1   factors that I've walked through up here.  An incarceratory

2   sentence of 60 months is necessary, it's appropriate, and it's

3   the just result here, Your Honor.

4            THE COURT:  Okay.  Thank you.

5            MR. JACOBSON:  Thank you.

6            THE COURT:  All right.  I will now hear from any

7   victims who wish to speak pursuant to 18 U.S.C. 3771(a)(4).

8   Before I do that I want to remind everyone that we are in a

9   courtroom and not at a campaign rally.  And that if we verge

10   into a campaign rally I will cut it off.

11            All right.  That said, does anyone wish to speak

12   today.

13            Right here Senator Scott.  Good morning, sir.

14            SENATOR SCOTT:  Good morning.

15            Your Honor, thank you for giving me the time to

16   make -- giving me the opportunity to make these comments to

17   you in open court.  What I'm about to say means no disrespect

18   to you or the staff prosecutors in this case.

19            Your Honor, newspapers have called this a plea deal,

20   it should be called the plea deal of the century.  Mr.

21   Littlejohn abused his position of trust; stole personal

22   financial data; released that data intentionally and with

23   malice to harm Americans, including me and my family; and

24   clearly violated the law and disclosed the private tax and

25   financial information of thousands of Americans, thousands.

1    Yet today he will skip accountable for his deeds in

2    all but a single case.  He is pleading guilty to just one

3    violation out of thousands and he will be punished for just

4    one violation not thousands.

5    The United States Department of Justice acknowledges

6    that I'm a victim of Mr. Littlejohn's actions and generously

7    offered me the opportunity to give a victim impact statement.

8    Unfortunately, there are more victims of this crime than can

9    fit in the courtroom today.  Donald Trump, Elon Musk, Ken

10   Griffin, the list is long.  All attacked for political

11   purposes because they are wealthy or rich, wealthy or

12   Republican or both.  All attacked for political purposes that

13   coincide with the political desires of the Biden

14   administration.

15   But there are more victims than just those named in

16   this case.  In a broad sense every American is a victim here.

17   Why?  Because this case is part of the ongoing dangerous

18   corruption of the justice system at the federal level --

19   THE COURT:  Mr. -- Senator.  Senator, okay.  I'm

20   not going to listen about allegations of corruption at DOJ.

21   That's not why we're here today.  So please move on if that's

22   where you're going.

23   SENATOR SCOTT:  The truth is Mr. Littlejohn is

24   getting this sweetheart deal crime because his crimes advanced

25   somebody's political agenda.  This plea deal is no further --

1    it's further proof that what's happened is -- I mean, you

2    talked about why are we only prosecuting one case, that makes

3    no sense.  There's thousands of cases here.  And if you just

4    go through this, look at what we're doing here.  I might just

5    give you an example of something else, okay, so when the

6    president's diary -- daughter's diary was -- Project Veritas

7    was going to put it out you got an FBI raid, you had an FBI

8    investigation, Justice investigation and a raid.  ProPublica

9    puts out Donald Trump's, Elon Musk, my tax returns

10   information, nothing.

11            THE COURT:  Well, I don't think they knew who it was

12   at the time.  You can't raid someone if you don't know who it

13   is.

14            SENATOR SCOTT:  Well, I -- have they done anything

15   since?

16            THE COURT:  I mean kinda.

17            SENATOR SCOTT:  ProPublica?  I mean, the bottom line

18   is I do not understand why we're talking about one case out of

19   thousands, right.  And by the way, we don't know how much --

20   who else is going to put out more information on my tax

21   returns because they have them.  Right.  Not just impacts me,

22   it impacts my kids, my grandkids, right.  And for how long?

23   Because nobody else is being held accountable.  So I think

24   it's wrong.  I hope you reject the plea deal.  And if you

25   don't, you give the maximum sentence.

1          THE COURT:  All right.  Thank you.  I can't reject

2    the plea deal, I've already accepted it.  But thank you.  And

3    thank you for coming today.  Anyone else?

4          All right.  Ms. Manning.

5          MS. MANNING:  Your Honor, Mr. Cherry will be

6    addressing the Court first on the Court's question of the per

7    se reasonableness.

8          THE COURT:  Terrific, thank you.

9          MR. CHERRY:  Good morning, Your Honor.

10          THE COURT:  Good morning Mr. Cherry.

11          MR. CHERRY:  Before going to the per se issue, I

12    just wanted to briefly address the one count in this case.  So

13    our position is that he pled guilty to exactly the crime he

14    committed.  And I know the government mentioned the

15    possibility of charging 18 U.S. Code, 641 for theft of

16    government funds.  I don't have the case law prepared for this

17    hearing, but had they charged that offense as well, we do not

18    believe it would have substantially changed the guidelines,

19    because our position is that it would be a zero loss theft.

20          THE COURT:  Okay.  Thank you.

21          MR. CHERRY:  Your Honor, in response to your

22    question over the weekend, it is not per se unreasonable to

23    charge a defendant to the statutory max after pleading guilty,

24    accepting responsibility, and cooperating.  However, we

25    believe it would be unreasonable in this case.  We cite the

1    proper analysis for the Court in our sentencing memorandum and

2    Your Honor has gone over it briefly today.  But the Court must

3    begin with the sentencing guidelines and any variance or

4    departure from the guidelines must be supported by statute,

5    precedent, and the law.  A more -- and the Supreme Court has

6    made clear that a more significant departure must be justified

7    by a more significant justification.

8         The cases the Court referenced over the weekend bear

9    no resemblance to the facts here.  First, the Supreme Court

10   explained in *Pugh*, that a guidelines sentence is presumptively

11   reasonable.  The first case that Your Honor cited, *Ortiz*,

12   involved a defendant who was convicted for operating a

13   methamphetamine lab and was sentenced below the statute --

14   below his sentencing guidelines -- or I'm sorry that the

15   statutory max fell below the statutory guidelines and was,

16   therefore, presumptively reasonable.  Next in *LePage* the

17   defendant was sentenced to the bottom half of the sentencing

18   guidelines, which happened to be statutory max.

19        The third case Your Honor cited in *Helton*, although

20   the defendant was sentenced above his sentencing guidelines,

21   there were factors that the Court took into consideration that

22   were not adequately accounted for in the guidelines.  For

23   example, the defendant had a history -- criminal history

24   points 150 percent above the high -- or the highest category

25   for criminal history.  Further, the government -- or the judge

1    observed that there was serious concerns with specific

2    deterrence and how the defendant had a long history of similar

3    offenses and was -- had constant engagement with law

4    enforcement in multiple jurisdictions.

5          These cases do not support a statutory max sentence

6    for Mr. Littlejohn.  Sentencing Mr. Littlejohn to six times

7    the upper end of his sentencing guidelines, or equivalent to a

8    15 point departure would be unreasonable.

9          THE COURT:  Well, I mean -- Ms. Manning, you're

10   going to address that I take it?

11         MS. MANNING:  Yes, Your Honor.

12         THE COURT:  Okay.  I'll wait.

13         MR. CHERRY:  The government's request for the Court

14   to sentence to the statutory max and ignore precedent is

15   telling.  We have cited dozens of cases that support

16   sentencing Mr. Littlejohn to a guidelines sentence accounting

17   for the two- to four-point departure.  A statutory Max

18   sentence would necessarily ignore the guidelines, the law, and

19   the precedent that we cite.  We trust that the Court will

20   impose a reasonable sentence in this case.

21         THE COURT:  I will impose a reasonable sentence, you

22   can be assured.

23         Ms. Manning.

24         MS. MANNING:  Ms. Manning.

25         MS. MANNING:  Good morning, Your Honor.

1          THE COURT:  Good morning, Ms. Manning.

2          MS. MANNING:  First, I wanted to thank you and your

3    colleagues for all of the time and attention that you've spent

4    on this case.

5          THE COURT:  Thank you.  She is pointing to my law

6    clerk, because he has been emailing at all hours over the

7    weekend.  You know, one of the best parts about this job is

8    you get to work with phenomenal young attorneys.  And I am

9    very, very thankful to my clerks, and Jon in particular who

10   has done Yeoman's work on this case.  And thank you for

11   recognizing him.

12         MS. MANNING:  We greatly appreciate that.  And we

13   know that there are a lot of factors that go into your

14   decision and you do not have an easy task.

15         We also wanted to thank and recognize Senator Scott

16   for appearing here and his time.  And to the other victims

17   that took the time to write letters to the Court.  And before

18   I proceed, I also wanted to recognize Mr. Littlejohn's family

19   and friends, who are here to support him in court today,

20   including his brother, his partner, and several other close

21   friends, and his partner's mother.  As the Court is aware, due

22   to health conditions, his parents were unable to travel to be

23   at the Court today.  But asked me to convey that they are -- I

24   believe they are joining by video link -- and that they are

25   very much here in spirit.  And I think his mother said that

1    she is heartbroken not to be here, but is supporting him from

2    afar.

3              Your Honor, at Mr. Littlejohn's plea hearing you, if

4    I may paraphrase, stated that this is a country of laws.  And

5    if society does not follow those laws it does not function.

6              THE COURT:  That sounds about like what I would

7    say.

8              MS. MANNING:  And I submit that that is not only

9    true when an individual like Mr. Littlejohn takes the law into

10   his own hands, but also where the government and others are

11   urging the Court to simply disregard the law, to disregard the

12   guidelines, to disregard the guidance of the United States

13   probation office, and to disregard decades of precedent.

14             THE COURT:  So, Ms. Manning, my problem, and I'll

15   just be quite frank with you, is there's just -- he targeted

16   the sitting President of the United States of America.

17             MS. MANNING:  Yes, Your Honor.

18             THE COURT:  And that is exceptional by any measure.

19   And I, you know, I don't care if he thought that President

20   Trump was the living embodiment of James Buchanan, Andrew

21   Johnson, and Herbert Hoover combined.  I don't care.  I don't

22   care how many people might have agreed with him.  He was the

23   sitting President of the United States And when you target the

24   sitting President of the United States you are targeting the

25   office.  When you target the office of the President of the

1    United States you're targeting democracy.  You're targeting

2    our constitutional system of government.  And I just disagree

3    that it is disregarding the law to suggest that that deserves

4    a maximum punishment and requires a maximum punishment in

5    order to deter anyone else from doing that.

6            MS. MANNING:  Your Honor, we do not take any issue

7    with the severity of the conduct.  The Court has already

8    recognized that Mr. Littlejohn has come forward, he has

9    accepted full responsibility.  The Court has also recognized,

10   however, his motive in this case, which however misguided, did

11   not come from a place of malice, or avarice, or any type of

12   animus.  In fact, Your Honor, I submit that this, even though

13   there has been so much political attention to this case, that

14   as you read in the many letters to this Court, he acted not

15   out of a political motivation, in terms of a partisan

16   political motivation --

17           THE COURT:  Ms. Manning, of course he did.  Ms.

18   Manning, that's just not credible.  That's just not credible.

19   I mean, I just cannot believe that the fact of who it was had

20   no bearing on why he did what he did.  I mean, if you -- if

21   I'm misguided about that and I'm just wrong about that, I

22   mean, you tell me.  But it just seems improbable to me.

23           MS. MANNING:  Your Honor, I think as we recognized

24   in our papers, and you will hear from Mr. Littlejohn, he was

25   troubled by the administration.  But I think the point I'm

1    trying to make, and maybe unsuccessfully, is there's a

2    distinction between targeting an individual -- for example, in

3    some of the precedent that we cited to the Court, there was a,

4    you know, one of the unauthorized disclosure cases in which

5    the defendant targeted a sitting judge and the unauthorized --

6    because the judge had made some unfavorable rulings in the

7    defendant's case.  And the defendant went into the system,

8    stole the records, and made an unauthorized disclosure out of

9    a personal animus.  There are other cases we have brought to

10    the Court's attention where the defendant has acted out of

11    personal gain, you know, be it financial gain, fraud.

12            And my point is that that is distinct here.  Now,

13    maybe the Court views his conduct as even, in terms of

14    motivation on a moral scale, as more serious than a crime of

15    fraud, and --

16            THE COURT:  I think the seriousness -- I mean, Ms.

17    Manning, what I just cannot get over -- to me the

18    seriousness -- and of course the thousands of people whose tax

19    information was released, of course that is serious, and of

20    course I'm going to take into account.  I'm not just saying

21    we're talking about the presidency here.  But it cannot be

22    open season on our elected officials.  It just can't be.  And

23    judges can't sit by and not do everything in their power to

24    make it crystal clear that it is not open season on our

25    elected officials.  And that's what happened.

1          MS. MANNING:  And as Your Honor pointed out earlier,

2     Mr. Littlejohn is sitting in that seat.  It is not open

3     season.  There is a clear message not only being sent by the

4     Court, but in terms of deterrence for -- take a professional

5     like Mr. Littlejohn, he graduated from college summa cum

6     laude.

7          THE COURT:  With a degree in economics and physics,

8     I mean, he's not dumb.

9          MS. MANNING:  No, he's definitely not dumb.  He has,

10    but for this case, but for the conduct in this case, has led

11    an otherwise exemplary life and I submit one that was

12    dedicated to civil service.  As you read in the letters many

13    of his college friends said, he had tons of job offers.  He

14    could have gone anywhere.  He could have made a lot more

15    money.  But instead he chose to work on an IRS contract,

16    because he so fundamentally believed in the system.  And what

17    is particularly sad about this case, among many things, is

18    that he then went and completely undermined the system that he

19    had worked for years to improve.

20         But my point to the Court here is that a sentence --

21    any sentence of incarceration, I mean, he is going to a

22    federal prison, he is going from --

23         THE COURT:  He is definitely going to a federal

24    prison.

25         MS. MANNING:  There's no question about that here.

1    But in terms of the -- what we are discussing is the length of

2    the sentence.  And, Your Honor, I mean, I -- I cited in my

3    brief and I have in this large binder here, a report by the

4    Department of Justice itself, National Justice Institute that

5    talks about general deterrence.  And that talks about how for

6    a defendant like Mr. Littlejohn and any other potential

7    leakers out there, the impact is getting caught, the impact is

8    going to prison, the impact is all of the other things that

9    come with that.  At the conclusion of this hearing, he will be

10   a convicted felon.

11           THE COURT:  He's already a convicted felony.

12           MS. MANNING:  At the conclusion of sentencing.

13           THE COURT:  Sorry, go ahead.

14           MS. MANNING:  He will be a convicted felon and will

15   lose all of the rights, both legal rights and societal rights

16   that come with that status.  He will suffer very serious

17   personal consequences, both with his life, with his partner

18   and with his father, as you've read about in my papers.  And

19   he will never ever be able again to certainly access any

20   confidential data, so no risk of recidivism, but work in

21   service to the government.

22           But I guess, my point, Your Honor, is that a

23   sentence here, whether the sentence is 18 months as is

24   suggested in the recommendation by the U.S. probation office,

25   to which I ask the Court to give deference, versus the

1    government's request of five years, A, does not have the

2    deterrent effect based on the studies submitted by the Justice

3    Department itself on this type of defendant.

4           And then in terms of the publicity of this case, I

5    mean, I checked this morning before leaving my office for

6    court, and as of this morning if you search his name, there

7    are 284 current news articles that come up in Google.  It is a

8    very publicized case.  And it will be for the rest of his

9    life.  And any other potential leaker that is thinking, you

10   know what, I feel like I have a moral obligation to make

11   information that I believe should be public, will see that.

12   They'll not only see that, but I'm sad to report that because

13   of the political or partisan nature of this case, many of

14   those articles, even on main stream news cites, have comments

15   that call for him to be executed in public and that --

16           THE COURT:  That is outrageous.

17           MS. MANNING:  -- sentence --

18           THE COURT:  I mean, everyone has lost their heads.

19   I mean, that is outrageous.

20           MS. MANNING:  And I -- you know, I regret the fact

21   that this case is -- has attracted so much noise.

22           THE COURT:  I mean, that's what happens when you

23   target the sitting President of the United States.  I mean, he

24   didn't target Jane Doe.  If he targeted Jane Doe, we all --

25   none of these people would be here.  I would be here, you

1    would be here, but that would be about -- and Mr. Jacobson

2    would be here.  But he targeted the sitting President of the

3    United States.  And when he you target the sitting President

4    of the United States, you're going to get attention.

5            And I'm sorry, Ms. Manning, I know, I know that you

6    are -- I know that these are hard things to answer.  And --

7    but go ahead.

8            MS. MANNING:  My point at the beginning, Your Honor,

9    in raising the fact that it is, from a defense perspective

10   sitting here, the government is asking the Court to throw away

11   the law, our --

12           THE COURT:  I mean, we're just going to have to

13   agree to disagree about that.  I don't think they're asking me

14   to throw away the law.  I think they're asking me to apply the

15   sentencing factors to an unprecedented crime that not only

16   targeted our constitutional system of democracy, but targeted

17   a subset of people for no other reason that they had a certain

18   characteristic and it upended their lives.  I mean, I think

19   that's what we're doing here.

20           MS. MANNING:  I understand that, Your Honor, but at

21   the same time, in addition to the constitution our system --

22   the benchmark, the bedrock of our system is a common law

23   system.  And the idea that we should throw away the standards,

24   the norms, the procedures, the laws --

25           THE COURT:  What are we throwing away?  He had his

1    due process.  He had a right to go to trial.  He has -- he has

2    excellent counsel.  He -- you know, everyone's talking today

3    I'm going to give all my reasons.  I'm not just going to say

4    here you go, here's your term and then walk out of here.  He

5    is getting far more process than any of his victims have

6    gotten.  They didn't have any process before all their

7    information was released.

8          MS. MANNING:  Yes, Your Honor.  In terms of why we

9    are here today is because my client broke the law.  There's --

10   no one disagrees about that.  He committed a crime.  And he

11   was charged with and pled guilty to the very statute that

12   proscribes that conduct.  Now, I understand that Your Honor's

13   point earlier about that he could have been charged with more

14   crimes, he could have not cooperated, and he could have not

15   pled guilty, and we could be here in a trial setting.  But as

16   my dad says, we are where we are and --

17         THE COURT:  I mean, just to be absolutely clear for

18   the record, I am not going to base any of my sentencing

19   decision on other crimes he could have been charged with, or

20   the fact that he wasn't charged with them.  The only reason

21   I'm even bringing any of that up is because of the cooperation

22   point.  And I just want to make that absolutely clear for the

23   record.

24         MS. MANNING:  Thank you, Your Honor.

25         He is here to be punished for conduct that is --

1    that is exact -- the conduct, you know, crime that he

2    committed, but conduct that is exactly what is described under

3    the statute to which he pled.

4                THE COURT:  No, agree.

5                MS. MANNING:  And in terms of referencing our great

6    legal system and common law, I submit Your Honor,

7    respectfully, that it is troubling to me that despite the

8    egregious level of the conduct, that the government is

9    arguing -- I mean, some of that seriousness has been taken

10   care of or has been accounted for by the guidelines.  And as

11   my colleague Mr. Cherry said, even post-*Booker*, under 3553(d),

12   by statute the Court -- the basis, the fundamental calculation

13   shall still be rooted in the guidelines unless there are

14   aggravating circumstances --

15               THE COURT:  Like targeting the sitting President of

16   the United States of America.

17               MS. MANNING:  And, Your Honor, we agree and we have

18   conceded that, yes, he has, as we went through the guidelines

19   calculation, there are two enhancements.  In addition to that,

20   and it's not very often that defense counsel is asking for an

21   above guidelines sentence --

22               THE COURT:  It frankly might be a first, which I

23   mean, it's a credit to you as a lawyer and it's a credit to

24   Mr. Littlejohn's acceptance and remorse and I should have said

25   that when I pointed it out.

1          MS. MANNING:  Thank you, Your Honor.  He is not

2     seeking leniency.  He is seeking fairness.  And I know that

3     you will be fair in sentencing.  But I have also spent every

4     single day since the plea hearing thinking about this case.

5     And I have read, as has Mr. Cherry, all of the cases that are

6     in this binder.  And I hope that's not -- it's not for naught,

7     some of these cases do, for example, the Edwards case, which

8     the government cited in their brief, that was also targeted at

9     President Trump.  That was also a defendant who was in a

10    position of trust, who went into databases, stole data, and

11    gave over 50,000 records to a media outlet, Buzzfeed --

12          THE COURT:  But as I recall in that case, the

13    reporters reached out to her, right.  And is this the one

14    where the reporters reached out to her, cultivated her.  She

15    had an issue that she had been trying to go through the proper

16    channels and people just weren't listening to her.  And the

17    way that the reporter got her name was because she was trying

18    to go through the proper channels, that had become public.

19    The reporter got her name and then basically convinced her in

20    a very persuasive way to break the law.

21          I mean, your client is just totally separately

22    situated.  This was -- I mean, what we haven't even talked

23    about yet is not just that your client happened to be where he

24    was and came across or realized that he had access to returns,

25    he went back to the company in order, in part, to get the

1    returns and to make them public.  And this was -- how much

2    more intentional can you get?

3              MS. MANNING:  Your Honor, I don't think anybody has

4    ever questioned his intent.  This was not a crime of passion.

5    As the letters to the Court, many of his close, close family

6    and friends said, this must be something -- and I think you

7    will hear that from him -- that he agonized over for months.

8              In terms of the time line of the offense, he -- he

9    acknowledged he readily -- he volunteered that information in

10   one of his over eight hours of interviews with the government.

11   He readily volunteered the information in terms of what was in

12   his mind at the time.  And that he was so troubled by what he

13   was seeing.  And that he felt that if -- and again, it was an

14   if -- he applied to several different jobs because he needed

15   the money -- but if he were to get in that position, and

16   unfortunately fate put him in that position by assigning him

17   to a project, you know, we wouldn't be here probably if that

18   hadn't happened.  But he volunteered that.

19             Once he was able to steal the data, as we reviewed

20   in our brief, he did not act quickly, he sat on the data for

21   some time.  And I realize that those facts cut both ways.  On

22   the one hand, sometimes it's useful to argue it was a spur of

23   the moment decision, but no one in this case is saying that.

24   He agonized over this decision, as I think is apparent from

25   some of his journal entries at the time, that because of his

1   life circumstance he felt he had nothing to lose.  He realized

2   it would ruin his life and he felt he had nothing to lose.

3   And he made, no doubt, a -- as you described -- a colossal

4   error and committed a colossal crime.

5         And if he could, he would take it back.  I have

6   gotten to know Mr. Littlejohn pretty well over the course of

7   representing him.  And I can say he has very deep remorse.

8   That he has deep remorse for the victims.  He has deep remorse

9   for putting our system through all of this additional cost to

10  the American taxpayer.  Clearly, deep remorse to his friends

11  and family.  And deep remorse for how this will impact the

12  future that they thought that he had ahead of him.

13        And while his offense certainly involved a sitting

14  president and thousands of taxpayers, it is not entirely

15  dissimilar from the conduct of many of the, quote, ideological

16  leakers that appear in the cases in this binder.  And there

17  are cases, probably the largest tab section is Espionage Act

18  cases.  And these are people -- a United States general,

19  high-level law enforcement officers, high-level military

20  officers, who have clearances, who are disclosing information

21  that endangers national security, that blows the cover of

22  undercover agents.  And in those cases, the Court took into

23  account the personal or ideological motivation.  And in every

24  single one of those cases -- or I should say in none of those

25  cases did the Court sentence the defendant to the statutory

1    max.

2              And here I ask Your Honor to take that precedent,

3    which is the bedrock of our system, into account.  And I'm

4    sure that this is as a -- since you've taken the bench,

5    probably the most difficult process to sentence someone and

6    deprive someone of their liberty.  And now I have -- I have

7    nothing left but to put the case into your hands.  But I thank

8    you for your time, I thank you for your consideration in what

9    I trust will be a just and lawful resolution.

10             THE COURT:  Thank you, Ms. Manning.

11             Mr. Littlejohn.

12             THE DEFENDANT:  You Honor, first I'd like to thank

13   you for the time and consideration that you've given my case.

14   It means a lot to me personally and to my family.  I have a

15   statement.

16             THE COURT:  Of course.

17             THE DEFENDANT:  First and foremost, I'd like to

18   apologize to the Court, to the government, to Senator Scott,

19   and to all the individuals who have been hurt by my actions.

20   I alone am responsible for this crime and I received no

21   compensation in return for committing it.  I acted out of a

22   sincere if misguided belief that I was serving the public

23   interest.  I felt that the American people should have the

24   opportunity to see the tax returns of the sitting president

25   before they decided on how they were going to vote.  I also

1    felt that taxpayers as a whole deserved to know just how easy

2    it was for the wealthiest among us to avoid paying into our

3    system.  I believe then, as I do now, that we as a country

4    make the best decisions when we are all properly informed.  I

5    also understand in my actions, despite being driven by a

6    desire for transparency, were illegal and have caused

7    significant harm.

8          In deciding to disclose this information I was aware

9    of the potential consequences.  I did not take the burden of

10   this obligation lightly, nor did I think I was above the law.

11   I made my decision with the full knowledge that I would likely

12   end up in a courtroom to answer for my serious crime.  There

13   should be no mistaking the fact that what I did was wrong.  To

14   achieve my criminal objectives I betrayed the trust of my

15   client, my colleagues, and my firm.  I used my skills to

16   systematically violate the privacy of thousands of innocent

17   people.  My actions undermined the fragile faith that we place

18   in the impartiality of our government institutions.

19        I do not ask for mercy.  For mercy cannot rebuild

20   that trust.  I only ask for justice as it alone can help

21   restore confidence in our system.  Roman Emporer Marcus

22   Aurelius reflected in the following in his meditations:  Never

23   regard as a benefit to yourself anything which will force you

24   at some point to break your faith.  My hope in moving forward

25   from this experience is that I will be able to internalize

1    that message as I seek lawful ways to contribute to my

2    community and to our beloved country.  Thank you.

3              THE COURT:  Thank you, Mr. Littlejohn.

4              All right.  After calculating the final advisory

5    guidelines range and hearing the statements made by counsel,

6    Senator Scott, and Mr. Littlejohn, I must now consider the

7    relevant factors set out by Congress in 18 U.S.C. 3553(a),

8    ensure that I impose a sentence that is, quote, sufficient but

9    not greater than necessary to comply with the purposes, end

10   quote, of sentencing.

11             The purposes include the need for the sentence

12   imposed to reflect the seriousness of the offense, to promote

13   respect for the law, and to provide just punishment for the

14   offense.  The sentence should also deter criminal conduct,

15   protect the public future from crimes by the defendant and

16   promote rehabilitation.

17             In addition to the guidelines and policy statements

18   and the purposes of sentencing, I must also consider the

19   nature and circumstances of the offense; the history and

20   characteristics of the defendant; the kinds of sentences

21   available, including the applicable guidelines; the need to

22   avoid unwarranted sentencing disparities among defendants with

23   similar records who have also been found guilty of similar

24   conduct; and the need to provide restitution to any victims of

25   the offense; other factors -- including other factors which I

1    will discuss in turn later.

2           I have considered all of these factors when deciding

3    what the appropriate sentence is in this case.  The upward

4    departure imposed, as conceded by Mr. Littlejohn, does not

5    begin to adequately account for the nature of this offense.  A

6    multi-year criminal scheme targeting the sitting President of

7    the United States and thousands of Americans.  And based on

8    each factor I'm required to consider, in the weighing of those

9    factors I conclude that an upward variance from the 12 to 18

10   month final advisory guidelines determined by the upward

11   departure to offense level 13 is necessary.  And for the

12   avoidance of doubt, I would reach the same sentence I impose

13   today based solely on the variance and my analysis of the

14   3553(a) factors, regardless of whether or not the upward

15   departure applied.

16          We are going to take a break until 11:25 and when we

17   return I will explain the basis for my sentence and impose the

18   sentence.  Thank you.

19          (A recess was taken from 11:12 a.m. to 11:25 a.m.)

20          THE COURT:  We are told by the press that democracy

21   dies in darkness.  Democracy also dies in lawlessness.  And

22   our democracy will surely die if our governing philosophy

23   becomes partisan political ends justify illegal means.  And

24   today we are not presented with a pick-your-poison question,

25   death by darkness or death by lawlessness.  And that is so

1    because there are innumerable lawful ways -- lawful means of

2    bringing information to light.

3            In the case of Mr. Trump's tax returns, he was under

4    no legal obligation to disclose them.  None.  Certainly

5    numerous Americans thought he should disclose them.  And those

6    individuals had numerous lawful options in the face of his

7    decision.  They could decide not to vote for him.  They could

8    decide to vote for somebody else.  They could campaign against

9    them.  They could lobby, as many did, state legislatures to

10   change their laws on candidate eligibility.  They could lobby,

11   as many did, congress to change the tax disclosure law.

12           And even assuming only the release of Mr. Trump's

13   tax returns would suffice, his returns were made public

14   lawfully.  The House filed litigation to release them.  The

15   House won that litigation.  And the House lawfully released

16   the tax returns.  The public now has lawful access to his tax

17   returns for the years 2015 through 2020.

18           And all of the information needed to make the point

19   that wealthy individuals pay a low effective tax rate is

20   already publicly available.  To start of course the law is

21   public.  Anyone can study the tax laws and assess how they

22   apply in various economic scenarios.  Indeed, the White House

23   in September 2021 released just such a study, entitled, "What

24   is the average federal individual tax rate on the wealthiest

25   Americans."  The study concluded that the country's wealthiest

400 families paid an estimated average federal income tax rate
of 8.2 percent for the period 2010 to 2018.  The authors used,
quote, publicly available statistics from the IRS statistics
of income division, the survey of consumer finances and *Forbes
Magazine*, end quote.

Now I'm not endorsing this study in any way.  I have
no idea if the methodology or conclusions are sound.  My point
instead is only that there are ways, other than disclosing the
tax information of over a thousand American, in flat violation
of the law and at substantial harm to them, to draw
conclusions and make policy arguments about our nation's tax
laws.

In his sentencing memo Mr. Littlejohn states that a
*New York Times* opinion piece entitled, "Everyone's income
taxes should be public," pushed him in part to leak the tax
returns to the press.  But that article only proves my point
that his conduct was not necessary.  First, because the author
tried to change the tax disclosure laws the right way, by
exercising his First Amendment right.  And second, because it
expressly mentioned that congressional democrats were already
fighting to obtain Trump's tax returns through legal means.
And Mr. Littlejohn now recognizes, in hindsight, that there
was nothing noble or moral about the nature of his offense.
It did not produce a single social good that could not have
been and hasn't now been produced in some way by lawful means.

1          The nature of this offense was an intolerable attack

2     on our constitutional democracy by declaring open season on

3     the private lives of our highest elected officials.

4     Mr. Littlejohn's targeting of a sitting President of the

5     United States as part of a three-year criminal scheme,

6     including working with the reporters to help them understand

7     the tax returns, deciding again and again and again to take

8     the law into his own hands, disclosing the tax returns of

9     thousands of individuals, violating their privacy, and making

10    them live in fear of other harms that may occur to them or

11    their families in the future supports an upward variance here.

12         I find that the guidelines range does not accurately

13    reflect the seriousness of Mr. Littlejohn's criminal conduct,

14    given the scale of victims impacted and the nature of harm

15    that has as a resulted, and could continue to result in the

16    future.  *U.S. v. Brevard*, 18 F.4th 722 at 729, D.C. Circuit

17    2021.

18         President Theodore Roosevelt stated the obvious in

19    reminding us that, quote, to announce that there must be no

20    criticism of the president, or that we are to stand by the

21    president right or wrong is not only unpatriotic and servile,

22    but it is morally treasonable to the American people, end

23    quote.

24         Mr. Littlejohn had the same First Amendment right

25    afforded to every American to criticize the president.

1    Criticism of our political leaders is not merely tolerated, it
2    is imperative to the smooth functioning of our democracy to
3    hold our elected officials accountable.  But so too is a
4    commitment by every American to ensure that every individual
5    elected to office is able to exercise the duties of that
6    office without concern of exposing herself or her family to
7    unlawful conduct and personal harm.  Without that commitment
8    our democracy also cannot function smoothly.
9            We are in a place right now where somehow a
10   substantial number of Americans find it acceptable to raid the
11   U.S. Capitol and threaten the life of the Vice President for
12   carrying out his constitutional obligation to effect the
13   peaceful transfer of power, to threaten House Republican
14   members and their spouses because they voted against a
15   particular speaker candidate, a republican at that.  One
16   lawmaker even received a credible death threat.  To make a
17   round of bomb threats to state capitols, to send them to
18   Secretaries of State and legislative offices.  Believed to be
19   a hoax, but it led to the evacuations around the country.  And
20   to send letters containing fentanyl to a election offices in a
21   handful of states this past November, among numerous,
22   numerous, numerous, numerous other examples.
23           I have no idea how we got here, but I do know two
24   things for certain, those actions did not result in physical
25   harm, Mr. Littlejohn's actions also harmed our democracy by

1    harming the office of the presidency.  And the judiciary must

2    be an unbreakable bulwark against politically-minded actors

3    targeted or threatening elected officials.

4              To target Mr. Trump was to target the office, was to

5    target democracy, that is the nature of your offense,

6    Mr. Littlejohn.  It alone would require a substantial upward

7    variance under the factor just discussed, the nature and

8    circumstances of the offense.

9              The nature of the offense is also an intolerable

10   attack on the personal lives of thousands of Americans, most

11   of whom tirelessly contribute to our society in important

12   ways, because of one person's disagreement of current tax

13   policy.  Of course, policy can and should be addressed through

14   the democratic system.

15             The government argues, and I have not heard

16   Mr. Littlejohn contest, that the scope and scale of his

17   conduct, unlawful disclosures appear to be unparalleled in the

18   IRS's history.  There simply is no precedent for a case

19   involving the disclosure of tax return information associated

20   with other a thousand individuals and entities.  That's the

21   government's memo, docket 23 at 9, and I wholeheartedly agree.

22             I have received six victim impact statements, a

23   number signed by or on behalf of numerous victims.  Some

24   excerpts, quote, Mr. Littlejohn's legal actions have caused me

25   and my family great distress.  And I have had to rearrange

many aspects of my personal life and information because I do
not know exactly who has my own personal information.  You can
imagine the concern if everything you did privately and
personally in your investments, business, and just every day
activities were suddenly splashed on the front page of a
newspaper, or available to any unscrupulous person who might
seek to take advantage, end quote.

A group of victims through their attorneys put it
this way:  Quote, the taxpayers have suffered reputational
damage.  The economic impact of this damage is difficult to
quantify.  The taxpayers fully comply with their federal
income tax obligations, however, misguided media coverage
predicated on unlawfully obtained confidential tax information
continues to enable patently false assertions about the tax
payer's tax compliance, end quote.

Another victim said, quote, as direct result we in
our family were threatened personally and disparaged countless
times in the media.  In addition, our company certainly lost
business and incurred reputational damage that cannot be fully
quantified, end quote.

Another, quote, our sensitive information has been
unlawfully disclosed.  Narratives about us have been published
and circulated based on that information, and we must deal
with the resulting backlash and unwelcome attention, and our
family's safety has been jeopardized.  Mr. Littlejohn took

1    very serious actions against all of his victims.  And we must
2    now manage very real threats, and mental, emotional, and
3    reputational consequences, end quote.

4          I also find it deeply concerning that as the
5    government explained in its filing, at least 152 victims have
6    tax information published, but because Mr. Littlejohn
7    unlawfully disclosed the tax return information of thousands
8    more individuals, those individuals' information could be
9    published in the future.  In other words, the scope of the
10   harm is not necessarily done or even known.  And those whose
11   information has not yet been made public have no assurance
12   they will not be made public in the future.

13         I understand that Mr. Littlejohn cooperated with the
14   government and voluntarily sat down for two proffers.  He has
15   taken responsibility for his conduct, assisted with the
16   discovery of additional evidence, and shared information to
17   help the government prevent future breaches of IRS databases.
18   But that cooperation, although a mitigating circumstance of
19   the offense, is outweighed by the other nature and
20   circumstances of the offense I have just described, and
21   remaining factors I will discuss.

22         Mr. Littlejohn's history and characteristics.
23   Mr. Littlejohn has no criminal history, and as the 29 letters
24   submitted in support of him show, he is a devoted friend, son,
25   brother, and partner who goes out of his way to help others

during their moments in need.  It is difficult to square these

characteristics, devotion, thoughtfulness, loyalty, and

compassion with the crime that Mr. Littlejohn committed.  Yet,

human beings are imperfect and I want to reiterate that

Mr. Littlejohn's crime, egregious as it was, does not and

ought not change the fundamentally good, caring person that I

understand him to be.

           For example, during his sister's illness several

years ago his family explains how he, quote, relocated to

St. Louis to help care for her and other members of his

family, in St. Louis working remotely of all hours of the day

and night so that he could support his family and fulfill his

obligations.  And when his grandfather was ill in 2017 he

helped his parents care for him by relocating temporarily to

Delaware, looking after his grandfather while working remotely

to meet all of his work obligations.  He did this without

being asked, selfless in his devotion to family.

           As a friend whose brother struggled with addiction

explains, quote, what speaks most to his character is not the

one grand gesture, but countless small acts of thought,

gestures of friendship, and the time spent over the years

providing healing, no one else in my life provided that

consistent presence.  I honestly doubt if I would have a

relationship with my brother today if it were not for Charles.

           Another friend explained about Mr. Littlejohn's

1    commitment to public service, quote, at work Chaz was diligent
2    and he approached each task, no matter how mundane, with
3    enthusiasm and pride.  He devoted his time to improving public
4    service, not by delivering meandering speeches about
5    government efficiency, but by doing the hard work, brick by
6    brick, data point by data point.  He labored over obscure
7    processes and unglamorous spreadsheets in pursuit of the
8    perfect combination of incremental change to make things just
9    a little bit better for everyone.
10          And Mr. Littlejohn himself is remorseful, writing to
11   the Court, quote, what I actually did was use my skills to
12   systematically violate the privacy of thousands of innocent
13   people.  I abused my position of authority to accomplish this
14   criminal task.  And as a result many in this nation now have
15   further reason to question the impartiality of our
16   government's institutions.  He also explains, quote, I
17   apologize to the Court and to the government and to all the
18   individuals who I harmed with my selfish actions.  And he
19   concludes, I realize now that what I did was wrong and if I
20   could take it all back, I would.  But seeing as I cannot, I
21   will submit to your judgment and await whatever fate you feel
22   is most just.  And, of course, he expressed that remorse
23   forthrightly and forcefully here again today.
24          Yet, as the government argues, Mr. Littlejohn's
25   characteristics also support significant upward variance here.

1    As a sophisticated consultant, he received regular training

2    over several years on how to protect taxpayers and the

3    criminal consequences of inspecting or disclosing it without

4    information.  Mr. Littlejohn knew what he was doing.  He knew

5    it was wrong.  And, given his experience, he well knew that

6    the harm that would result to the taxpayers.

7            The need for the sentence imposed to reflect the

8    seriousness of the offense, afford adequate deterrence to

9    criminal conduct, promote respect for the law, and provide

10   just punishment among other purposes.

11           Mr. Littlejohn engaged in a deliberate, complex,

12   multiyear scheme, criminal scheme.  I find that the 12 to 18

13   months guideline range in this case is insufficient to deter

14   government officials and contractors from making those same

15   deliberate decisions to take the law into their own hands.

16   Mr. Littlejohn did not make a snap judgment.  He made a series

17   of calculated decisions, over two to three years, to willfully

18   violate the law.  Most stunning, Mr. Littlejohn has admitted

19   that he sought to work as an IRS consultant with the hope and

20   expectation of accessing and disclosing then President Trump's

21   tax information.  He did all this with full knowledge, given

22   his training, of the punishment that would result.

23           This court cannot permit others to view this type of

24   conduct as acceptable or justifiable or worth the trade off,

25   no matter what their purported political or ideological

1    motivation might be.  And the Court agrees with the government

2    that the Court should exercise its discretion to dissuade such

3    calculus, compelling individuals under such circumstances to

4    consider the likelihood of a lengthy term of incarceration.

5         And returning to my earlier discussion, our current

6    political climate demands that I do everything in my power to

7    make people twice, and twice again, think before targeting our

8    elected officials.  And everything in my power includes

9    sending the strongest possible message that we are a nation of

10    laws.  That the arena for the strongest expression of our

11    political beliefs is the voting booth.  And that an

12    independent and steadfast judiciary stands ready to punish

13    anyone who puts his personal political beliefs above the law.

14         I understand that the two other purposes of

15    sentencing under 3553(a), the need to protect the public from

16    future crimes of the defendant, who in my view does pose a low

17    risk, and to rehabilitate him in the most effective manner

18    weigh against an upward variance here.  But I must balance all

19    of the relevant factors, and I view those mitigating

20    circumstances as significantly outweighed by the other

21    purposes of the sentence I have mentioned and will mention.

22         In his letter to me, and again today,

23    Mr. Littlejohn -- well, in his letter to me Mr. Littlejohn

24    explains that in 2017 he felt increasingly fearful for our

25    country.  He was sparked by the catalyst of James Comey's

1    firing in the Spring of 2017 to disclose Mr. Trump's tax

2    returns to the press.  He felt an imagined need and desire of

3    the public, which created in him an overwhelming sense of

4    obligation.  He thought it was, quote, the right thing to

5    disclose the tax information of thousands of Americans.  His

6    actions were driven by a, quote, moral framework that he had

7    constructed.

8         A friend who wrote to me explains that

9    Mr. Littlejohn, quote, is a student of history and politics,

10   but he is not inherently political.  That this was likely,

11   quote, not an easy decision for him.  And he must have spent

12   time considering historical precedent, ethics and philosophy,

13   federalism and fairness, before coming to his decision.

14        Mr. Littlejohn, I believe everything that you told

15   me.  I believe you sincerely felt a moral imperative to act as

16   you did.

17        And instead of dismissing that outright, I have

18   spent considerable time doing what your friend suggested you

19   did, considering ethics and philosophy, historic precedent,

20   and federalism and fairness, to address the salient question

21   you posed to yourself:  Do I have a moral obligation to break

22   the law in disclosing tax records.

23        Any serious discussion of that question starts with

24   Plato's *Crito*.  Now before everyone freaks out, we are not

25   going to be here today with me discussing philosophy from the

1    time of the Greeks to today.  We are not.  This will be very

2    quick.  Also, one of my clerks fears I might come off as

3    pretentious by discussing Plato.  I am not trying to be

4    pretentious.  And if I were trying to be pretentious I would

5    discuss instead the evolution of the market economy in the

6    southern colonies, like the guy at the bar in *Good Will*

7    *Hunting.*  I want instead, Mr. Littlejohn, to show you that I

8    have thought deeply about your motivations.  And I want to

9    deter others who might also feel a moral obligation to break

10   the law.

11        To quote Hugo Adam Bedau, quote, the problem of the

12   individual's relation to the state and its government, its

13   authorities and its laws, and the appropriate response to

14   offensive or unjust laws has been debated since at least 399

15   B.C. when *Crito* argued that Socrates should flee from prison

16   to avoid an undeserved death penalty.  Reflected in Plato's

17   *Crito*, Socrates argues that the duty of the citizen is to obey

18   the law or persuade society that the law is wrong.  By

19   choosing to live in Athens, he argued, he implicitly endorsed

20   the laws and had to abide by them.

21        Now, that proposition has been debated in the 2000

22   years since.  And we see it reflected in the founders' views

23   of the new system of government.  And as an aside, since I

24   have everyone's attention here, trying to defend the January

25   6th insurrection, numerous people have cloaked the rioters in

1    the work of our founders.  Which would be quite the surprise

2    to our founders.  Washington and Hamilton didn't exactly sit

3    back and applaud the Whiskey Rebellion.  No Washington and

4    Hamilton sent in a militia to quell it and tried dozens of

5    rioters for treason.  Which is consistent with my point about

6    obeying the law.

7           In his farewell address, George Washington put it

8    this way, quote, the constitution, which at any time exists

9    until changed by an explicit and authentic act of whole people

10   is sacredly obligatory upon all.  The very idea of the power

11   and the right of the people to establish government

12   presupposes the duty of every individual to obey the

13   established government.

14          And he and our founders were acutely concerned with

15   lawlessness and its corrosive effect on society.  To

16   paraphrase him, he continued:  All obstructions to the

17   execution of the laws, under whatever plausible character, are

18   destructive of this fundamental principle and of fatal

19   tendency.

20          Now, of course any discussion of a moral obligation

21   to break the law must address unjust laws.  And a similar

22   piece of work on that question is, of course, Martin Luther

23   King, Jr.'s, "Letter from a Birmingham Jail."  Taylor Branch

24   describes the context well in, *Parting the Waters, America in*

25   *the King Years, 1954 to 1963*.  Quickly Dr. King had been in

1    prison for taking parts in a demonstration in a segregated

2    city in violation of local law.  In the letter he responded to

3    a public claim that he was a public agitator by distinguishing

4    between just and unjust law.  Quote, I would be the first to

5    advocate obeying just laws.  One has not only a legal but a

6    moral responsibility to obey just laws.  He goes on then to

7    discuss at length unjust laws and his obligations to disobey

8    those laws.

9          And somewhere else we could have a long and

10   interesting discussion about civil disobedience and the moral

11   obligation to disobey unjust law, but this is neither the time

12   nor the place for that discussion.  It is not the time because

13   there is no credible argument that the law Mr. Littlejohn

14   broke was unjust.

15         Reasonable people can have reasonable disagreements

16   about whether tax disclosure law is sound policy.  But it

17   applies equally to everyone and it was passes by our federal

18   Congress, with those impacted by it having the right to vote

19   on it at the time of its passage.  And today, any American has

20   the First Amendment right to speak out against it and lobby

21   for its repeal.

22         It is also not the place because this is a

23   courtroom.  And my obligation is to apply the law and punish

24   those who violate it, which it bears highlighting, Dr. King

25   acknowledges.  He wrote in the Letter, quote, In no sense do I

1    advocate evading or defying the law as would the rabid

2    segregationist, that would lead to anarchy.  One who breaks an

3    unjust law must do so openly, lovingly, and with a willingness

4    to accept the penalty.

5            And, of course, none of this even touches on the

6    point that Mr. Littlejohn did not break the law in a vacuum.

7    He knew that the result of the so-called moral act would be to

8    harm thousands of others.  And any balancing of the moral

9    obligation to release tax returns to the public versus the

10   moral obligation to not harm thousands of innocent people

11   would absolutely always favor the latter.

12           But I think the point is clear.  When we break the

13   law, we hurt society.  We do not get to pick and choose what

14   laws we follow.  We may perhaps make philosophical allowances

15   for disobeying unjust laws.  But even then, those who break

16   the law must be punished.

17           The kinds of sentences available and the sentencing

18   range established by the guidelines.  I stated earlier the

19   kinds of sentences available and I will summarize them again

20   here.  The charge of unauthorized disclosure of tax returns

21   carries a statutory maximum penalty of five years of

22   imprisonment plus supervised release range of -- plus he faces

23   a supervised release range following imprisonment of not more

24   than three years.  Under that guideline the range is 1 to 3

25   years, and as noted earlier community service may be ordered

1    as a condition of supervised release.

2             I have also considered the guidelines range which we

3    determined earlier.  And we determined earlier the guidelines

4    range if we were in Zone C of the sentencing table.  And

5    neither the government nor Ms. Manning objected to any of my

6    conclusions there.  And although Mr. Littlejohn himself does

7    not seek a probationary sentence, I note for the record that

8    with respect to probation the defendant is eligible for not

9    less than one no more than five years probation.

10            The statute of conviction sets a maximum fine of

11   $5,000, which becomes the guidelines range at offense level

12   13.  And determining the fine amount, the Court shall

13   consider, among other factors, the expected cost to the

14   government of any imprisonment, supervised release, or

15   probation component of the sentence.

16            I have considered all of these kinds of sentences in

17   determining which sentence to impose here.

18            The need to avoid unwarranted sentencing

19   disparities.  In his sentencing brief Mr. Littlejohn argues

20   that, quote, the breadth of case law supports a guidelines

21   sentence with a two- to four-level upward departure.  He

22   argues that nine other cases charging violations of Section

23   7213 involve far more egregious circumstances and more

24   condemnable motives than are present here and most resulted in

25   only probationary sentences.  He also argues that the only

1    sentences under Section 7213 that involve prison time had

2    highly unusual circumstances.  And he argues that his

3    disclosure was not self-serving and he did not intend to harm

4    taxpayers.

5            True, the cases Mr. Littlejohn are different, they

6    involve different conduct and different harms.  But to put it

7    mildly this case too presents, quote, highly unusual

8    circumstances.  Mr. Littlejohn sought a job, at least in part,

9    to steal the tax returns of the sitting president of the

10   United States and provide them to the press.  He then did

11   precisely that and disclosed the information to the New York

12   Times on multiple occasions.  He then helped the reporters

13   understand the returns for their reporting.  And he later took

14   the tax returns and tax return information of thousands of the

15   country's wealthiest individuals, and provided it to

16   ProPublica.

17           Despite what Mr. Littlejohn argues, I find it

18   implausible that he did not intend to harm at least some

19   taxpayers.  Indeed, he provided the returns to the New York

20   Times and ProPublica so that they could write articles about

21   Mr. Trump and wealthy individuals.  And a sophisticated and

22   experienced consultant like Mr. Littlejohn knew what type of

23   information tax returns contained, and how its unauthorized

24   disclosure would cause considerable harm to its victim.  The

25   fact that he removed bank account and other sensitive

information from the data does not negate the fact that he
wanted the publications to publish articles, and that he
absolutely knew the resulting harms that would follow.

Further, the Court agrees with the PSR's finding
that during the last five fiscal years there was an
insufficient number of defendants similarly situated to
Mr. Littlejohn to draw meaningful comparisons.  Mr. Littlejohn
committed a highly unusual and egregious offense, one intended
to harm thousands of taxpayers, including again, a sitting
President of the United States.

Nor does the Court find the non-tax disclosure cases
cited by Mr. Littlejohn on point here.  In *United States*
*versus Fry* the defendant received a five-year probationary
sentence for leaking five suspicious activity reports, a far
cry from thousands of taxpayer returns.

Mr. Littlejohn also cites, and his counsel today
discussed *U.S. v. Edwards* as a case with significant
parallels.  There the defendant, a treasury official,
disclosed over 50,000 documents, including confidential
reports on financial transactions to Buzzfeed.  Mr. Littlejohn
argues that although the relevant statute was different,
Mr. Edwards, like him, was facing a five-year felony with
sentencing guidelines range of 0 to 6 months, that did not
specifically account for the number of suspicious activity
reports she unlawfully disclosed.  The Court there declined to

depart from the guidelines and sentenced Edwards to six months

incarceration.  But there are several key differences.

First, unlike Mr. Littlejohn, Ms. Edwards did not

join the government agency with an intent to unlawfully

disclose the records.

Second, there the Buzzfeed journalist cultivated the

defendant and turned up the pressure for her to provide the

leaked documents, at one point noting that, quote, he was

going to be fired if his editor was angry with him because he

didn't have the same information that his competitor had.

There is no evidence and Mr. Littlejohn does not contend that

any reporter encouraged him to violate the law or turned up

the pressure in any way for him to do so.

Third, the defendant in *Edwards* suffered from

several medical and mental health conditions that weighed

against a long sentence of incarceration.  I am unaware of any

that Mr. Littlejohn suffers that should impact my sentence.

And for those reasons, I disagree that *Edwards* is helpful

here.

I take Mr. Littlejohn's other point that when

defendants disclose classified information, the corresponding

guidelines range are significantly greater, yet defendants

often receive a below guidelines sentence.  But I find those

cases to be in a different realm.  He argues that many involve

lying to investigators and putting individual's lives at risk,

1    facts that are not applicable here.  True.  But that argument

2    does not account for the other aggravating factors that do

3    exist here, which I have discussed repeatedly.

4         Mr. Littlejohn also filed a notice of supplemental

5    authority regarding the sentencing of two defendants that

6    occurred just this past Friday.  In those two cases, two

7    defendants who were federal government employees pled guilty

8    in cases involving the theft of sensitive government

9    databases, including law enforcement files, and the personal

10   identifying information of over 200 federal employees to sell

11   it to third parties located overseas.  Mr. Edwards received a

12   sentence of 18 months in prison and Mr. Patel received a

13   sentence of two years probation.

14        But unlike in this case, in Edwards and in Patel,

15   the government sought downward departures because of those

16   defendants' substantial assistance in the prosecution of

17   another co-defendant and requested a sentence within the

18   guidelines range following those departures.  That is much

19   different than in this case, in which Mr. Littlejohn signed a

20   plea agreement understanding that the government expected to

21   seek an upward departure, and his cooperation, while helpful,

22   did not provide substantial assistance in the prosecution of a

23   co-defendant.  In short, the cases are different, and the

24   Court does not find that an unwarranted disparity between them

25   prevents it from imposing an upward variance.  Further, as

discussed earlier, the cooperation that Mr. Littlejohn did

provide in this case is outweighed by the other factors I have

discussed, including as the government has put it, the fact

that Mr. Littlejohn was, quote, the engineer of his disclosure

scheme.

I also want to briefly discuss other sentences I

have imposed in January 6th cases, which I understand are

quite different from your crime, Mr. Littlejohn.  But I think

you may find it helpful to understand my reasoning in this

case.

This past Wednesday I sentenced two individuals who

were in the Capitol on January 6th.  And if you were here, you

would know that I expressed then in no uncertain terms my fear

of the threat that January 6th posed and continues to pose to

our democracy.

I have so far sentenced six individuals in January 6

cases, none of the six were charged with a felony, none were

involved with the planning of insurrection, none came to D.C.

with the intent to riot at the Capitol.  And considering those

facts and the individual circumstances of each individual, I

did not sentence any of them to prison time, though I did

sentence two to home confinement.

I mention all of this because of my belief that your

actions were also a threat to our democracy.  I have reacted

so strongly to your case because it engenders the same fear

that January 6th does, that we have gotten to point in our

society in which otherwise law-abiding, rational people

believe that they have no choice but to break the law to

further their political agendas.  And you do not fall into the

category of the individuals I have sentenced so far in January

6 cases.  You carefully planned what you did.  You had months

to consider whether to carry forward with your scheme and you

intentionally did so.  You have caused, or have risked

causing, immense personal harm to over a thousand Americans.

Which is all to say that my January 6 cases to-date are not

appropriate comparators for the sentence I will hand down in

your case.

I find it necessary to impose an upward variance

because, one, beginning with Mr. Littlejohn seeking employment

with Company A in 2017, he deliberately chose to engage in a

Multi-year criminal scheme.  Two, he targeted and intended to

violate the privacy of, and harm, thousands of taxpayers.  And

three, he made a series of calculating decisions, over years,

to take the law into his own hands by targeting a sitting

President of the United States and thousands of Americans.

Having considered all the factors under Section

3553(a), this Court finds that the sentence I'm about to

impose is sufficient, but not greater than necessary, to

reflect the seriousness of the instant offense, to promote

deterrence and respect for the law, to protect the public from

1     future crimes that may be committed by the defendant, and to

2     provide just punishment.

3            Mr. Littlejohn, to quote a fictional U.S. president,

4     When you walk out of here there will be people out there,

5     perhaps a great many, who will think of you as a hero.  I just

6     don't for a moment want you thinking I will be one of them.

7            Please stand for your sentence, sir.

8            Pursuant to the Sentencing Reform Act of 1984, and

9     in consideration of provisions of 18 U.S.C. 3553, it is the

10    judgment of the Court that I sentence you, Charles Edward

11    Littlejohn, for targeting the sitting President of the United

12    States and thousands of other Americans, and for all of the

13    reasons I have stated, following the upward departure and

14    upward variance I have imposed, to the statutory maximum term

15    of 60 months of imprisonment on Count 1 and 36 months of

16    supervised release on Count 1, which shall include a condition

17    300 hours total community service to occur during the term of

18    supervised release.

19           I further sentence you to the maximum statutory fine

20    of $5,000 on Count 1.  And in addition, you are ordered to pay

21    special assessments totaling $100 in accordance with 18 U.S.C.

22    3013.  I am not ordering restitution.

23           You may be seated, sir.

24           While on supervision, you shall abide by the

25    following mandatory conditions as well as all discretionary

1    conditions recommended by the probation office in Part D

2    sentencing options, pages 19 to 21 of the presentence report,

3    which are imposed to establish the basic expectations for your

4    conduct while on supervision.

5         The mandatory conditions include:  You must not

6    commit another federal state or local crime.  You must not

7    unlawfully possess a controlled substance.  The mandatory drug

8    testing condition is suspended based on the Court's

9    determination that you pose a low risk of future substance

10   abuse.  You must cooperate in the collection of DNA as

11   directed by the probation officer.  You must make restitution

12   in accordance with 18 U.S.C. 3663 and 3663(a), or any other

13   statute authorizing a sentence of restitution.

14        You shall comply with following special conditions:

15   Employment volunteer restrictions:  You must not engage in an

16   occupation, business profession, or volunteer activity that

17   would require or enable you to access restricted information

18   without the permission of the probation officer.

19        Computer monitoring:  You must allow the probation

20   officer install computer monitoring software on any computer

21   as defined in 18 U.S.C. 1030(e)(1) you use.

22        Computer search:  You must submit your computers as

23   defined in 18 U.S.C. 1030(e)(1) or other electronic

24   communications or data storage devices or media to a search.

25   You must warn any other people who use these computers or

1    devices capable of accessing the internet, the devices may be

2    subject to searches pursuant to this condition.  The probation

3    office may conduct a search pursuant to this condition only

4    when reasonable suspicion exists that there's a violation of

5    condition of supervision and that the computer or device

6    contains evidence of this violation.  Any search will be

7    conducted at a reasonable time and in a reasonable manner.

8            Financial information disclosure:  You must provide

9    the probation officer with access to any requested financial

10   information and authorize the release of any financial

11   information.  The probation office may share financial

12   information with the U.S. Attorney's Office.

13           Fine obligation:  You must pay the balance of any

14   fine within 90 days of this judgement.

15           Community service:  As I said earlier, you must

16   complete 300 hours of community service, at an organization

17   that must be approved by your probation officer, over the

18   three years of supervised release.

19           The financial obligations are immediately payable to

20   the Clerk of the Court for the U.S. District Court.  Within 30

21   days of any change of address you shall notify the clerk of

22   the Court of the change until such time as the financial

23   obligation is paid in full.

24           Pursuant to Federal Rules of Criminal Procedure

25   32.2(b)(4)(A) and (B), the Court's Preliminary Order of

1    Forfeiture entered on January 5, 2024, is now final and shall

2    be made part of the sentence and included in the judgement.

3            The probation office shall release the presentence

4    investigation report to all appropriate agencies, which

5    includes the U.S. probation office in the approved district of

6    residence in order to execute the sentence of the Court.

7    Treatment agencies shall return the presentence report to the

8    probation office upon the defendant's completion of

9    termination from treatment.

10           Ms. Manning, I am sympathetic to Mr. Littlejohn's

11   family situation, and I'm willing to order a voluntary

12   surrender date a bit out, but I need to put a time on it.  Do

13   you have a proposal for a voluntary surrender date?

14           MS. MANNING:  Yes, Your Honor, we would propose a

15   date the week after Easter, so that Mr. Littlejohn can spend

16   it with his family.  That would be the week of April 1st.

17           THE COURT:  All right.  I will give a voluntary

18   departure date of April 30th, 2024.

19           MS. MANNING:  Your Honor, if we may, we also have a

20   requested designation.

21           THE COURT:  Yes, of course.

22           MS. MANNING:  We would request the Court recommend a

23   designation to SCP Marion, which is the closest men's federal

24   prison camp to his family's residence in St. Louis.  My

25   understanding for that is that is that the Court also has to

1    note that his release residence is within a certain distance

2    of the facility that I'm happy to provide his father's

3    address.

4            THE COURT:  Okay.  Well, why don't you provide that

5    under seal.  I don't want to announce that today.  As you

6    know, I don't have control over that, but I will make that

7    recommendation.  And I will do everything that I can to make

8    sure that happens.

9            MS. MANNING:  Thank you, Your Honor.  And as part of

10   that recommendation, and pursuant to Mr. Wilson's

11   recommendation in the presentence report we would also that

12   part of the recommendation include a referral to the Federal

13   Prison Industries Program, so that he might be employed during

14   his incarceration.

15           THE COURT:  Yes, definitely will do that.

16           Notice of appeal:  Sir, you can appeal your

17   conviction to U.S. Court of Appeals for the D.C. Circuit under

18   the narrow circumstances that were not waived in your plea

19   agreement.  Under some circumstances a defendant also has the

20   right to appeal the sentence to the D.C. Circuit.  A defendant

21   may waive that right as part of a plea agreement, however, and

22   you have entered into a plea agreement which waives some of

23   your rights to appeal the sentence itself.

24           Pursuant to 28 U.S.C. 2255, you also have the right

25   to challenge the conviction entered or sentence imposed to the

extent permitted by that statute and your plea agreement.  I

notice -- sorry, any notice of appeal must be filed within 14

days of the entry of judgment, or within 14 days of the filing

of a notice of appeal by the government.

If you're unable to afford the cost of an appeal,

you may request permission from the Court to file an appeal

without cost to you.  On appeal, you may also apply for

court-appointed counsel.

Mr. Littlejohn, I expect that the hardest part of

this for you is knowing the effect it has and will have on

your friends and family.  I cannot take that away.  But I can

tell you that I know firsthand that your family and friends

love you.  They are here for you today.  They will be with you

while you serve your sentence.  And they will be there for you

after you finish it.

What you did in breaking the law, and the prison

sentence I have given you, need not define your life.  You can

choose to let this chapter of your life define you as a

failure, or you can choose to let this chapter propel you to a

better version of yourself.  If you so choose, I have faith

you will be able to create options for yourself to lead a full

and productive life after you serve your sentence.  And I wish

you every luck in finding your way through this.  I say this

with all sincerity, other than your family, partner, and Ms.

Manning, no one will be rooting harder for you for that and

1     for that outcome than I will be.

2          Ms. Manning, to you and your team, I know how hard
3     you worked to avoid the result.  You and your team have done a
4     tremendous job for your client.  Unfortunately, the public
5     does not get to see most of that work.  But no doubt your
6     legal defense was a key reason why Mr. Littlejohn received a
7     plea deal of only one felony count.  And I thought your
8     sentencing memorandum was exceptionally well done.  It made
9     coming to my sentence considerably harder.  You gave me a
10    great deal to consider and researcher.  And it forced me to
11    provide a deeper, more reasoned analysis, which is undoubtedly
12    an important public benefit.

13          I have been around committed criminal defense
14    attorneys enough to know how hard tough sentences are on the
15    lawyers as well as the client.  I appreciate how deeply you
16    and your team will also feel this sentence.  For what it's
17    worth, the fact that I take a different view of the case than
18    you argued, does not make your advocacy any less impressive.

19          Are there any objections to the sentence imposed not
20    already on the record, or anything else that we should address
21    today, Mr. Jacobson?

22          MR. JACOBSON:  No, Your Honor.

23          THE COURT:  Okay.  My clerk has asked me to clarify
24    that no restitution is being ordered as a condition of
25    supervised -- oh, he doesn't want me to clarify that, he wants

1    you to clarify that.  Can you -- Mr. Jacobson, can you confirm

2    that we do not have any restitution being ordered here today?

3              MR. JACOBSON:  Yes, Your Honor.  No victims have

4    come forward requesting restitution.

5              THE COURT:  All right.  Ms. Manning, any objections

6    other than ones, of course, noted on the record?

7              MS. MANNING:  No, Your Honor.

8              THE COURT:  Thank you, everyone.  We are adjourned.

9              (The proceedings were concluded at 12:04 p.m.)

10

11              I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
12   record of proceedings in the above-entitled matter.

13                    _____/s/_____
                           Christine T. Asif
14                        Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

< Dates >.
April  81:18.
April 1st
    81:16.
January
    76:12.
January 22nd,
    2024.
    8:4.
January 23rd,
    2024  6:23.
January 23rd,
    2024,
    5:12.
January 5,
    2024,
    81:1.
January 6
    76:16, 77:5,
    77:10.
January 6th
    67:24, 76:7,
    76:14,
    77:1.
November,
    58:21.
September 2021
    55:23.
$100 17:14,
    78:21.
$2 17:5.
$4 18:13.
$5 17:4, 17:5,
    17:7, 17:9,
    71:11,
    78:20.
.
.
< 0 >.
0 73:23.
000 17:4, 17:5,
    17:7, 17:9,
    18:13, 28:20,
    29:11, 29:12,
    48:11, 71:11,
    73:19,
    78:20.
04 85:9.
.
.

< 1 >.
1 12:18, 13:5,
    13:15, 16:13,
    70:24, 78:15,
    78:16,
    78:20.
1(a 11:4.
1(d 15:21.
10 15:1,
    15:11.
1030(e)(1
    79:21,
    79:23.
10:00 a.m.
    1:12.
11 6:2, 54:16,
    54:19.
12 13:11,
    14:25, 16:9,
    54:9, 54:19,
    64:12,
    85:9.
13 10:22, 13:7,
    13:14, 14:24,
    17:6, 17:10,
    54:11,
    71:12.
1331 1:27.
13th 1:34.
14 83:2,
    83:3.
15 37:8.
150 36:24.
152 61:5.
16 9:11.
1641 22:10.
18 3:3, 13:11,
    14:25, 16:1,
    16:9, 17:19,
    18:12, 22:10,
    29:11, 32:7,
    35:15, 43:23,
    53:7, 54:9,
    57:16, 64:12,
    75:12, 78:9,
    78:21, 79:12,
    79:21,
    79:23.
19 79:2.
1954 68:25.

1963 68:25.
1972 6:2.
1984 78:8.
.
.
< 2 >.
2 17:12.
200 75:10.
2000 67:21.
20001 1:46.
20004 1:29,
    1:36.
2010 56:2.
2015 55:17.
2017 9:12,
    62:13, 65:24,
    66:1,
    77:15.
2018 56:2.
202 1:47.
2020 55:17.
2021 57:17.
2023 1:11,
    10:5.
2024 81:18.
21 79:2.
2255 82:24.
23 59:21.
23-343 2:2.
23-343-ACR
    1:6.
25 13:5, 54:16,
    54:19.
28 82:24.
284 44:7.
29 3:13,
    61:23.
2H3 12:18,
    13:15.
2H3.1 10:7,
    13:3.
.
.
.
< 3 >.
3 16:13,
    70:24.
30 80:20.
300 78:17,
    80:16.
3013 78:22.

30th 81:18.
32 7:24.
32.2(b)(4)(a
    80:25.
333 1:45.
354-3247
    1:47.
3553 16:1,
    29:13,
    78:9.
3553(a 18:11,
    53:7, 54:14,
    65:15,
    77:22.
3553(d 47:11.
36 78:15.
3663 17:19,
    79:12.
3663(a 79:12.
3771(a)(4
    32:7.
399 67:14.
3B1.3 10:9.
3C1.1 10:16.
3E1 11:4.
3rd 1:28.
.
.
< 4 >.
4 15:1.
400 16:21,
    56:1.
404 6:2.
443-446 6:2.
476 6:1.
489 6:2.
4C1.1 10:25,
    15:12.
.
.
< 5 >.
5 12:18, 13:2,
    13:5,
    13:14.
50 48:11,
    73:19.
500 1:35.
555 1:34.
562 6:1.
5B1 17:12.

5C1 15:21.
5K 27:18,
  28:8.
.
.
< 6 >.
6 17:2,
  73:23.
60 16:7, 19:14,
  24:12, 24:23,
  25:6, 25:9,
  27:10, 30:11,
  32:2,
  78:15.
60-month
  27:7.
600 28:21,
  28:22.
641 22:15,
  35:15.
6th 76:12.
.
.
< 7 >.
7 28:21.
7213 21:17,
  21:21, 24:8,
  29:16, 30:15,
  30:24, 31:5,
  71:23,
  72:1.
7213(a)(1 3:3,
  21:18.
722 57:16.
729 57:16.
73 29:12.
.
.
< 8 >.
8 28:20.
8.2 56:2.
.
.
< 9 >.
9 10:7, 11:23,
  13:13, 14:24,
  17:5,
  59:21.
90 80:14.
_____/s/___

_____
  85:15.
.
.
< A >.
A. 1:24.
a.m. 54:19.
abide 67:20,
  78:24.
abided 7:23.
abiding 4:4,
  30:3.
able 4:10,
  19:10, 43:19,
  49:19, 52:25,
  58:5,
  83:21.
above 16:8,
  18:4, 27:8,
  36:20, 36:24,
  47:21, 52:10,
  65:13.
above-entitled
  85:13.
absence 20:6.
absolutely 5:5,
  23:15, 46:17,
  46:22, 70:11,
  73:3.
abuse 79:10.
abused 26:3,
  32:21,
  63:13.
abusing 30:4.
accept 9:22,
  19:5, 70:4.
acceptable 4:5,
  58:10,
  64:24.
acceptance
  11:2,
  47:24.
accepted 19:15,
  28:3, 35:2,
  40:9.
accepting
  14:14,
  35:24.
access 9:16,
  10:11, 10:12,

26:2, 27:5,
  43:19, 48:24,
  55:16, 79:17,
  80:9.
accessing
  64:20,
  80:1.
accomplish
  63:13.
accordance
  78:21,
  79:12.
accorded
  20:21.
Accordingly
  11:3.
account 18:10,
  18:24, 19:18,
  20:16, 24:18,
  25:19, 29:10,
  41:20, 50:23,
  51:3, 54:5,
  72:25, 73:24,
  75:2.
accountable
  33:1, 34:23,
  58:3.
accounted
  36:22,
  47:10.
accounting
  37:16.
accurately
  31:2,
  57:12.
achieve 25:12,
  52:14.
acknowledged
  9:13, 49:9.
acknowledges
  33:5,
  69:25.
across 48:24.
Act 49:20,
  50:17, 66:15,
  68:9, 70:7,
  78:8.
acted 40:14,
  41:10,
  51:21.

ACTION 1:5,
  2:2.
actions 4:25,
  28:4, 31:12,
  33:6, 51:19,
  52:5, 52:17,
  58:24, 58:25,
  59:24, 61:1,
  63:18, 66:6,
  76:24.
activities
  60:5.
activity 31:8,
  73:14, 73:24,
  79:16.
actors 59:2.
acts 3:18,
  3:19,
  62:20.
actual 20:23,
  29:9.
actually
  63:11.
acutely
  68:14.
Adam 67:11.
addiction
  62:18.
addition 11:17,
  45:21, 47:19,
  53:17, 60:18,
  78:20.
additional
  10:23, 11:12,
  11:15, 20:2,
  23:3, 25:10,
  29:4, 29:8,
  29:10, 50:9,
  61:16.
address 4:8,
  5:11, 7:13,
  7:15, 13:23,
  18:18, 35:12,
  37:10, 66:20,
  68:7, 68:21,
  80:21, 82:3,
  84:20.
addressed
  59:13.
addressing

7:18, 35:6.
adequate
  64:8.
adequately
  36:22,
  54:5.
adjourned
  85:8.
adjusted
  10:22.
adjustment
  10:25,
  15:12.
adjustments
  10:23.
administration
  10:17, 33:14,
  40:25.
admitted
  64:18.
advance 7:3,
  27:6.
advanced
  33:24.
advantage
  60:7.
advisory 10:3,
  12:13, 13:11,
  14:24, 15:1,
  53:4,
  54:10.
advocacy
  84:18.
advocate 69:5,
  70:1.
afar 39:2.
Affected 29:11,
  29:12.
affects 6:18.
afford 64:8,
  83:5.
afforded
  57:25.
agencies 81:4,
  81:7.
agency 74:4.
agenda 33:25.
agendas 27:6,
  27:7, 77:4.
agents 11:11,

50:22.
aggravating
  31:25, 47:14,
  75:2.
agitator
  69:3.
ago 62:9.
agonized 49:7,
  49:24.
agree 8:20,
  24:22, 45:13,
  47:4, 47:17,
  59:21.
agreed 11:8,
  19:11,
  39:22.
agreement 7:4,
  75:20, 82:19,
  82:21, 82:22,
  83:1.
agrees 65:1,
  73:4.
ahead 21:16,
  24:6, 25:24,
  28:11, 43:13,
  45:7,
  50:12.
aim 11:16.
alike 14:11.
allegations
  33:20.
allow 9:15,
  79:19.
allowances
  70:14.
alone 51:20,
  52:20,
  59:6.
already 3:17,
  6:5, 18:15,
  20:15, 24:25,
  28:22, 29:15,
  35:2, 40:7,
  43:11, 55:20,
  56:20,
  84:20.
alternative
  23:13.
although 36:19,
  61:18, 71:6,

73:21.
Amendment
  56:19, 57:24,
  69:20.
America 1:5,
  2:3, 39:16,
  47:16,
  68:24.
American 33:16,
  50:10, 51:23,
  56:9, 57:22,
  57:25, 58:4,
  69:19.
Americans 4:7,
  14:12, 14:19,
  14:20, 14:22,
  26:2, 26:21,
  30:7, 32:23,
  32:25, 54:7,
  55:5, 58:10,
  59:10, 66:5,
  77:9, 77:20,
  78:12.
Americans.
  55:25.
among 17:16,
  24:13, 42:17,
  52:2, 53:22,
  58:21, 64:10,
  71:13.
amount 17:15,
  26:21,
  71:12.
ANA C. REYES
  1:17.
analysis 36:1,
  54:13,
  84:11.
anarchy 70:2.
Andre 1:39,
  2:22.
Andrew 39:20.
angry 74:9.
animus 40:12,
  41:9.
announce 57:19,
  82:5.
annual 28:20,
  28:21.
answer 45:6,

52:12.
answered
  4:24.
anticipating
  8:14.
anybody 49:3.
apologize
  51:18,
  63:17.
apparent 31:1,
  49:24.
appeal 82:16,
  82:20, 82:23,
  83:2, 83:4,
  83:5, 83:6,
  83:7.
Appeals
  82:17.
appear 50:16,
  59:17.
APPEARANCES
  1:21.
appearing
  38:16.
applaud 68:3.
applicable
  10:6, 12:4,
  12:15, 15:3,
  16:4, 53:21,
  75:1.
Application
  12:17, 13:2,
  13:14, 15:11,
  29:15.
applied 10:23,
  14:16, 49:14,
  54:15.
applies 10:4,
  10:8, 10:15,
  11:1,
  69:17.
apply 45:14,
  55:22, 69:23,
  83:7.
appreciate
  38:12,
  84:15.
approached
  63:2.
appropriate

13:2, 13:8,
13:12, 15:14,
24:16, 24:20,
24:23, 30:13,
32:2, 54:3,
67:13, 77:11,
81:4.
approved 80:17,
81:5.
approximately
28:21, 29:11,
29:21.
arena 65:10.
argue 49:22.
argued 67:15,
67:19,
84:18.
argues 15:10,
59:15, 63:24,
67:17, 71:19,
71:22, 71:25,
72:2, 72:17,
73:21,
74:24.
arguing 47:9.
argument 69:13,
75:1.
arguments 7:25,
56:11.
arisen 27:16.
arose 5:11,
7:14.
around 29:25,
58:19,
84:13.
article 26:16,
56:16.
articles 7:6,
44:7, 44:14,
72:20,
73:2.
Ashcraft
2:13.
aside 6:21,
29:14,
67:23.
Asif 1:41,
85:11,
85:16.
aspects 60:1.

assertions
60:14.
assess 55:21.
assessment
17:14.
assessments
78:21.
assigning
49:16.
assistance
27:19, 28:5,
75:16,
75:22.
assisted 11:15,
28:1, 28:4,
61:15.
associated
29:8,
59:19.
assuming
55:12.
assurance
61:11.
assured
37:22.
Athens 67:19.
attached
7:16.
attack 5:7,
5:9, 57:1,
59:10.
attacked 33:10,
33:12.
attacks 29:5.
attempted
10:17.
attention 38:3,
40:13, 41:10,
45:4, 60:24,
67:24.
Attorney 8:16,
80:12.
attorneys 38:8,
60:8,
84:14.
attracted
44:21.
Aurelius
52:22.
authentic

68:9.
author 56:17.
authorities
67:13.
authority 7:11,
63:13,
75:5.
authorize 7:19,
80:10.
authorizing
79:13.
authors 56:2.
available 6:5,
18:11, 53:21,
55:20, 56:3,
60:6, 70:17,
70:19.
avarice
40:11.
Avenue 1:45.
average 55:24,
56:1.
averse 7:21.
avoid 52:2,
53:22, 67:16,
71:18,
84:3.
avoidance 6:22,
54:12.
await 63:21.
aware 26:16,
38:21,
52:8.
away 3:24, 4:2,
4:22, 45:10,
45:14, 45:23,
45:25,
83:11.
.
.
< B >.
back 24:9,
29:23, 48:25,
50:5, 63:20,
68:3.
backing
25:15.
backlash
60:24.
bad 3:18,

3:19.
balance 65:18,
80:13.
balancing
70:8.
bank 72:25.
banking
13:24.
bar 67:6.
base 6:23,
10:7,
46:18.
Based 12:11,
16:8, 18:14,
30:11, 44:2,
54:7, 54:13,
60:23,
79:8.
basic 79:3.
basically
48:19.
basis 47:12,
54:17.
bear 18:8,
36:8.
bearing
40:20.
bears 69:24.
become 24:1,
48:18.
becomes 17:7,
54:23,
71:11.
Bedau 67:11.
bedrock 45:22,
51:3.
begin 36:3,
54:5.
Beginning 10:5,
45:8,
77:14.
behalf 2:10,
8:19,
59:23.
beings 62:4.
belief 5:1,
51:22,
76:23.
beliefs 65:11,
65:13.

believe 18:1,
    25:2, 25:7,
    25:10, 35:18,
    35:25, 38:24,
    40:19, 44:11,
    52:3, 66:14,
    66:15,
    77:3.
Believed 42:16,
    58:18.
beloved 53:2.
below 16:4,
    36:13, 36:14,
    36:15,
    74:23.
bench 51:4.
benchmark
    45:22.
benefit 20:20,
    20:23, 24:25,
    52:23,
    84:12.
best 38:7,
    52:4.
betrayed
    52:14.
better 63:9,
    83:20.
Biden 33:13.
biggest 21:6.
binder 43:3,
    48:6,
    50:16.
Birmingham
    68:23.
bit 24:4, 24:5,
    63:9,
    81:12.
blows 50:21.
bomb 58:17.
book 6:19.
booth 65:11.
bother 23:9.
bottom 23:18,
    34:17,
    36:17.
Branch 68:23.
breaches 11:17,
    61:17.
breadth

71:20.
break 4:6,
    27:12, 48:20,
    52:24, 54:16,
    66:21, 67:9,
    68:21, 70:6,
    70:12, 70:15,
    77:3.
breaking
    83:16.
breaks 70:2.
Brevard
    57:16.
brick 63:5,
    63:6.
brief 7:18,
    7:19, 30:15,
    31:2, 43:3,
    48:8, 49:20,
    71:19.
briefly 5:11,
    7:13, 28:16,
    35:12, 36:2,
    76:6.
bring 19:8,
    22:2, 22:9,
    22:12, 22:20,
    23:15.
bringing 46:21,
    55:2.
brings 10:21.
broad 5:24,
    33:16.
broke 46:9,
    69:14.
brother 38:20,
    61:25, 62:18,
    62:24.
brought 4:17,
    20:6, 23:4,
    23:10, 25:7,
    25:10, 29:17,
    41:9.
Buchanan
    39:20.
bulwark 59:2.
burden 52:9.
business 60:4,
    60:19,
    79:16.

businesses
    29:12.
Buzzfeed 48:11,
    73:20,
    74:6.
.
.
< C >.
C. 1:10, 1:46,
    15:16, 16:1,
    17:19, 22:10,
    32:7, 53:7,
    57:16, 67:15,
    76:18, 78:9,
    78:21, 79:12,
    79:21, 79:23,
    82:17, 82:20,
    82:24.
Cabinet 6:20.
calculated
    64:17.
calculates
    12:13.
calculating
    53:4,
    77:18.
calculation
    10:3, 10:4,
    11:24, 15:23,
    17:8, 47:12,
    47:19.
calculations
    16:8.
calculus
    65:3.
call 3:16,
    4:24,
    44:15.
called 32:19,
    32:20.
calling 8:14.
camp 81:24.
campaign 32:9,
    32:10,
    55:8.
candidate
    55:10,
    58:15.
cap 25:6.
capable 80:1.

Capitol 58:11,
    76:12,
    76:19.
capitols
    58:17.
care 39:19,
    39:21, 39:22,
    47:10, 62:10,
    62:14.
careful 29:19,
    31:10.
carefully 5:16,
    77:6.
caring 3:14,
    62:6.
carries 16:6,
    70:21.
carry 77:7.
carrying
    58:12.
Cars 14:7.
catalyst
    65:25.
Category 12:5,
    12:6, 12:7,
    12:12, 14:25,
    36:24,
    77:5.
caught 43:7.
cause 72:24.
caused 12:24,
    13:17, 27:25,
    52:6, 59:24,
    77:8.
causing 77:9.
cents 13:23.
century
    32:20.
certain 6:7,
    7:15, 12:19,
    13:25, 45:17,
    58:24,
    82:1.
Certainly
    43:19, 50:13,
    55:4,
    60:18.
certify
    85:11.
chair 5:2.

challenge
    82:25.
chambers
    5:12.
change 55:10,
    55:11, 56:18,
    62:6, 63:8,
    80:21,
    80:22.
changed 35:18,
    68:9.
channels 48:16,
    48:18.
chapter 83:18,
    83:19.
character
    62:19,
    68:17.
characteristic
    45:18.
characteristics
    53:20, 61:22,
    62:2,
    63:25.
characterized
    31:3.
charge 16:6,
    18:24, 31:23,
    35:23,
    70:20.
charged 21:21,
    21:22, 21:24,
    22:7, 24:11,
    24:12, 25:20,
    35:17, 46:11,
    46:13, 46:19,
    46:20,
    76:17.
charges 19:25,
    20:5, 20:9,
    23:3, 23:5,
    23:13, 23:17,
    23:22.
charging 22:15,
    23:2, 25:3,
    35:15,
    71:22.
Charles 2:3,
    3:1, 62:24,
    78:10.

CHARLES EDWARD
    1:10.
Chaz 63:1.
checked 44:5.
Cherry 1:32,
    2:10, 35:5,
    35:10, 47:11,
    48:5.
child 30:23.
children
    14:1.
choice 28:23,
    77:3.
choose 70:13,
    83:18, 83:19,
    83:20.
choosing
    67:19.
chose 42:15,
    77:15.
Christine 1:41,
    85:11,
    85:16.
Circuit 57:16,
    82:17,
    82:20.
circulated
    60:23.
circumstance
    50:1,
    61:18.
circumstances
    3:12, 9:24,
    18:14, 47:14,
    53:19, 59:8,
    61:20, 65:3,
    65:20, 71:23,
    72:2, 72:8,
    76:20, 82:18,
    82:19.
cite 35:25,
    37:19.
cited 30:15,
    30:21, 30:24,
    36:11, 36:19,
    37:15, 41:3,
    43:2, 48:8,
    73:12.
cites 44:14,
    73:16.

citizen
    67:17.
citizens
    26:4.
city 69:2.
Civil 6:18,
    6:21, 42:12,
    69:10.
claim 69:3.
clarify 84:23,
    84:25,
    85:1.
CLARKE 1:24,
    2:12, 2:15,
    2:17.
classified
    31:6,
    74:21.
clear 5:6,
    5:21, 7:20,
    21:10, 22:24,
    28:13, 36:6,
    41:24, 42:3,
    46:17, 46:22,
    70:12.
clearances
    50:20.
Clearly 11:1,
    32:24,
    50:10.
Clerk 5:15,
    7:16, 7:24,
    38:6, 80:20,
    80:21,
    84:23.
clerks 38:9,
    67:2.
client 9:1,
    46:9, 48:21,
    48:23, 52:15,
    84:4,
    84:15.
climate 65:6.
cloaked
    67:25.
close 38:20,
    49:5.
closest
    81:23.
co-conspirators

28:2.
co-defendant
    75:17,
    75:23.
Code 3:3,
    35:15.
coincide
    33:13.
coincidentally
    6:14.
Cole 2:13.
colleague
    47:11.
colleagues
    38:3,
    52:15.
collection
    79:10.
college 42:5,
    42:13.
colloquial
    28:14.
colonies
    67:6.
colossal 50:3,
    50:4.
colossally
    3:18.
Columbia
    1:44.
COLUMBIA 1:2.
combination
    15:9, 63:8.
combined
    39:21.
Comey 65:25.
coming 35:3,
    66:13,
    84:9.
comments 32:16,
    44:14.
Commission
    5:22.
commit 3:18,
    79:6.
commitment
    58:4, 58:7,
    63:1.
committed
    26:12, 35:14,

46:10, 47:2,
50:4, 62:3,
73:8, 78:1,
84:13.
Committee
5:14.
committing
51:21.
common 45:22,
47:6.
communicate
30:13.
communicates
27:4.
communications
79:24.
Community
16:19, 53:2,
70:25, 78:17,
80:15,
80:16.
Company 9:13,
9:14, 10:10,
48:25, 60:18,
77:15.
comparators
77:11.
comparison
30:25.
comparisons
73:7.
compassion
62:3.
compelling
65:3.
compensation
51:21.
competitor
74:10.
complete
80:16.
completely
42:18.
completion
81:8.
complex
64:11.
compliance
60:15.
comply 53:9,

60:11,
79:14.
component
17:18,
71:15.
Computer 79:19,
79:20, 79:22,
80:5.
computer-aided
1:50.
computers
79:22,
79:25.
conceded 47:18,
54:4.
concedes 13:1,
13:7,
13:12.
conceivable
23:3.
concern 21:2,
58:6, 60:3.
concerned
68:14.
concerning
61:4.
concerns 24:7,
37:1.
conclude
54:9.
concluded
55:25,
85:9.
concludes
63:19.
conclusion
43:9,
43:12.
conclusions
56:7, 56:11,
71:6.
condemnable
71:24.
condition 15:8,
16:20, 71:1,
78:16, 79:8,
80:2, 80:3,
80:5,
84:24.
conditions

15:9, 38:22,
74:15, 78:25,
79:1, 79:5,
79:14.
conduct 5:24,
10:20, 10:21,
11:15, 21:19,
23:19, 31:23,
40:7, 41:13,
42:10, 46:12,
46:25, 47:1,
47:2, 47:8,
50:15, 53:14,
53:24, 56:17,
57:13, 58:7,
59:17, 61:15,
64:9, 64:24,
72:6, 79:4,
80:3.
conducted
23:16,
80:7.
confidence
52:21.
confident
21:11, 22:12,
22:21.
confidential
12:22, 21:12,
43:20, 60:13,
73:19.
confinement
15:9,
76:22.
confirm 9:10,
85:1.
Congress 5:22,
6:8, 53:7,
55:11,
69:18.
congressional
56:20.
connection
8:24.
consequences
27:7, 31:11,
31:20, 43:17,
52:9, 61:3,
64:3.
consider 5:25,

12:16, 16:2,
17:16, 23:12,
53:6, 53:18,
54:8, 65:4,
71:13, 77:7,
84:10.
considerable
66:18,
72:24.
considerably
84:9.
consideration
5:18, 14:21,
36:21, 51:8,
51:13,
78:9.
considered
54:2, 71:2,
71:16,
77:21.
considering
5:16, 11:22,
31:17, 66:12,
66:19,
76:19.
consistent
62:23,
68:5.
constant
37:3.
Constitution
5:4, 45:21,
68:8.
constitutional
5:7, 40:2,
45:16, 57:2,
58:12.
constructed
66:7.
consultant
64:1, 64:19,
72:22.
consumer
56:4.
contain 6:5.
contained
26:17,
72:23.
containing
58:20.

contains 80:6.

contemplate 24:14.

contend 74:11.

contest 59:16.

context 68:24.

continue 5:10, 57:15.

continued 68:16.

continues 60:14, 76:14.

Contitution 1:45.

contract 42:15.

contractors 64:14.

contribute 53:1, 59:11.

control 82:6.

controlled 79:7.

convey 38:23.

convicted 20:1, 36:12, 43:10, 43:11, 43:14.

conviction 10:19, 10:21, 17:3, 71:10, 82:17, 82:25.

convinced 48:19.

cooperate 27:12, 79:10.

cooperated 11:7, 19:16, 24:18, 24:24, 46:14, 61:13.

cooperating

35:24.

cooperation 20:15, 27:11, 27:20, 27:22, 28:6, 28:7, 28:13, 28:14, 46:21, 61:18, 75:21, 76:1.

core 22:4, 23:19, 23:22.

correct 13:6, 17:24, 18:2, 19:12, 27:15, 27:24, 85:12.

corresponding 74:21.

corrosive 68:15.

corruption 33:18, 33:20.

cost 17:16, 50:9, 71:13, 83:5, 83:7.

counsel 5:18, 7:3, 11:6, 11:13, 46:2, 47:20, 53:5, 73:16, 83:8.

Count 17:14, 19:11, 21:9, 21:18, 21:25, 22:1, 22:15, 22:19, 22:20, 23:15, 23:16, 24:2, 25:4, 25:8, 25:21, 35:12, 78:15, 78:16, 78:20, 84:7.

countless 60:17, 62:20.

country 3:23, 39:4, 52:3, 53:2, 55:25,

58:19, 65:25, 72:15.

counts 19:8, 21:21, 21:24, 22:2, 22:8, 25:8, 25:11.

course 5:2, 7:10, 7:25, 13:17, 25:25, 29:21, 40:17, 41:18, 41:19, 41:20, 50:6, 51:16, 55:20, 59:13, 63:22, 68:20, 68:22, 70:5, 81:21, 85:6.

court-appointed 83:8.

courthouse 6:15.

courtroom 3:9, 8:11, 8:13, 28:19, 32:9, 33:9, 52:12, 69:23.

courts 5:23.

cover 26:9, 50:21.

coverage 60:12.

covered 13:15, 21:19.

covers 25:4, 31:23.

create 83:21.

created 66:3.

creative 22:2, 23:21.

credible 40:18, 58:16, 69:13.

credit 47:23.

crime 25:17, 27:1, 27:3, 33:8, 33:24, 35:13, 41:14, 45:15, 46:10, 47:1, 49:4,

50:4, 51:20, 52:12, 62:3, 62:5, 76:8, 79:6.

Crimes 20:1, 26:13, 31:12, 31:13, 31:14, 31:15, 33:24, 46:14, 46:19, 53:15, 65:16, 78:1.

Criminal 1:5, 2:2, 12:4, 12:6, 12:7, 12:11, 14:25, 26:6, 31:7, 36:23, 36:25, 52:14, 53:14, 54:6, 57:5, 57:13, 61:23, 63:14, 64:3, 64:9, 64:12, 77:16, 80:24, 84:13.

criteria 10:24.

Criticism 57:20, 58:1.

criticize 57:25.

Crito 66:24, 67:15, 67:17.

cry 73:15.

crystal 41:24.

cultivated 48:14, 74:6.

cum 42:5.

current 44:7, 59:12, 65:5.

cushion 4:10.

cut 32:10, 49:21.

.

.

< D >.

dad 46:16.
damage 26:5,
  26:6, 26:20,
  60:10,
  60:19.
dangerous 9:17,
  33:17.
darkness 54:21,
  54:25.
data 10:11,
  10:12, 10:13,
  11:21, 13:21,
  13:24, 13:25,
  14:13, 21:25,
  26:3, 26:19,
  26:25, 27:5,
  29:25, 30:14,
  32:22, 43:20,
  48:10, 49:19,
  49:20, 63:6,
  73:1,
  79:24.
databases
  11:17, 48:10,
  61:17,
  75:9.
date 17:20,
  81:12, 81:13,
  81:15,
  81:18.
daughter
  34:6.
day 5:15, 5:17,
  14:8, 25:3,
  48:4, 60:4,
  62:11.
days 4:16,
  80:14, 80:21,
  83:3.
DC 1:29,
  1:36.
deal 32:19,
  32:20, 33:24,
  33:25, 34:24,
  35:2, 60:23,
  84:7,
  84:10.
dealing 21:5.
death 54:25,
  58:16,

67:16.
debated 67:14,
  67:21.
decades
  39:13.
decide 55:7,
  55:8.
decided 9:14,
  51:25.
deciding 52:8,
  54:2, 57:7.
decision 6:9,
  6:23, 18:8,
  21:7, 23:2,
  23:9, 23:15,
  25:3, 38:14,
  46:19, 49:23,
  49:24, 52:11,
  55:7, 66:11,
  66:13.
decisions 4:1,
  52:4, 64:15,
  64:17,
  77:18.
declaring
  57:2.
declined
  73:25.
decrease
  11:1.
decreased
  11:3.
dedicated
  42:12.
deeds 33:1.
deep 3:14,
  50:7, 50:8,
  50:10,
  50:11.
deeper 84:11.
deeply 4:15,
  13:22, 61:4,
  67:8,
  84:15.
defend 5:4,
  67:24.
defendants
  53:22, 73:6,
  74:21, 74:22,
  75:5, 75:7,

75:16.
defense 4:18,
  11:6, 30:21,
  45:9, 47:20,
  84:6,
  84:13.
deference
  43:25.
define 83:17,
  83:18.
defined 79:21,
  79:23.
definitely
  42:9, 42:23,
  82:15.
defying 70:1.
degree 42:7.
Delaware
  62:15.
deliberate
  64:11,
  64:15.
deliberately
  77:15.
deliberations
  21:3, 21:5.
delivering
  63:4.
demands 5:9,
  65:6.
Democracy 5:7,
  9:18, 40:1,
  45:16, 54:20,
  54:21, 54:22,
  57:2, 58:2,
  58:8, 58:25,
  59:5, 76:15,
  76:24.
democratic
  59:14.
democrats
  56:20.
demonstrated
  11:2.
demonstration
  69:1.
depart 74:1.
Department
  1:25, 7:2,
  8:22, 11:10,

23:1, 33:5,
  43:4, 44:3.
departure
  12:17, 12:19,
  13:2, 13:7,
  13:13, 14:23,
  15:3, 15:15,
  17:6, 29:14,
  36:4, 36:6,
  37:8, 37:17,
  54:4, 54:11,
  54:15, 71:21,
  75:21, 78:13,
  81:18.
departures
  11:22, 12:16,
  75:15,
  75:18.
deprive 51:6.
described 18:4,
  47:2, 50:3,
  61:20.
describes
  68:24.
deserved
  52:1.
deserves 21:8,
  40:3.
designated
  12:7.
designation
  81:20,
  81:23.
desire 52:6,
  66:2.
desires
  33:13.
Despite 47:7,
  52:5,
  72:17.
destroying
  26:10.
destructive
  68:18.
detail 16:4,
  20:23.
details 28:24,
  30:6.
detect 11:20.
deter 11:20,

40:5, 53:14,
  64:13,
  67:9.
determination
  20:4, 20:5,
  23:5, 23:14,
  23:17,
  79:9.
determinations
  8:7, 22:25.
determined
  12:15, 54:10,
  71:3.
determining
  17:15, 71:12,
  71:17.
deterrence
  30:12, 31:13,
  37:2, 42:4,
  43:5, 64:8,
  77:25.
deterrent
  44:2.
device 80:5.
devices 30:1,
  79:24,
  80:1.
devoted 61:24,
  63:3.
devotion 62:2,
  62:17.
diary 34:6.
dice 23:21,
  27:13.
die 54:22.
dies 54:21.
difference
  18:22,
  18:24.
differences
  74:2.
different 3:12,
  5:2, 21:25,
  30:1, 49:14,
  72:5, 72:6,
  73:21, 74:24,
  75:19, 75:23,
  76:8,
  84:17.
differently

4:12.
difficult
  23:23, 51:5,
  60:10,
  62:1.
diligent
  63:1.
direct 60:16.
directed
  79:11.
directly 24:14,
  28:18.
disagree 5:21,
  40:2, 45:13,
  74:18.
disagreement
  59:12.
disagreements
  69:15.
disagrees
  46:10.
disclose 29:24,
  52:8, 55:4,
  55:5, 66:1,
  66:5, 74:5,
  74:21.
disclosed
  14:13, 26:18,
  28:20, 29:7,
  32:24, 60:22,
  61:7, 72:11,
  73:19,
  73:25.
disclosing
  21:11, 21:12,
  26:4, 30:14,
  30:19, 50:20,
  56:8, 57:8,
  64:3, 64:20,
  66:22.
disclosure 3:2,
  16:6, 21:25,
  22:1, 22:5,
  22:8, 22:20,
  23:19, 41:4,
  41:8, 55:11,
  56:18, 59:19,
  69:16, 70:20,
  72:3, 72:24,
  73:11, 76:4,

80:8.
disclosures
  11:21, 13:3,
  26:5, 26:11,
  28:18, 29:11,
  29:21, 31:10,
  59:17.
discourse
  26:8.
discovery
  11:15,
  61:16.
discretion
  5:23, 65:2.
discretionary
  78:25.
discuss 7:17,
  7:20, 16:4,
  18:7, 54:1,
  61:21, 67:5,
  69:7, 76:6.
discussed 9:2,
  12:12, 16:3,
  59:7, 73:17,
  75:3, 76:1,
  76:3.
discussing
  43:1, 66:25,
  67:3.
discussion 4:8,
  65:5, 66:23,
  68:20, 69:10,
  69:12.
dismissing
  66:17.
disobedience
  69:10.
disobey 69:7,
  69:11.
disobeying
  70:15.
disparaged
  60:17.
disparities
  53:22,
  71:19.
disparity
  75:24.
disputed 9:7.
disregard

39:11, 39:12,
  39:13.
disregarding
  40:3.
disrespect
  32:17.
dissecting
  3:22.
disseminated
  29:4.
dissemination
  10:13.
dissimilar
  50:15.
dissuade
  65:2.
distance
  82:1.
distinct
  41:12.
distinction
  41:2.
distinguishing
  69:3.
distress
  59:25.
District 1:1,
  1:2, 1:18,
  1:43, 1:44,
  80:20,
  81:5.
division
  56:4.
divulge 30:6.
DNA 79:10.
docket 7:24,
  13:5,
  59:21.
documents 7:3,
  73:19,
  74:8.
Doe 44:24.
doing 5:1,
  7:22, 34:4,
  40:5, 45:19,
  63:5, 64:4,
  66:18.
DOJ 22:1,
  33:20.
dollars

13:22.
domestic 5:5.
Donald 9:17,
    33:9, 34:9.
done 8:18,
    10:4, 34:14,
    38:10, 61:10,
    84:3, 84:8.
doorstep
    14:6.
doubt 6:22,
    50:3, 54:12,
    62:23,
    84:5.
down 61:14,
    77:11.
download
    10:13.
downward
    75:15.
dozens 37:15,
    68:4.
draw 56:10,
    73:7.
driven 52:5,
    66:6.
driver 13:24.
drives 28:5.
drug 79:7.
due 38:21,
    46:1.
dumb 42:8,
    42:9.
during 6:18,
    62:1, 62:8,
    73:5, 78:17,
    82:13.
duties 58:5.
duty 67:17,
    68:12.
.
.
< E >.
earlier 30:12,
    42:1, 46:13,
    65:5, 70:18,
    70:25, 71:3,
    76:1,
    80:15.
Easter 81:15.

easy 38:14,
    52:1,
    66:11.
economic 31:18,
    55:22,
    60:10.
economics
    42:7.
economy 67:5.
editor 74:9.
Edward 2:3,
    78:10.
Edwards 48:7,
    73:17, 73:22,
    74:1, 74:3,
    74:14, 74:18,
    75:11,
    75:14.
effect 44:2,
    58:12, 68:15,
    83:10.
effective
    55:19,
    65:17.
effects 6:10.
efficiency
    63:5.
egregious 47:8,
    62:5, 71:23,
    73:8.
eight 49:10.
either 5:25.
elected 19:25,
    41:22, 41:25,
    57:3, 58:3,
    58:5, 59:3,
    65:8.
election 26:7,
    58:20.
electronic
    79:23.
eligibility
    55:10.
eligible 16:23,
    71:8.
Elon 33:9,
    34:9.
email 5:12,
    5:17, 7:20.
emailed 7:14.

emailing
    38:6.
embarrassing
    28:24.
embodiment
    39:20.
emotional
    61:2.
employed
    82:13.
employee
    30:22.
employees 75:7,
    75:10.
Employment
    9:13, 77:14,
    79:15.
Emporer
    52:21.
enable 60:14,
    79:17.
encouraged
    74:12.
end 9:18,
    11:21, 14:8,
    14:15, 15:14,
    23:7, 25:3,
    37:7, 52:12,
    53:9, 56:5,
    57:22, 60:7,
    60:15, 60:20,
    61:3.
endangers
    50:21.
endorsed
    67:19.
endorsing
    56:6.
ends 54:23.
enemies 5:5.
enforcement
    37:4, 50:19,
    75:9.
engage 77:15,
    79:15.
engaged
    64:11.
engagement
    37:3.
engenders

76:25.
engineer
    76:4.
enhancement
    24:15.
enhancements
    47:19.
enormous 25:16,
    26:21.
enough 3:17,
    8:21,
    84:14.
ensure 53:8,
    58:4.
entered 81:1,
    82:22,
    82:25.
enthusiasm
    63:3.
entirely
    50:14.
entities 28:22,
    59:20.
entitled 6:20,
    14:11, 14:18,
    14:21, 55:23,
    56:14.
entries
    49:25.
entrusted
    26:2.
entry 83:3.
episode 6:12.
equal 14:11,
    14:14.
equally
    69:17.
equivalent
    37:7.
error 50:4.
Espionage
    50:17.
Esquire 1:23,
    1:24, 1:31,
    1:32.
essentially
    28:23.
establish
    13:10, 68:11,
    79:3.

established
68:13,
70:18.
estimated
56:1.
ethics 66:12,
66:19.
evacuations
58:19.
evading 70:1.
event 20:3.
Everyone 32:8,
44:18, 46:2,
56:14, 63:9,
66:24, 67:24,
69:17,
85:8.
everything
41:23, 60:3,
65:6, 65:8,
66:14,
82:7.
evidence 11:15,
26:10, 61:16,
74:11,
80:6.
evidentiary
8:10.
evolution
67:5.
ex-husband
30:22.
exact 21:20,
47:1.
exactly 35:13,
47:2, 60:2,
68:2.
example 30:20,
34:5, 36:23,
41:2, 48:7,
62:8.
examples 12:19,
58:22.
excellent
46:2.
exceptional
29:16,
39:18.
exceptionally
84:8.

excerpts
59:24.
excess 16:21.
exchange
26:23.
exclusive
3:20.
excuse 6:16.
execute 81:6.
executed 31:16,
44:15.
execution
29:19, 31:10,
68:17.
exemplary
42:11.
exercise 58:5,
65:2.
exercising
56:19.
exist 75:3.
exists 68:8,
80:4.
expect 21:13,
26:23, 26:24,
83:9.
expectation
64:20.
expectations
79:3.
expected 17:16,
71:13,
75:20.
expecting
8:10.
experience
52:25,
64:5.
experienced
26:1,
72:22.
expiration
11:9.
explain 18:22,
20:22, 25:1,
54:17.
explained 29:2,
36:10, 61:5,
62:25.
explains 11:6,

62:9, 62:19,
63:16, 65:24,
66:8.
explanation
19:21.
explicit
68:9.
exploit
29:22.
exposed 20:7.
exposing
58:6.
exposure
20:2.
expressed
63:22,
76:13.
expression
65:10.
expressly 5:22,
56:20.
extensive
26:20,
29:19.
extent 25:5,
83:1.
extract 30:5.
.
.
< F >.
F.4th 57:16.
face 27:7,
31:1, 55:6.
faced 19:25,
20:17.
faces 70:22.
facility
82:2.
facing 20:14,
20:15, 20:16,
20:17, 20:20,
21:9, 24:2,
73:22.
fact 6:7, 6:9,
9:7, 9:25,
20:15, 24:1,
40:12, 40:19,
44:20, 45:9,
46:20, 52:13,
72:25, 73:1,

76:3,
84:17.
factor 29:18,
54:8, 59:7.
factors 16:2,
17:16, 18:8,
18:11, 19:18,
32:1, 36:21,
38:13, 45:15,
53:7, 53:25,
54:2, 54:9,
54:14, 61:21,
65:19, 71:13,
75:2, 76:2,
77:21.
facts 9:24,
18:14, 36:9,
49:21, 75:1,
76:20.
factual 8:7,
9:22,
11:18.
failure
83:19.
failures
3:23.
fair 20:19,
48:3.
fairness 48:2,
66:13,
66:20.
faith 27:1,
52:17, 52:24,
83:20.
fall 77:4.
false 60:14.
families 56:1,
57:11.
family 3:13,
4:11, 4:23,
14:5, 29:1,
32:23, 38:18,
49:5, 50:11,
51:14, 58:6,
59:25, 60:17,
60:25, 62:9,
62:11, 62:12,
62:17, 81:11,
81:16, 81:24,
83:11, 83:12,

83:24.
far 46:5,
   71:23, 73:14,
   76:16,
   77:5.
farewell
   68:7.
fatal 68:18.
fate 49:16,
   63:21.
father 43:18,
   82:2.
favor 70:11.
FBI 34:7.
FCRR 1:41,
   85:11.
fear 29:2,
   57:10, 76:13,
   76:25.
fearful
   65:24.
fears 67:2.
Federal 33:18,
   42:22, 42:23,
   55:24, 56:1,
   60:11, 69:17,
   75:7, 75:10,
   79:6, 80:24,
   81:23,
   82:12.
federalism
   66:13,
   66:20.
feel 6:8, 8:21,
   44:10, 63:21,
   67:9,
   84:16.
feelings
   4:10.
fell 36:15.
felon 43:10,
   43:14.
felony 18:24,
   21:9, 21:19,
   24:2, 25:20,
   43:11, 73:22,
   76:17,
   84:7.
felt 49:13,
   50:1, 50:2,

51:23, 52:1,
   65:24, 66:2,
   66:15.
fentanyl
   58:20.
few 4:16.
fictional
   78:3.
fighting 22:22,
   56:21.
figure 20:13,
   23:10.
file 83:6.
filed 7:7,
   7:11, 7:12,
   7:18, 8:3,
   8:23, 55:14,
   75:4, 83:2.
files 75:9.
filing 7:20,
   7:24, 61:5,
   83:3.
filings
   13:21.
final 4:20,
   8:3, 13:10,
   14:24, 16:9,
   18:8, 20:5,
   30:9, 53:4,
   54:10,
   81:1.
finances
   56:4.
Financial
   13:24, 26:22,
   28:25, 30:20,
   32:22, 32:25,
   41:11, 73:20,
   80:8, 80:9,
   80:10, 80:11,
   80:19,
   80:22.
Financing
   6:21.
find 57:12,
   58:10, 61:4,
   64:12, 72:17,
   73:11, 74:23,
   75:24, 76:9,
   77:13.

finding 73:4,
   83:23.
findings
   9:25.
finds 77:22.
Fine 17:3,
   17:7, 17:9,
   17:15, 18:13,
   71:10, 71:12,
   78:19, 80:13,
   80:14.
finish 83:15.
fired 74:9.
firing 66:1.
firm 52:15.
firmness 5:9.
First 10:24,
   28:17, 30:17,
   35:6, 36:9,
   36:11, 38:2,
   47:22, 51:12,
   51:17, 56:17,
   56:19, 57:24,
   69:4, 69:20,
   74:3.
firsthand
   83:12.
fiscal 73:5.
fit 33:9.
five 16:7,
   16:24, 17:1,
   44:1, 70:21,
   71:9, 73:5,
   73:14.
five-year
   20:17, 20:20,
   73:13,
   73:22.
flat 56:9.
flavor 30:24.
flee 67:15.
Floor 1:28.
follow 26:11,
   39:5, 70:14,
   73:3.
following 7:3,
   13:14, 14:23,
   17:6, 52:22,
   70:23, 75:18,
   78:13, 78:25,

79:14.
follows 10:5.
Forbes 56:4.
force 52:23.
forced 19:9,
   84:10.
forcefully
   63:23.
foregoing
   85:12.
foreign 5:5.
foremost
   51:17.
Forfeiture
   81:1.
forget 4:21.
forth 3:25,
   8:7, 16:8.
forthrightly
   63:23.
forward 2:4,
   40:8, 52:24,
   77:7, 85:4.
found 12:5,
   53:23.
founders 67:22,
   68:1, 68:2,
   68:14.
four 12:14.
four-level
   13:1, 13:7,
   13:13, 14:23,
   15:15,
   71:21.
four-point
   37:17.
fragile
   52:17.
framework
   15:22, 18:4,
   66:6.
frank 4:7,
   39:15.
frankly 31:2,
   47:22.
fraud 41:11,
   41:15.
freaks 66:24.
frequently
   19:4.

Friday 75:6.
friend 3:16,
    61:24, 62:18,
    62:25, 66:8,
    66:18.
friends 3:13,
    4:11, 4:23,
    38:19, 38:21,
    42:13, 49:6,
    50:10, 83:11,
    83:12.
friendship
    62:21.
front 3:21,
    60:5.
Fry 73:13.
fulfill
    62:12.
full 4:1, 25:4,
    29:21, 40:9,
    52:11, 64:21,
    80:23,
    83:21.
fully 4:8,
    8:16, 60:11,
    60:19.
function 20:8,
    39:5, 58:8.
functioning
    58:2.
fundamental
    47:12,
    68:18.
fundamentally
    31:4, 42:16,
    62:6.
funds 35:16.
future 11:17,
    11:20, 50:12,
    53:15, 57:11,
    57:16, 61:9,
    61:12, 61:17,
    65:16, 78:1,
    79:9.
.
.
< G >.
G. 10:7, 10:9,
    12:18.
gain 30:20,

41:11.
gave 48:11,
    84:9.
general 30:12,
    30:23, 31:13,
    43:5,
    50:18.
generally
    15:14, 16:21,
    19:21.
generously
    33:6.
genuine 5:1.
George 68:7.
gesture
    62:20.
gestures
    62:21.
getting 27:18,
    33:24, 43:7,
    46:5.
give 18:17,
    19:22, 24:12,
    24:18, 25:6,
    27:10, 33:7,
    34:5, 34:25,
    43:25, 46:3,
    81:17.
given 51:13,
    57:14, 64:5,
    64:21,
    83:17.
gives 6:16,
    25:6,
    31:24.
giving 21:9,
    24:24, 32:15,
    32:16.
Google 44:7.
gotten 4:3,
    28:8, 46:6,
    50:6, 77:1.
governing
    54:22.
grab 2:14.
graduated
    42:5.
grand 62:20.
grandfather
    62:13,

62:15.
grandkids
    34:22.
grave 27:7.
great 47:5,
    59:25, 78:5,
    84:10.
greater 17:2,
    53:9, 74:22,
    77:23.
greatly
    38:12.
Greeks 67:1.
Griffin
    33:10.
group 60:8.
guarantee
    14:12.
guess 43:22.
guidance
    39:12.
guided 4:25.
guideline 10:3,
    10:6, 13:11,
    14:25, 15:2,
    15:4, 16:13,
    17:9, 18:10,
    64:13,
    70:24.
guilty 3:1,
    11:8, 33:2,
    35:13, 35:23,
    46:11, 46:15,
    53:23,
    75:7.
guy 67:6.
.
.
< H >.
half 15:20,
    36:17.
Hamilton 68:2,
    68:4.
hand 49:22,
    77:11.
handful
    58:21.
handled 3:17.
hands 39:10,
    51:7, 57:8,

64:15,
    77:19.
happened 21:10,
    25:16, 28:2,
    30:18, 31:1,
    34:1, 36:18,
    41:25, 48:23,
    49:18.
happens 44:22,
    82:8.
happy 82:2.
harass 14:5.
hard 45:6,
    63:5, 84:2,
    84:14.
harder 83:25,
    84:9.
hardest 83:9.
harm 12:24,
    13:18, 14:21,
    26:14, 26:15,
    26:19, 27:25,
    29:12, 32:23,
    52:7, 56:10,
    57:14, 58:7,
    58:25, 61:10,
    64:6, 70:8,
    70:10, 72:3,
    72:18, 72:24,
    73:9, 77:9,
    77:17.
harmed 58:25,
    63:18.
harming 59:1.
harms 57:10,
    72:6, 73:3.
harsh 4:9.
head 31:15.
heads 44:18.
healing
    62:22.
health 13:25,
    38:22,
    74:15.
hear 32:6,
    40:24,
    49:7.
heard 19:20,
    59:15.
Hearing 3:22,

6:4, 7:4,
  7:15, 7:17,
  8:10, 9:22,
  35:17, 39:3,
  43:9, 48:4,
  53:5.
heartbroken
  39:1.
heist 21:6.
held 34:23.
help 4:24,
  20:10, 22:22,
  27:23, 27:25,
  52:20, 57:6,
  61:17, 61:25,
  62:10.
helped 62:14,
  72:12.
helpful 6:14,
  74:18, 75:21,
  76:9.
Helton 36:19.
Herbert
  39:21.
hereby 85:11.
hero 78:5.
herself 58:6.
high 25:15,
  36:24.
high-level
  50:19.
highest 36:24,
  57:3.
highlight
  28:16,
  29:18.
highlighting
  69:24.
highly 6:19,
  11:18, 72:2,
  72:7, 73:8.
hindsight
  56:22.
historic
  66:19.
historical
  66:12.
History 12:5,
  12:6, 12:7,
  12:12, 14:25,

21:6, 25:17,
  26:13, 36:23,
  36:25, 37:2,
  53:19, 59:18,
  61:22, 61:23,
  66:9.
hoax 58:19.
hold 58:3.
home 13:23,
  14:7,
  76:22.
honestly
  62:23.
HONORABLE
  1:17.
Hoover 39:21.
hope 21:13,
  34:24, 48:6,
  52:24,
  64:19.
hours 16:22,
  38:6, 49:10,
  62:11, 78:17,
  80:16.
House 3:10,
  5:13, 55:14,
  55:15, 55:22,
  58:13.
housekeeping
  5:10.
Hugo 67:11.
human 62:4.
Hunting 67:7.
hurdles
  22:15.
hurt 14:19,
  51:19,
  70:13.
.
.
< I >.
I. 12:7.
iceberg 29:6.
idea 45:23,
  56:7, 58:23,
  68:10.
identification
  12:21.
identify 2:4.
identifying

7:10,
  75:10.
ideological
  31:19, 50:15,
  50:23,
  64:25.
ignore 37:14,
  37:18.
ill 62:13.
illegal 11:20,
  52:6,
  54:23.
illness 62:8.
imagine 60:3.
imagined
  66:2.
immediately
  80:19.
immense 3:14,
  29:13,
  77:9.
impact 6:9,
  7:7, 13:20,
  33:7, 43:7,
  43:8, 50:11,
  59:22, 60:10,
  74:17.
impacted 28:18,
  57:14,
  69:18.
impacts 34:21,
  34:22.
impartiality
  52:18,
  63:15.
impede 10:17.
impeded
  10:16.
imperative 4:5,
  58:2,
  66:15.
imperfect
  62:4.
implausible
  72:18.
implicitly
  67:19.
important 4:1,
  30:10, 59:11,
  84:12.

impose 6:8,
  13:12, 16:12,
  37:20, 37:21,
  53:8, 54:12,
  54:17, 71:17,
  77:13,
  77:23.
imposed 16:15,
  16:21, 16:25,
  29:15, 53:12,
  54:4, 64:7,
  76:7, 78:14,
  79:3, 82:25,
  84:19.
imposes
  16:16.
imposing
  75:25.
impossible
  4:21.
impression
  28:8.
impressive
  84:18.
imprisonment
  12:14, 13:11,
  15:5, 15:6,
  15:7, 15:14,
  15:18, 15:19,
  15:21, 16:8,
  16:9, 16:14,
  16:17, 17:17,
  70:22, 70:23,
  71:14,
  78:15.
improbable
  40:22.
improve
  42:19.
improving
  63:3.
inability
  19:4.
incarceration
  18:12, 42:21,
  65:4, 74:2,
  74:16,
  82:14.
incarceratory
  32:1.

include 12:20,
  53:11, 78:16,
  79:5,
  82:12.
included 13:23,
  81:2.
includes 15:7,
  15:8, 15:19,
  65:8, 81:5.
including 6:17,
  7:6, 16:2,
  28:20, 32:23,
  38:20, 53:21,
  53:25, 57:6,
  73:9, 73:19,
  75:9, 76:3.
income 6:17,
  28:20, 28:21,
  56:1, 56:4,
  56:14,
  60:12.
increase 10:8,
  10:15,
  30:23.
increased
  15:1.
increasingly
  65:24.
incremental
  63:8.
incurred
  60:19.
independent
  65:12.
indicated
  7:9.
indictment
  18:23, 19:4,
  19:6, 19:9.
indisputably
  6:6.
individual
  30:19, 39:9,
  41:2, 55:24,
  58:4, 67:12,
  68:12, 74:25,
  76:20.
individuals
  12:23, 12:25,
  13:4, 13:16,

27:4, 28:17,
  28:21, 29:11,
  31:9, 31:17,
  51:19, 55:6,
  55:19, 57:9,
  59:20, 61:8,
  63:18, 65:3,
  72:15, 72:21,
  76:11, 76:16,
  77:5.
Industries
  82:13.
influence
  26:7.
informed
  52:4.
inherently
  66:10.
initial 10:3,
  12:13, 15:1,
  24:9.
innocent 52:16,
  63:12,
  70:10.
innumerable
  55:1.
inquiry 5:24.
inspecting
  64:3.
install
  79:20.
instant 10:19,
  77:24.
Instead 20:16,
  30:4, 42:15,
  56:8, 66:17,
  67:5, 67:7.
Institute
  43:4.
institutions
  52:18,
  63:16.
instructions
  7:23.
insufficient
  64:13,
  73:6.
insurrection
  67:25,
  76:18.

Integrity 1:26,
  11:11.
intelligence
  3:14.
intelligent
  4:4.
intend 72:3,
  72:18.
intended 19:21,
  26:5, 73:8,
  77:16.
intent 49:4,
  74:4,
  76:19.
intentional
  49:2.
intentionally
  32:22,
  77:8.
interest
  51:23.
interested
  6:17.
interesting
  69:10.
Internal 21:3,
  21:4,
  25:18.
internalize
  52:25.
internally
  23:1.
internet
  80:1.
interviews
  49:10.
intimidated
  14:7.
intolerable
  57:1, 59:9.
introduction
  6:18.
intrusions
  14:19.
invading
  14:10.
invasion
  13:19.
investigation
  10:18, 11:8,

26:10, 34:8,
  81:4.
investigators
  74:25.
investments
  60:4.
involve 30:17,
  71:23, 72:1,
  72:6,
  74:24.
involved 12:21,
  13:3, 20:2,
  31:8, 36:12,
  50:13,
  76:18.
involves
  31:9.
involving
  59:19,
  75:8.
IRS 10:11,
  10:12, 11:17,
  11:20, 11:21,
  21:6, 26:13,
  26:22, 26:24,
  29:22, 29:23,
  30:22, 42:15,
  56:3, 59:18,
  61:17,
  64:19.
issue 5:11,
  7:13, 7:21,
  35:11, 40:6,
  48:15.
issues 9:7.
itself 43:4,
  44:3,
  82:23.
.
< J >.
Jacobson 2:7,
  7:21, 7:25,
  11:25, 17:24,
  18:19, 18:21,
  20:10, 45:1,
  84:21,
  85:1.
Jail. 68:23.
James 39:20,

65:25.
Jane 44:24.
January 29
  1:11.
Jennifer 1:24,
  2:12, 2:15.
jeopardized
  60:25.
job 8:19, 38:7,
  42:13, 72:8,
  84:4.
jobs 49:14.
Johnson
  39:21.
join 74:4.
joining
  38:24.
Jon 38:9.
Jonathan 2:6.
Jonathan E.
  Jacobson
  1:23.
journal
  49:25.
journalist
  14:4, 74:6.
Jr. 68:23.
JUDGE 1:18,
  3:24, 19:17,
  36:25, 41:5,
  41:6.
judgement
  80:14,
  81:2.
judges 41:23.
judgment 30:2,
  63:21, 64:16,
  78:10,
  83:3.
judiciary 59:1,
  65:12.
jurisdictions
  37:4.
Justice 1:25,
  10:15, 10:18,
  11:11, 23:1,
  31:25, 33:5,
  33:18, 34:8,
  43:4, 44:2,
  52:20.

justifiable
  64:24.
justification
  36:7.
justified
  36:6.
justifies 25:2,
  27:3,
  29:13.
justify
  54:23.
.
.
< K >.
Ken 33:9.
key 74:2,
  84:6.
kids 34:22.
kind 5:25,
  20:5, 22:2,
  31:8.
kinda 34:16.
kinds 53:20,
  70:17, 70:19,
  71:16.
King 68:23,
  68:25,
  69:24.
knowing
  83:10.
knowledge
  10:11, 52:11,
  64:21.
known 61:10.
knows 3:16.
.
.
< L >.
lab 36:13.
labored 63:6.
Language 4:9,
  4:10.
lapse 30:2.
laptop 4:18.
large 43:3.
largely 5:24.
largest
  50:17.
last 5:11,
  6:13, 73:5.

later 54:1,
  72:13.
latter 70:11.
laude 42:6.
law-abiding
  77:2.
lawful 51:9,
  53:1, 55:1,
  55:6, 55:16,
  56:25.
lawfully 55:14,
  55:15.
lawlessness
  54:21, 54:25,
  68:15.
lawmaker
  58:16.
laws 14:12,
  39:4, 39:5,
  45:24, 55:10,
  55:21, 56:12,
  56:18, 65:10,
  67:13, 67:14,
  67:20, 68:17,
  68:21, 69:5,
  69:6, 69:7,
  69:8, 70:14,
  70:15.
lawyer 47:23.
lawyers
  84:15.
lays 10:2.
lead 70:2,
  83:21.
leaders 58:1.
leak 56:15.
leaked 74:8.
leaker 44:9.
leakers 43:7,
  50:16.
leaking
  73:14.
learned
  29:22.
least 8:12,
  8:13, 15:20,
  17:1, 28:18,
  61:5, 67:14,
  72:8,
  72:18.

leaving 44:5.
led 42:10,
  58:19.
left 14:6,
  51:7.
legal 7:15,
  43:15, 47:6,
  55:4, 56:21,
  59:24, 69:5,
  84:6.
legislative
  58:18.
legislatures
  55:9.
length 43:1,
  69:7.
lengthy 65:4.
leniency
  48:2.
Lepage 36:16.
less 14:18,
  14:19, 14:20,
  16:14, 16:24,
  71:9,
  84:18.
Letter 5:13,
  5:15, 5:18,
  6:3, 6:7,
  6:10, 6:24,
  65:22, 65:23,
  68:23, 69:2,
  69:25.
letters 3:13,
  3:16, 5:19,
  7:6, 38:17,
  40:14, 42:12,
  49:5, 58:20,
  61:23.
level 10:6,
  10:7, 10:22,
  11:3, 11:23,
  11:25, 12:11,
  12:20, 13:7,
  13:13, 13:14,
  14:24, 17:2,
  17:5, 17:6,
  17:9, 25:16,
  33:18, 47:8,
  54:11,
  71:11.

levels 11:4.
liberty 3:24,
 4:2, 4:22,
 51:6.
license
 13:24.
life 3:7, 30:3,
 42:11, 43:17,
 44:9, 50:1,
 50:2, 58:11,
 60:1, 62:22,
 83:17, 83:18,
 83:22.
light 55:2.
lighter 31:5.
lightly
 52:10.
likelihood
 65:4.
likely 52:11,
 66:10.
limitations
 11:9.
limited 26:19,
 28:5.
Lincoln 6:20.
line 23:18,
 34:17,
 49:8.
lined 14:7.
link 38:24.
Lisa 2:9.
Lisa Manning
 1:31.
list 33:10.
listen 33:20.
listening
 48:16.
literally
 24:24.
litigation
 55:14,
 55:15.
little 24:4,
 24:5, 63:9.
live 57:10,
 67:19.
lives 26:22,
 28:25, 45:18,
 57:3, 59:10,

74:25.
living 39:20.
LLP 1:33.
lobby 55:9,
 55:10,
 69:20.
local 69:2,
 79:6.
located
 75:11.
locating
 28:5.
long 3:22,
 31:16, 33:10,
 34:22, 37:2,
 69:9,
 74:16.
look 30:18,
 34:4.
looked 30:22.
looking 17:12,
 22:3, 24:21,
 62:15.
loopholes
 29:22.
lose 43:15,
 50:1, 50:2.
loss 35:19.
lost 44:18,
 60:18.
lot 38:13,
 42:14,
 51:14.
Louis 62:10,
 62:11,
 81:24.
love 4:23,
 18:17,
 83:13.
lovingly
 70:3.
low 55:19,
 65:16,
 79:9.
Lowenstein
 6:20.
loyalty 3:15,
 62:2.
luck 83:23.
Luther 68:22.

lying 74:25.
.
.
< M >.
ma'am 2:11,
 2:16.
machine 1:49.
Magazine
 56:5.
magnitude
 25:16,
 29:12.
main 44:14.
malice 32:23,
 40:11.
manage 61:2.
mandatory
 17:15, 78:25,
 79:5, 79:7.
manner 65:17,
 80:7.
Manning 2:9,
 2:10, 7:23,
 9:1, 9:10,
 12:2, 13:6,
 35:4, 37:9,
 37:23, 37:24,
 38:1, 39:14,
 40:17, 40:18,
 41:17, 45:5,
 51:10, 71:5,
 81:10, 83:25,
 84:2, 85:5.
manual 10:5.
Marcus 52:21.
Marion 81:23.
market 67:5.
Martin 68:22.
materials
 6:25.
matter 5:11,
 8:4, 63:2,
 64:25,
 85:13.
Max 35:23,
 36:15, 37:5,
 37:14,
 37:17.
max. 36:18,
 51:1.

maximum 16:7,
 17:3, 19:14,
 20:18, 20:20,
 25:12, 27:14,
 34:25, 40:4,
 70:21, 71:10,
 78:14,
 78:19.
Mead 1:33.
mean 21:24,
 22:1, 27:22,
 34:1, 34:16,
 34:17, 37:9,
 40:19, 40:20,
 40:22, 41:16,
 42:8, 42:21,
 43:2, 44:5,
 44:18, 44:19,
 44:22, 44:23,
 45:12, 45:18,
 46:17, 47:9,
 47:23, 48:21,
 48:22.
meandering
 63:4.
meaning 27:19,
 27:20,
 28:14.
meaningful
 30:25,
 73:7.
Means 5:14,
 6:12, 6:20,
 12:21, 14:16,
 14:17, 32:17,
 51:14, 54:23,
 55:1, 56:21,
 56:25.
measure
 39:18.
media 48:11,
 60:12, 60:18,
 79:24.
media. 9:19.
medical
 74:15.
meditations
 52:22.
meet 62:16.
meeting 3:12.

meets 10:24.
members 5:13,
    5:19, 6:7,
    58:14,
    62:10.
memo 56:13,
    59:21.
memorandum 7:5,
    36:1, 84:8.
men 81:23.
mental 61:2,
    74:15.
mention 6:16,
    65:21,
    76:23.
mentioned
    30:12, 35:14,
    56:20,
    65:21.
mercy 52:19.
merely 58:1.
message 27:8,
    27:11, 30:13,
    42:3, 53:1,
    65:9.
methamphetamine
    36:13.
methodology
    56:7.
mildly 72:7.
military
    50:19.
militia 68:4.
mind 49:12.
mine 13:25.
minimum 15:5,
    15:17,
    15:20.
mis- 27:15.
misconduct
    22:4, 23:19,
    23:23, 24:8,
    25:5.
misguided 4:25,
    40:10, 40:21,
    51:22,
    60:12.
misimpression
    27:16.
mistaking

52:13.
mitigating
    61:18,
    65:19.
moment 23:14,
    49:23,
    78:6.
momentarily
    31:15.
momentary
    30:2.
moments 62:1.
money 42:15,
    49:15.
monitoring
    79:19,
    79:20.
month 29:2,
    54:10.
months 12:14,
    13:11, 15:1,
    16:7, 16:10,
    18:12, 19:15,
    24:12, 24:24,
    25:6, 25:9,
    27:10, 30:11,
    32:2, 43:23,
    49:7, 64:13,
    73:23, 74:1,
    75:12, 77:6,
    78:15.
moral 4:5,
    41:14, 44:10,
    56:23, 66:6,
    66:15, 66:21,
    67:9, 68:20,
    69:6, 69:10,
    70:7, 70:8,
    70:10.
morally
    57:22.
morning 2:6,
    2:8, 2:9,
    2:11, 2:16,
    2:17, 2:22,
    3:6, 3:7,
    32:13, 32:14,
    35:9, 35:10,
    37:25, 38:1,
    44:5, 44:6.

mother 38:21,
    38:25.
motivation 5:8,
    40:15, 40:16,
    41:14, 50:23,
    65:1.
motivations
    67:8.
motive 40:10.
motives
    71:24.
move 33:21.
moving 52:24.
MR. CHERRY
    35:9, 35:11,
    35:21,
    37:13.
MR. WILSON
    2:22.
Ms 2:9, 2:17,
    7:22, 9:1,
    9:9, 12:2,
    13:6, 35:4,
    37:9, 37:23,
    37:24, 38:1,
    39:14, 40:17,
    41:16, 45:5,
    51:10, 71:5,
    74:3, 81:10,
    83:24, 84:2,
    85:5.
MS. CLARKE
    2:12, 2:15.
Multi-year
    54:6,
    77:16.
multiple 29:25,
    37:4,
    72:12.
multiyear
    64:12.
mundane 63:2.
Musk 33:9,
    34:9.
mutually
    3:19.
.
.
< N >.
name 2:14,

44:6, 48:17,
    48:19.
named 33:15.
Narratives
    60:22.
narrow 82:18.
nation 26:7,
    56:11, 63:14,
    65:9.
National 43:4,
    50:21.
nature 31:8,
    44:13, 53:19,
    54:5, 56:23,
    57:1, 57:14,
    59:5, 59:7,
    59:9,
    61:19.
naught 48:6.
necessarily
    37:18,
    61:10.
necessary 32:2,
    53:9, 54:11,
    56:17, 77:13,
    77:23.
need 4:8, 4:9,
    20:23, 21:7,
    27:23, 31:7,
    31:19, 31:20,
    53:11, 53:21,
    53:24, 62:1,
    64:7, 65:15,
    66:2, 71:18,
    81:12,
    83:17.
needed 49:14,
    55:18.
negate 73:1.
negotiated
    19:2, 23:6.
negotiation
    21:13.
neither 5:19,
    69:11,
    71:5.
New 6:5, 56:14,
    67:23, 72:11,
    72:19.
news 26:17,

26:18, 29:25,
30:1, 44:7,
44:14.
newspaper
60:6.
newspapers
32:19.
Next 5:17,
12:16, 29:1,
29:2,
36:16.
night 6:13,
14:8,
62:12.
nine 71:22.
NO. 1:5.
Noah 1:32,
2:10.
noble 56:23.
nobody 34:23.
noise 44:21.
non-monetary
12:24,
13:18.
non-tax
73:11.
None 18:5,
44:25, 50:24,
55:4, 70:5,
76:17,
76:18.
Nor 5:20,
16:24, 52:10,
69:12, 71:5,
73:11.
norms 45:24.
Note 11:5,
12:18, 13:2,
13:14, 15:11,
16:19, 29:15,
71:7, 82:1.
noted 70:25,
85:6.
notes 14:6,
15:10,
17:4.
nothing 6:3,
24:25, 27:10,
30:18, 34:10,
50:1, 50:2,

51:7,
56:23.
Notice 7:11,
75:4, 82:16,
83:2, 83:4.
notify 18:9,
80:21.
noting 26:14,
74:8.
number 12:23,
13:4, 13:16,
13:24, 19:8,
22:11, 30:19,
58:10, 59:23,
73:6,
73:24.
numerous 28:2,
30:15, 55:5,
55:6, 58:21,
58:22, 59:23,
67:25.
NW 1:27,
1:45.
.
.
< O >.
oath 5:3,
14:14.
obey 67:17,
68:12,
69:6.
obeying 68:6,
69:5.
objected 5:18,
71:5.
objection 7:9,
8:7, 9:20,
9:22, 17:8,
17:12,
17:13.
objections 9:4,
9:11, 11:24,
12:8, 15:22,
18:3, 84:19,
85:5.
objectives
52:14.
obligated
26:21.
obligation

44:10, 52:10,
55:4, 58:12,
66:4, 66:21,
67:9, 68:20,
69:11, 69:23,
70:9, 70:10,
80:13,
80:23.
obligations
60:12, 62:13,
62:16, 69:7,
69:9.
obligatory
68:10.
obscure 63:6.
observed
37:1.
obstruct
10:17.
obstructed
10:16.
obstruction
10:15.
obstructions
68:16.
obstructive
10:20.
obtain 56:21.
obtained 13:1,
60:13.
obvious
57:18.
occasions
72:12.
occupation
79:16.
occur 31:14,
57:10,
78:17.
occurred 4:9,
75:6.
offenses 31:18,
37:3.
offensive
67:14.
offered 33:7.
offers 42:13.
Office 10:3,
18:9, 18:14,
39:13, 39:25,

43:24, 44:5,
58:5, 58:6,
59:1, 59:4,
79:1, 80:3,
80:11, 80:12,
81:3, 81:5,
81:8.
officer 79:11,
79:18, 79:20,
80:9,
80:17.
officers 50:19,
50:20.
offices 58:18,
58:20.
Official 1:42,
73:18,
85:17.
officials
41:22, 41:25,
57:3, 58:3,
59:3, 64:14,
65:8.
often 31:9,
47:20,
74:23.
Okay 2:16,
19:24, 20:22,
21:16, 32:4,
33:19, 34:5,
35:20, 37:12,
82:4,
84:23.
Once 49:19.
ones 85:6.
ongoing 26:15,
33:17.
Onorato 1:33.
open 32:17,
41:22, 41:24,
42:2, 57:2.
openly 70:3.
operating
36:12.
opinion
56:14.
opportunities
18:18.
opportunity
18:18, 21:10,

30:13, 31:24,
32:16, 33:7,
51:24.
optional
16:15.
options 55:6,
79:2,
83:21.
Order 3:24,
7:23, 30:22,
40:5, 48:25,
80:25, 81:6,
81:11.
ordered 16:19,
17:20, 70:25,
78:20, 84:24,
85:2.
ordering
78:22.
organization
26:18,
80:16.
organizations
26:17, 29:25,
30:1.
Ortiz 36:11.
others 4:24,
39:10, 61:25,
64:23, 67:9,
70:8.
otherwise 30:3,
42:11,
77:2.
ought 62:6.
outcome 6:19,
25:9, 25:13,
84:1.
outlet 48:11.
outrageous
44:16,
44:19.
outright
66:17.
outside 6:15,
14:7.
outweighed
61:19, 65:20,
76:2.
overseas
75:11.

overwhelming
66:3.
own 21:6, 27:6,
39:10, 57:8,
60:2, 64:15,
77:19.
.
.
< P >.
p.m. 85:9.
packed 3:9.
page 60:5.
pages 79:2.
paid 56:1,
80:23.
paper 7:22.
papers 4:18,
8:23, 40:24,
43:18.
paragraph
9:11.
parallels
73:18.
paraphrase
39:4,
68:16.
parents 38:22,
62:14.
parlance
28:14.
Part 6:23,
9:12, 30:11,
33:17, 48:25,
56:15, 57:5,
72:8, 79:1,
81:2, 82:9,
82:12, 82:21,
83:9.
particular
4:20, 9:11,
38:9,
58:15.
particularly
42:17.
parties 2:4,
5:20, 7:14,
7:17, 10:14,
18:9, 18:15,
18:18, 19:3,
75:11.

Parting
68:24.
partisan 40:15,
44:13,
54:23.
partner 38:20,
38:21, 43:17,
61:25,
83:24.
parts 38:7,
69:1.
pass 20:4.
passage
69:19.
passes 69:17.
passion 31:14,
49:4.
past 58:21,
75:6,
76:11.
Patel 75:12,
75:14.
patently
60:14.
pay 55:19,
78:20,
80:13.
payable
80:19.
payer 60:15.
paying 52:2.
payments
30:23.
peaceful
58:13.
penal 16:5.
penalty 19:14,
67:16, 70:4,
70:21.
people 6:11,
39:22, 41:18,
44:25, 45:17,
48:16, 50:18,
51:23, 52:17,
57:22, 63:13,
65:7, 67:25,
68:9, 68:11,
69:15, 70:10,
77:2, 78:4,
79:25.

Pepper 6:1.
per 17:14,
35:6, 35:11,
35:22.
percent 36:24,
56:2.
perfect 63:8.
perhaps 70:14,
78:5.
period 56:2.
permission
79:18,
83:6.
permit 64:23.
permitted
83:1.
person 3:14,
3:18, 59:12,
60:6, 62:6.
personal 12:21,
13:15, 13:22,
27:6, 30:6,
32:21, 41:9,
41:11, 43:17,
50:23, 58:7,
59:10, 60:1,
60:2, 65:13,
75:9, 77:9.
personally
51:14, 60:4,
60:17.
perspective
45:9.
persuade
67:18.
persuasive
48:20.
phenomenal
38:8.
philosophical
70:14.
philosophy
54:22, 66:12,
66:19,
66:25.
phone 12:22.
physical
58:24.
physics 42:7.
pick 70:13.

pick-your-poiso
n 54:24.
piece 56:14,
68:22.
place 40:11,
52:17, 58:9,
69:12,
69:22.
Plaintiff
1:7.
planned 31:16,
77:6.
planning 29:19,
31:10,
76:18.
Plato 66:24,
67:3,
67:16.
plausible
68:17.
plea 4:16, 7:4,
18:22, 19:1,
19:3, 21:12,
26:15, 32:19,
32:20, 33:25,
34:24, 35:2,
39:3, 48:4,
75:20, 82:18,
82:21, 82:22,
83:1, 84:7.
plead 11:8.
pleading 33:2,
35:23.
Please 2:4,
9:9, 18:22,
33:21,
78:7.
pled 3:1,
19:10, 35:13,
46:11, 46:15,
47:3, 75:7.
plotted
29:20.
plus 70:22.
point 4:3,
18:9, 18:17,
23:18, 23:25,
30:9, 30:10,
37:8, 40:25,
41:12, 42:20,

43:22, 45:8,
46:13, 46:22,
52:24, 55:18,
56:7, 56:16,
63:6, 68:5,
70:6, 70:12,
73:12, 74:8,
74:20,
77:1.
pointed 42:1,
47:25.
pointing
38:5.
points 28:16,
36:24.
policy 53:17,
56:11, 59:13,
69:16.
political 26:8,
27:6, 31:19,
33:10, 33:12,
33:13, 33:25,
40:13, 40:15,
40:16, 44:13,
54:23, 58:1,
64:25, 65:6,
65:11, 65:13,
66:10,
77:4.
politically-min
ded 59:2.
politics
66:9.
poor 14:11,
14:15,
14:16.
popped 31:15.
pose 65:16,
76:14,
79:9.
posed 66:21,
76:14.
position 10:10,
14:14, 30:5,
32:21, 35:13,
35:19, 48:10,
49:15, 49:16,
63:13.
possess 79:7.
possibility

9:15,
35:15.
possible 19:7,
27:16,
65:9.
possibly 3:11,
22:20, 24:11,
24:12.
post-booker
47:11.
potential 20:2,
43:6, 44:9,
52:9.
power 41:23,
58:13, 65:6,
65:8,
68:10.
precedent 36:5,
37:14, 37:19,
39:13, 41:3,
51:2, 59:18,
66:12,
66:19.
precisely
72:11.
predicated
60:13.
prejudices
6:3.
Preliminary
80:25.
preparation
4:20, 6:4.
prepared 7:15,
7:20, 19:8,
21:13, 23:24,
24:1,
35:16.
presence
62:23.
Present 1:39,
8:11, 8:13,
71:24.
presented
54:24.
presentence
7:1, 8:2,
8:3, 8:8,
8:23, 9:2,
9:5, 9:23,

9:25, 10:2,
11:5, 12:5,
12:12, 17:18,
18:16, 79:2,
81:3, 81:7,
82:11.
presents
72:7.
preserved
5:23.
presidency
41:21,
59:1.
President 4:6,
5:6, 9:16,
34:6, 39:16,
39:19, 39:23,
39:24, 39:25,
44:23, 45:2,
45:3, 47:15,
48:9, 50:14,
51:24, 54:6,
57:4, 57:18,
57:20, 57:21,
57:25, 58:11,
64:20, 72:9,
73:10, 77:20,
78:3,
78:11.
press 54:20,
56:16, 66:2,
72:10.
pressure 74:7,
74:13.
presumptively
36:10,
36:16.
presupposes
68:12.
pretentious
67:3, 67:4.
pretty 22:1,
50:6.
prevent
61:17.
preventing
11:17.
prevents
75:25.
pride 63:3.

principle
  68:18.
Prior 11:8,
  11:21,
  15:3.
Prison 19:15,
  42:22, 42:24,
  43:8, 67:15,
  69:1, 72:1,
  75:12, 76:21,
  81:24, 82:13,
  83:16.
privacy 13:19,
  14:2, 14:10,
  14:18, 52:16,
  57:9, 63:12,
  77:17.
private 12:25,
  13:22, 26:22,
  27:5, 28:25,
  30:20, 32:24,
  57:3.
privately
  60:3.
privilege
  3:16.
privileged
  27:5.
probably 49:17,
  50:17,
  51:5.
probationary
  30:16, 71:7,
  71:25,
  73:13.
problem 39:14,
  67:11.
Procedure
  80:24.
procedures
  10:12,
  45:24.
proceed 20:1,
  21:1,
  38:18.
Proceedings
  1:49, 3:5,
  85:9,
  85:13.
process 26:8,

46:1, 46:5,
  46:6, 51:5.
processes
  63:7.
produce
  56:24.
produced 1:49,
  56:25.
product
  21:12.
productive
  83:22.
profession
  79:16.
professional
  26:1, 42:4.
proffers 11:10,
  11:18, 28:4,
  28:6,
  61:14.
profoundly
  13:22.
Program
  82:13.
Project 9:15,
  34:6,
  49:17.
promote 53:12,
  53:16, 64:9,
  77:24.
proof 34:1.
propel 83:19.
proper 36:1,
  48:15,
  48:18.
properly 6:6,
  52:4.
property 14:6,
  22:13,
  22:15.
proposal
  81:13.
propose
  81:14.
proposition
  67:21.
Propublica
  34:8, 34:17,
  72:16,
  72:20.

proscribe
  16:3.
proscribes
  46:12.
prosecuting
  28:1, 34:2.
prosecution
  10:18, 75:16,
  75:22.
prosecutors
  22:1,
  32:18.
protect 26:25,
  53:15, 64:2,
  65:15,
  77:25.
protected
  12:25.
protection
  14:12.
provable
  21:18.
proves 56:16.
provide 4:13,
  9:18, 26:21,
  53:13, 53:24,
  64:9, 72:10,
  74:7, 75:22,
  76:2, 78:2,
  80:8, 82:2,
  82:4,
  84:11.
provided 10:11,
  11:12, 15:20,
  27:18, 30:7,
  62:22, 72:15,
  72:19.
provides
  15:11.
providing
  11:18,
  62:22.
provisions
  78:9.
PSR 17:4,
  27:17,
  73:4.
Public 1:26,
  10:13, 11:11,
  21:8, 21:10,

27:4, 44:11,
  44:15, 48:18,
  49:1, 51:22,
  53:15, 55:13,
  55:16, 55:21,
  56:15, 61:11,
  61:12, 63:1,
  63:3, 65:15,
  66:3, 69:3,
  70:9, 77:25,
  84:4,
  84:12.
publications
  73:2.
publicity
  44:4.
publicized
  44:8.
publicly 55:20,
  56:3.
publish 73:2.
published
  26:16, 28:23,
  29:1, 60:22,
  61:6, 61:9.
publishing
  14:3.
Pugh 36:10.
pulled 21:6.
punish 5:8,
  65:12,
  69:23.
punished 33:3,
  46:25,
  70:16.
punishment
  40:4, 53:13,
  64:10, 64:22,
  78:2.
purported
  64:25.
purpose 5:9,
  10:1.
purposes 29:4,
  33:11, 33:12,
  53:9, 53:11,
  53:18, 64:10,
  65:14,
  65:21.
Pursuant 12:17,

109

17:19, 32:7,
78:8, 80:2,
80:3, 80:24,
82:10,
82:24.
pursuit 63:7.
pushed 56:15.
put 34:7,
34:20, 49:16,
51:7, 60:8,
68:7, 72:6,
76:3,
81:12.
puts 34:9,
65:13.
putting 50:9,
74:25.
.
.
< Q >.
quantified
60:20.
quantify
60:11.
quell 68:4.
question 7:16,
7:18, 19:22,
23:23, 24:10,
24:23, 35:6,
35:22, 42:25,
54:24, 63:15,
66:20, 66:23,
68:22.
questioned
49:4.
questioning
25:20.
questions
22:25.
quick 67:2.
Quickly 49:20,
68:25.
quite 3:4,
3:22, 6:12,
39:15, 68:1,
76:8.
quoting 11:6.
.
.
< R >.

rabid 70:1.
raid 34:7,
34:8, 34:12,
58:10.
raising 45:9.
rally 32:9,
32:10.
range 10:3,
12:13, 12:15,
13:11, 14:25,
15:2, 15:4,
16:3, 16:9,
16:13, 17:5,
17:7, 17:9,
18:10, 53:5,
57:12, 64:13,
70:18, 70:22,
70:23, 70:24,
71:2, 71:4,
71:11, 73:23,
74:22,
75:18.
rate 55:19,
55:24,
56:1.
rather 31:6.
rational
77:2.
reach 20:4,
54:12.
reached 18:22,
18:23, 19:1,
19:3, 23:4,
23:6, 23:9,
23:13, 48:13,
48:14.
reacted
76:24.
read 3:12,
3:15, 5:14,
9:2, 40:14,
42:12, 43:18,
48:5.
readily 21:18,
49:9,
49:11.
reading 7:8,
7:22.
ready 65:12.
real 61:2.

realize 4:13,
49:21,
63:19.
realized 48:24,
50:1.
really 22:2.
realm 74:24.
reapply 9:14.
rearrange
59:25.
reason 25:19,
45:17, 46:20,
63:15,
84:6.
Reasonable
36:11, 36:16,
37:20, 37:21,
69:15, 80:4,
80:7.
reasonableness
35:7.
reasoned
84:11.
reasoning
76:9.
reasons 3:25,
9:14, 13:14,
31:18, 31:19,
46:3, 74:18,
78:13.
Rebellion
68:3.
rebuild
52:19.
recall 48:12.
recalled
6:12.
receive
74:23.
received 5:12,
7:1, 15:12,
17:21, 17:25,
51:20, 58:16,
59:22, 64:1,
73:13, 75:11,
75:12,
84:6.
recent 6:19.
recess 54:19.
recidivism

43:20.
recitation
9:23.
recognize
24:15, 31:25,
38:15,
38:18.
recognized
40:8, 40:9,
40:23.
recognizes
56:22.
recognizing
38:11.
recommend 6:19,
81:22.
recommendation
7:2, 8:4,
18:12, 18:13,
25:11, 43:24,
82:7, 82:10,
82:11,
82:12.
recommended
18:10,
79:1.
record 2:5,
6:6, 9:10,
46:18, 46:23,
71:7, 84:20,
85:6,
85:13.
recorded
1:49.
records 12:22,
41:8, 48:11,
53:23, 66:22,
74:5.
reducing
19:18.
referenced
36:8.
referencing
47:5.
referral
82:12.
reflect 6:7,
53:12, 57:13,
64:7,
77:24.

Reflected
 52:22, 67:16,
 67:22.
Reform 78:8.
regard 30:10,
 52:23.
regarding 9:23,
 75:5.
regardless
 54:14.
regret 44:20.
regular 64:1.
rehabilitate
 65:17.
rehabilitation
 53:16.
reinforce
 31:6.
reiterate
 62:4.
reject 34:24,
 35:1.
related
 10:20.
relation
 67:12.
relationship
 62:24.
release 15:7,
 15:19, 16:11,
 16:12, 16:13,
 16:15, 16:16,
 16:20, 17:17,
 18:13, 55:12,
 55:14, 70:9,
 70:22, 70:23,
 71:1, 71:14,
 78:16, 78:18,
 80:10, 80:18,
 81:3, 82:1.
released 32:22,
 41:19, 46:7,
 55:15,
 55:23.
relevant 10:21,
 53:7, 65:19,
 73:21.
relocated
 62:9.
relocating

62:14.
remaining
 61:21.
remediate
 27:25.
remind 32:8.
reminded
 6:11.
reminding
 57:19.
remorse 19:17,
 47:24, 50:7,
 50:8, 50:10,
 50:11,
 63:22.
remorseful
 63:10.
remotely 62:11,
 62:15.
removed
 72:25.
removes
 15:15.
repeal 69:21.
repeat 25:23.
repeatedly
 4:24, 26:3,
 30:5, 75:3.
report 7:1,
 8:3, 8:8,
 8:23, 9:2,
 9:5, 9:11,
 9:23, 9:25,
 10:2, 11:5,
 12:5, 12:13,
 17:18, 18:16,
 43:3, 44:12,
 79:2, 81:4,
 81:7,
 82:11.
Reported
 1:41.
Reporter 1:42,
 48:17, 48:19,
 74:12,
 85:17.
reporters
 48:13, 48:14,
 57:6,
 72:12.

reporting
 72:13.
reports 73:14,
 73:20,
 73:25.
Representatives
 5:14.
representing
 22:17,
 50:7.
Republican
 5:13, 33:12,
 58:13,
 58:15.
reputational
 29:5, 60:9,
 60:19,
 61:3.
reputations
 26:6.
request 30:11,
 37:13, 44:1,
 81:22,
 83:6.
requested
 75:17, 80:9,
 81:20.
requesting
 85:4.
requests 17:21,
 18:1.
require 4:1,
 59:6,
 79:17.
required 3:25,
 16:16, 16:17,
 54:8.
requires 16:1,
 40:4.
research
 23:16.
researcher
 84:10.
researching
 31:11.
resemblance
 36:9.
reshape 26:7.
residence 81:6,
 81:24,

82:1.
resolution
 19:3, 23:6,
 51:9.
respect 10:18,
 16:11, 16:23,
 53:13, 64:9,
 71:8,
 77:25.
respectfully
 47:7.
responded
 69:2.
response 7:12,
 35:21,
 67:13.
responses
 30:16.
responsibilitie
s 28:3.
responsibility
 5:3, 11:2,
 11:14, 19:5,
 19:16, 35:24,
 40:9, 61:15,
 69:6.
responsible
 4:22,
 51:20.
responsive
 19:22,
 22:24.
rest 44:8.
restitution
 17:20, 17:21,
 17:22, 18:1,
 53:24, 78:22,
 79:11, 79:13,
 84:24, 85:2,
 85:4.
restore
 52:21.
restricted
 79:17.
restrictions
 79:15.
result 19:2,
 19:4, 31:22,
 32:3, 57:15,
 58:24, 60:16,

63:14, 64:6,
64:22, 70:7,
84:3.
resulted 13:18,
57:15,
71:24.
resulting 16:9,
60:24,
73:3.
return 3:2,
12:22, 13:4,
13:16, 26:4,
29:9, 30:20,
30:22, 51:21,
54:17, 59:19,
61:7, 72:14,
81:7.
returning
65:5.
returns 3:2,
22:6, 23:20,
26:4, 28:20,
28:21, 29:6,
29:9, 34:9,
34:21, 48:24,
49:1, 51:24,
55:3, 55:13,
55:16, 55:17,
56:16, 56:21,
57:7, 57:8,
66:2, 70:9,
70:20, 72:9,
72:13, 72:14,
72:19, 72:23,
73:15.
revealed
18:15.
Revenue
25:18.
reviewed 6:25,
7:1, 7:19,
49:19.
rewatched
6:13.
rich 14:15,
33:11.
rights 14:9,
43:15,
82:23.
riot 76:19.

rioters 67:25,
68:5.
risk 43:20,
65:17, 74:25,
79:9.
risked 12:24,
13:17, 23:21,
77:8.
Roger 6:19.
role 10:8.
roll 27:13.
rolled 23:21.
Roman 52:21.
Roosevelt
57:18.
rooted 47:13.
rooting
83:25.
round 58:17.
RPR 1:41,
85:11.
ruin 50:2.
Rules 80:24.
rulings 41:6.
.
.
< S >.
S. 1:25, 1:39,
5:13, 6:1,
6:2, 35:15,
43:24, 57:16,
58:11, 73:17,
78:3, 80:12,
80:20, 81:5,
82:17.
sacredly
68:10.
sad 42:17,
44:12.
safety 60:25.
salient
66:20.
sat 4:18, 4:19,
11:10, 49:20,
61:14.
satisfied 8:16,
15:5, 15:18,
15:21.
Saturday 7:12,
7:14.

saying 3:21,
41:20,
49:23.
says 9:12,
46:16.
scale 41:14,
57:14,
59:16.
scenarios
55:22.
scheme 54:6,
57:5, 64:12,
76:5, 77:7,
77:16.
Schertler
1:33.
scope 5:24,
59:16,
61:9.
Scott 32:13,
38:15, 51:18,
53:6.
SCP 81:23.
se 35:7, 35:11,
35:22.
seal 7:7,
82:5.
search 44:6,
79:22, 79:24,
80:3, 80:6.
searches
80:2.
Sears 1:33.
season 41:22,
41:24, 42:3,
57:2.
seat 3:10,
4:19, 42:2.
seated 78:23.
Second 11:1,
29:18, 56:19,
74:6.
Secretaries
58:18.
secretly
30:5.
Section 1:26,
3:3, 10:15,
10:25, 11:4,
11:11, 13:3,

50:17, 71:22,
72:1,
77:21.
secure 26:25.
Security 10:12,
13:23,
50:21.
seeing 49:13,
63:20.
seek 29:24,
53:1, 60:7,
71:7,
75:21.
seeking 25:9,
48:2,
77:14.
seeks 12:17.
seems 40:22.
segregated
69:1.
segregationist
70:2.
self-serving
72:3.
selfish
63:18.
selfless
62:17.
sell 75:10.
Senator 32:13,
33:19, 38:15,
51:18,
53:6.
SENATOR SCOTT
32:14, 33:23,
34:14,
34:17.
send 27:8,
27:11, 58:17,
58:20.
sending 65:9.
sense 24:6,
33:16, 34:3,
66:3,
69:25.
sensitive
14:13, 60:21,
72:25,
75:8.
sent 42:3,

68:4.
sentenced
    36:13, 36:17,
    36:20, 74:1,
    76:11, 76:16,
    77:5.
sentences
    30:16, 31:4,
    31:5, 53:20,
    70:17, 70:19,
    71:16, 71:25,
    72:1, 76:6,
    84:14.
SENTENCING
    HEARING
    1:16.
sentencings
    3:17.
separate
    22:8.
separately
    48:21.
series 64:16,
    77:18.
serious 26:13,
    27:7, 31:21,
    37:1, 41:14,
    41:19, 43:16,
    52:12, 61:1,
    66:23.
seriousness
    30:14, 41:16,
    41:18, 47:9,
    53:12, 57:13,
    64:8,
    77:24.
serve 83:14,
    83:22.
Service 16:19,
    25:18, 42:12,
    43:21, 63:1,
    63:4, 70:25,
    78:17, 80:15,
    80:16.
servile
    57:21.
serving
    51:22.
set 3:25, 8:7,
    16:8, 53:7.

sets 17:3,
    71:10.
setting 29:14,
    46:15.
several 38:20,
    49:14, 62:8,
    64:2, 74:2,
    74:15.
severe 31:22.
severity
    40:7.
shall 16:25,
    17:15, 17:20,
    47:13, 71:12,
    78:16, 78:24,
    79:14, 80:21,
    81:1, 81:3,
    81:7.
share 80:11.
shared 11:16,
    11:19,
    61:16.
sheer 28:17.
short 7:18,
    75:23.
shorthand
    1:49.
shot 6:15.
show 61:24,
    67:7.
shown 19:17.
side 6:10.
signatories
    5:15.
signed 7:4,
    9:15, 59:23,
    75:19.
significant
    27:3, 31:7,
    36:6, 36:7,
    52:7, 63:25,
    73:17.
significantly
    65:20,
    74:22.
similar 5:19,
    31:18, 37:2,
    53:23,
    68:21.
similarly

73:6.
simply 39:11,
    59:18.
sincere
    51:22.
sincerely
    66:15.
sincerity
    83:24.
single 18:24,
    31:23, 33:2,
    48:4, 50:24,
    56:24.
Sir 2:8, 23:25,
    32:13, 78:7,
    78:23,
    82:16.
sister 62:8.
sit 28:24,
    41:23,
    68:2.
sitting 4:6,
    4:19, 5:6,
    39:16, 39:23,
    39:24, 41:5,
    42:2, 44:23,
    45:2, 45:3,
    45:10, 47:15,
    50:13, 51:24,
    54:6, 57:4,
    72:9, 73:9,
    77:19,
    78:11.
situated 48:22,
    73:6.
situation
    81:11.
situations
    30:17.
Six 7:7, 37:6,
    59:22, 74:1,
    76:16,
    76:17.
skills 52:15,
    63:11.
skip 33:1.
small 30:19,
    62:20.
smooth 58:2.
smoothly

58:8.
snap 64:16.
so-called
    70:7.
Social 13:23,
    56:24.
societal
    43:15.
society 4:3,
    39:5, 59:11,
    67:18, 68:15,
    70:13,
    77:2.
Socrates 67:15,
    67:17.
software
    79:20.
solace 4:14.
solely 54:13.
somebody 33:25,
    55:8.
somehow 4:3,
    58:9.
Someone 3:24,
    4:2, 4:4,
    4:22, 4:23,
    4:24, 21:5,
    22:12, 22:18,
    31:15, 34:12,
    51:5, 51:6.
sometimes
    49:22.
somewhere
    69:9.
son 61:24.
sophisticated
    31:9, 64:1,
    72:21.
Sorry 2:14,
    2:24, 3:10,
    17:11, 22:17,
    23:8, 36:14,
    43:13, 45:5,
    83:2.
sought 9:12,
    26:7, 64:19,
    72:8,
    75:15.
sound 56:7,
    69:16.

sounds 39:6.
source 6:1.
southern
    67:6.
space 25:6,
    25:12, 31:22,
    31:24.
spare 4:10.
sparked
    65:25.
speaker
    58:15.
speaks 62:19.
special 17:14,
    78:21,
    79:14.
specific 24:4,
    37:1.
Specifically
    11:5, 14:5,
    73:24.
speeches
    63:4.
spend 81:15.
spending
    3:22.
spent 38:3,
    48:3, 62:21,
    66:11,
    66:18.
spirit 38:25.
splashed
    60:5.
spouses
    58:14.
spread 29:25.
spreadsheets
    63:7.
Spring 66:1.
spur 49:22.
square 62:1.
St. 1:27,
    62:10, 62:11,
    81:24.
staff 32:18.
stand 57:20,
    78:7.
standards
    45:23.
standing

25:8.
stands 26:12,
    65:12.
stark 4:9.
start 3:4, 8:2,
    18:21, 25:14,
    55:20.
starts 6:14,
    66:23.
State 55:9,
    58:17, 58:18,
    67:12,
    79:6.
stated 9:25,
    39:4, 57:18,
    70:18,
    78:13.
statement 7:4,
    11:6, 13:20,
    33:7,
    51:15.
statements 7:7,
    27:17, 53:5,
    53:17,
    59:22.
statistics
    56:3.
status 43:16.
statute 11:9,
    16:18, 17:3,
    36:4, 36:13,
    46:11, 47:3,
    47:12, 71:10,
    73:21, 79:13,
    83:1.
statutes
    16:5.
statutory 16:7,
    17:7, 18:4,
    19:14, 25:5,
    25:12, 35:23,
    36:15, 36:18,
    37:5, 37:14,
    37:17, 50:25,
    70:21, 78:14,
    78:19.
Ste 1:28.
steadfast
    65:12.
steal 22:18,

49:19,
    72:9.
stealing 14:2,
    26:3.
steals 22:13.
stenographic
    85:12.
step 12:16.
stipulated
    10:14.
stole 21:24,
    26:20, 32:21,
    41:8,
    48:10.
storage
    79:24.
stream 44:14.
Street 1:34.
strike 7:24.
strongest 65:9,
    65:10.
strongly 6:8,
    76:25.
struggled 4:15,
    62:18.
student 66:9.
studied 4:14.
studies 44:2.
study 55:21,
    55:23, 55:25,
    56:6.
stunning
    64:18.
subject 80:2.
submit 39:8,
    40:12, 42:11,
    47:6, 63:21,
    79:22.
submitted 7:3,
    44:2,
    61:24.
subset 45:17.
substance 79:7,
    79:9.
substantial
    12:23, 12:24,
    13:4, 13:16,
    13:18, 27:19,
    31:21, 56:10,
    58:10, 59:6,

75:16,
    75:22.
substantially
    35:18.
substitute
    15:9.
subverting
    26:10.
successful
    26:1.
suddenly
    60:5.
suffer 43:16.
suffered 60:9,
    74:14.
suffers
    74:17.
suffice
    55:13.
sufficient
    53:8,
    77:23.
suggest 23:25,
    40:3.
suggested
    43:24,
    66:18.
Suite 1:35.
summa 42:5.
summarize
    70:19.
Sunday 7:12.
Supervised
    15:7, 15:19,
    16:11, 16:12,
    16:13, 16:15,
    16:20, 17:17,
    18:13, 70:22,
    70:23, 71:1,
    71:14, 78:16,
    78:18, 80:18,
    84:25.
supervision
    78:24, 79:4,
    80:5.
supplemental
    7:11, 75:4.
support 5:3,
    7:7, 30:23,
    37:5, 37:15,

38:19, 61:24,
62:12,
63:25.
supported
36:4.
supporting
39:1.
supports 57:11,
71:20.
Supreme 5:21,
36:5, 36:9.
surely 54:22.
surprise
68:1.
surrender
81:12,
81:13.
survey 56:4.
susceptible
31:13.
suspended
79:8.
suspicion
80:4.
suspicious
73:14,
73:24.
sweetheart
33:24.
sympathetic
3:9, 81:10.
system 33:18,
40:2, 41:7,
42:16, 42:18,
45:16, 45:21,
45:22, 45:23,
47:6, 50:9,
51:3, 52:3,
52:21, 59:14,
67:23.
systematically
52:16,
63:12.
systems
29:23.
.
< T >.
T. 1:41,
85:16.

tab 50:17.
table 2:13,
4:19, 15:4,
15:17,
71:4.
talked 34:2,
48:22.
talks 43:5.
target 4:6,
39:23, 39:25,
44:23, 44:24,
45:3, 59:4,
59:5.
targeted 14:9,
39:15, 41:5,
44:24, 45:2,
45:16, 48:8,
59:3,
77:16.
targeting 5:6,
39:24, 40:1,
41:2, 47:15,
54:6, 57:4,
65:7, 77:19,
78:11.
task 38:14,
63:2,
63:14.
taxes 56:15.
taxpayer 9:16,
10:11, 10:12,
22:19, 26:2,
29:24, 30:14,
50:10,
73:15.
taxpayers
50:14, 52:1,
60:9, 60:11,
64:2, 64:6,
72:4, 72:19,
73:9,
77:17.
Taylor 68:23.
team 84:2,
84:3,
84:16.
technical
11:18.
temporarily
62:14.

ten 12:14.
tendency
68:19.
term 15:5,
15:7, 15:18,
15:19, 15:20,
16:12, 16:13,
16:15, 16:16,
16:25, 46:4,
65:4, 78:14,
78:17.
termination
81:9.
terms 25:11,
40:15, 41:13,
42:4, 43:1,
44:4, 46:8,
47:5, 49:8,
49:11,
76:13.
Terrific 8:19,
35:8.
testing 79:8.
thankful
38:9.
thankfully
3:25.
thanking
5:16.
THE CLERK 2:2,
2:20.
THE DEFENDANT
8:17, 8:20,
8:25, 51:12,
51:17.
theft 22:5,
22:8, 22:15,
35:15, 35:19,
75:8.
thefts 11:20,
29:20.
themselves
2:5.
Theodore
57:18.
They'll
44:12.
thinking 31:11,
44:9, 48:4,
78:6.

Third 9:13,
36:19, 74:14,
75:11.
thorough 4:8.
though 22:4,
23:3, 28:1,
40:12,
76:21.
thoughtfulness
62:2.
thousand 4:7,
13:17, 21:21,
25:8, 56:9,
59:20,
77:9.
thousands
22:18, 26:4,
30:6, 32:25,
33:3, 33:4,
34:3, 34:19,
41:18, 50:14,
52:16, 54:7,
57:9, 59:10,
61:7, 63:12,
66:5, 70:8,
70:10, 72:14,
73:9, 73:15,
77:17, 77:20,
78:12.
threat 9:17,
58:16, 76:14,
76:24.
threaten 58:11,
58:13.
threatened
60:17.
threatening
14:6, 59:3.
threats 58:17,
61:2.
three 7:16,
15:8, 16:12,
18:12, 28:16,
64:17, 70:24,
77:18,
80:18.
three-year
57:5.
throw 45:10,
45:14,

45:23.
throwing
  45:25.
TIGTA 2:13,
  11:11,
  11:19.
tip 29:6.
tirelessly
  59:11.
Title 3:3.
to-date
  77:10.
tolerated
  58:1.
tomorrow
  29:1.
tons 29:7,
  42:13.
took 4:16, 5:3,
  14:14, 27:22,
  36:21, 38:17,
  50:22, 60:25,
  72:13.
total 11:22,
  78:17.
totaling
  78:21.
totally
  48:21.
touches 70:5.
tough 84:14.
tracks 26:9.
trade 64:24.
traditional
  5:23.
training 64:1,
  64:22.
transactions
  73:20.
TRANSCRIPT
  1:16, 1:49,
  85:12.
transcription
  1:50.
transfer
  58:13.
transparency
  4:2, 52:6.
travel 38:22.
treason 68:5.

treasonable
  57:22.
treasury
  73:18.
treated
  14:17.
Treatment 81:7,
  81:9.
tremendous
  84:4.
trespassed
  14:5.
trial 20:1,
  20:14, 27:13,
  46:1,
  46:15.
tried 26:9,
  56:18,
  68:4.
troubled 40:25,
  49:12.
troubling
  47:7.
True 39:9,
  72:5, 75:1.
Trump 9:17,
  33:9, 34:9,
  39:20, 48:9,
  55:3, 55:12,
  56:21, 59:4,
  64:20, 66:1,
  72:21.
trust 10:10,
  26:3, 27:2,
  30:5, 32:21,
  37:19, 48:10,
  51:9, 52:14,
  52:20.
truth 33:23.
trying 20:10,
  20:13, 22:22,
  41:1, 48:15,
  48:17, 67:3,
  67:4,
  67:24.
Tucker 6:2.
turn 26:23,
  54:1.
turned 74:7,
  74:12.

Turning 6:25,
  12:4.
twice 65:7.
Two 3:19, 6:10,
  10:22, 11:3,
  11:10, 15:6,
  25:25, 28:4,
  28:6, 29:21,
  30:1, 30:16,
  47:19, 58:23,
  61:14, 64:17,
  65:14, 75:5,
  75:6, 75:13,
  76:11, 76:22,
  77:16.
two- 13:1,
  37:17,
  71:21.
two-level 10:8,
  10:14,
  10:25.
type 29:10,
  40:11, 44:3,
  64:23,
  72:22.
typically 3:5,
  19:17.
.
.
< U >.
Ultimately
  20:9, 21:17,
  23:4, 23:17,
  24:8, 25:9,
  30:17.
unable 38:22,
  83:5.
unauthorized
  3:1, 16:6,
  41:4, 41:5,
  41:8, 70:20,
  72:23.
unaware
  74:16.
unbreakable
  59:2.
uncertain
  76:13.
undercover
  50:22.

undermine
  31:7.
undermined
  27:1, 42:18,
  52:17.
understand
  20:12, 20:25,
  22:23, 24:7,
  28:10, 31:20,
  34:18, 45:20,
  46:12, 52:5,
  57:6, 61:13,
  62:7, 65:14,
  72:13, 76:7,
  76:9.
understanding
  17:22, 75:20,
  81:25.
Understood
  28:12.
undertake
  31:9.
undeserved
  67:16.
undoubtedly
  84:11.
unfair 7:22.
unfavorable
  41:6.
Unfortunately
  3:19, 33:8,
  49:16,
  84:4.
unglamorous
  63:7.
uniformly
  3:13.
uniquely
  31:12.
United 1:1,
  1:5, 1:18,
  1:43, 2:2,
  2:7, 2:12,
  3:3, 4:6,
  5:4, 5:7,
  33:5, 39:12,
  39:16, 39:23,
  39:24, 40:1,
  44:23, 45:3,
  45:4, 47:16,

50:18, 54:7,
57:5, 72:10,
73:10, 73:12,
77:20,
78:11.
unjust 67:14,
68:21, 69:4,
69:7, 69:11,
69:14, 70:3,
70:15.
unlawful 29:4,
58:7,
59:17.
unlawfully
60:13, 60:22,
61:7, 73:25,
74:4, 79:7.
unless 47:13.
unlike 74:3,
75:14.
unlimited
5:24.
unmasked 10:12,
26:2.
unparalleled
25:17,
59:17.
unpatriotic
57:21.
unprecedented
29:13,
45:15.
unreasonable
35:22, 35:25,
37:8.
unremarkable
6:7.
unscrupulous
14:4, 60:6.
unsuccessful
26:11.
unsuccessfully
41:1.
until 54:16,
68:9,
80:22.
unusual 29:16,
72:2, 72:7,
73:8.
unwarranted

53:22, 71:18,
75:24.
unwavering
3:15.
unwelcome
60:24.
unwillingness
19:5.
unwound 6:13.
upended
45:18.
upper 37:7.
upstanding
3:18.
upward 12:17,
12:19, 13:2,
13:13, 14:23,
15:3, 15:15,
17:6, 24:20,
24:22, 24:23,
25:2, 54:3,
54:9, 54:10,
54:14, 57:11,
59:6, 63:25,
65:18, 71:21,
75:21, 75:25,
77:13, 78:13,
78:14.
upwards
24:17.
urging 39:11.
USB 28:5.
useful 49:22.
using 10:4.
.
.
< V >.
v. 6:1, 6:2,
57:16,
73:17.
vacuum 70:6.
variance 24:19,
24:20, 24:22,
25:2, 29:14,
30:10, 36:3,
54:9, 54:13,
57:11, 59:7,
63:25, 65:18,
75:25, 77:13,
78:14.

variances
11:22.
variety 16:2.
various
55:22.
vary 24:17,
24:23.
verge 32:9.
Veritas 34:6.
version
83:20.
versus 2:3,
20:14, 43:25,
70:9,
73:13.
via 5:12, 5:15,
5:17.
viable 23:17.
Vice 58:11.
victim 7:7,
8:13, 13:20,
26:6, 29:2,
29:3, 33:6,
33:7, 33:16,
59:22, 60:16,
72:24.
victims 5:20,
14:10, 14:20,
26:19, 28:23,
32:7, 33:8,
33:15, 38:16,
46:5, 50:8,
53:24, 57:14,
59:23, 60:8,
61:1, 61:5,
85:3.
video 38:24.
view 64:23,
65:16, 65:19,
84:17.
viewed 9:17.
views 41:13,
67:22.
violate 52:16,
63:12, 64:18,
69:24, 74:12,
77:17.
violated 14:2,
14:9,
32:24.

violating
57:9.
violation 3:2,
33:3, 33:4,
56:9, 69:2,
80:4, 80:6.
violations
71:22.
volume 24:21,
28:17.
voluntarily
11:10,
61:14.
voluntary
81:11, 81:13,
81:17.
volunteer
79:15,
79:16.
volunteered
49:9, 49:11,
49:18.
vote 51:25,
55:7, 55:8,
69:18.
voted 58:14.
voting 65:11.
vs 1:8.
.
.
< W >.
W. 1:34.
wait 28:24,
37:12.
waive 82:21.
waived 82:18.
waives 82:22.
walk 46:4,
78:4.
walked 32:1.
wanted 35:12,
38:2, 38:15,
38:18,
73:2.
wants 84:25.
War 6:18,
6:21.
warn 79:25.
warranted
12:20,

17:23.
Washington
    1:10, 1:29,
    1:36, 1:46,
    30:21, 68:2,
    68:3, 68:7.
Waters 68:24.
Ways 5:14,
    6:11, 6:20,
    11:19, 14:18,
    49:21, 53:1,
    55:1, 56:8,
    59:12.
wealthiest
    52:2, 55:24,
    55:25,
    72:15.
wealthy 14:11,
    14:18, 33:11,
    55:19,
    72:21.
weaponize
    27:5.
Wednesday
    76:11.
week 5:12,
    6:13, 29:1,
    81:15,
    81:16.
weekend 7:14,
    35:22, 36:8,
    38:7.
weigh 65:18.
weighed
    74:15.
weighing
    54:8.
West 1:35,
    6:12.
Whatever 5:8,
    20:16, 27:9,
    63:21,
    68:17.
whereas 19:3.
Whether 20:1,
    21:20, 21:21,
    23:20, 25:7,
    25:10, 31:18,
    43:23, 54:14,
    69:16,

77:7.
Whiskey 68:3.
White 55:22.
whole 52:1,
    68:9.
wholeheartedly
    59:21.
whom 28:19,
    59:11.
wife 13:25,
    14:7.
willfully
    10:16,
    64:17.
willing
    81:11.
willingly
    30:7.
willingness
    70:3.
Wilson 1:39,
    2:22, 2:24,
    82:10.
Wing 6:12.
wish 3:11,
    32:7, 32:11,
    83:22.
Within 23:1,
    25:12, 27:19,
    27:20, 28:13,
    28:14, 75:17,
    80:14, 80:20,
    82:1, 83:2,
    83:3.
Without 21:11,
    21:12, 24:17,
    58:6, 58:7,
    62:16, 64:3,
    79:18,
    83:7.
witnesses 8:11,
    8:14.
won 55:15.
words 21:6,
    24:3, 61:9.
work 21:12,
    38:8, 38:10,
    42:15, 43:20,
    62:16, 63:1,
    63:5, 64:19,

68:1, 68:22,
    84:5.
worked 4:20,
    42:19,
    84:3.
working 57:6,
    62:11,
    62:15.
works 14:18.
worse 14:17.
worst 3:7,
    3:10.
worth 26:14,
    64:24,
    84:17.
write 38:17,
    72:20.
writing
    63:10.
wrote 13:20,
    66:8,
    69:25.
.
.
< Y >.
year 16:14,
    16:17, 17:1,
    29:2.
Years 16:7,
    16:12, 16:14,
    16:24, 17:1,
    18:12, 25:25,
    29:21, 30:4,
    42:19, 44:1,
    55:17, 62:9,
    62:21, 64:2,
    64:17, 67:22,
    68:25, 70:21,
    70:24, 70:25,
    71:9, 73:5,
    75:13, 77:18,
    80:18.
Yeoman 38:10.
Yesterday 4:17,
    7:17.
yielded 25:4,
    30:16.
York 56:14,
    72:11,
    72:19.

young 38:8.
yourself 25:23,
    52:23, 66:21,
    83:20,
    83:21.
.
.
< Z >.
zero 6:9, 12:6,
    35:19.
Zone 15:4,
    15:5, 15:11,
    15:16, 15:17,
    71:4.