UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 23-cr-343-ACR |
| ) | |
| CHARLES EDWARD LITTLEJOHN, ) | |
| ) | |
| Defendant ) | |
| ) | |

## STATEMENT OF UNRECORDED PROCEEDINGS

On Tuesday, October 10, 2023, Judge Reyes's Courtroom Deputy emailed the parties: "The judge would like to meet with you, either in chambers or via zoom video, off the record and before Thursday. Would you be available at a time on tomorrow?" Based on the parties' responses as to their availability, the Courtroom Deputy set the meeting for Wednesday, October 11, 2023, at 2:00 p.m. in Judge Reyes's Chambers. Judge Reyes was present with her law clerk, along with government counsel, Jennifer Clarke and Lauren Castaldi, and defense counsel, Lisa Manning. Mr. Littlejohn was not present.

Judge Reyes began the meeting by explaining that she had convened counsel for the parties because she had questions about the case and Mr. Littlejohn's plea agreement. She expressed that she was perplexed as to why the government had allowed Mr. Littlejohn to plead to a single count of unauthorized disclosure of taxpayer information when he had stolen the tax records of a sitting president and thousands of other taxpayers. She asked the government whether there would be a separate, future case with additional charges and, if not, why not. The government lawyers stated that this would be the only federal criminal case against Mr. Littlejohn for the conduct described in the Information and Statement of Facts and that the government believed it was a just resolution of the case. The government lawyers also noted that requiring Mr. Littlejohn to plead to multiple

1

counts of the same offense would not change the calculation of his total offense level under the Sentencing Guidelines. Judge Reyes responded that, given the nature and extent of the conduct, she still would have expected multiple charges and a much higher possible sentence—at one point, referencing 20 years. Judge Reyes explained in strong language that she did not understand why Mr. Littlejohn, after having engaged in premeditated and repeated criminal conduct, had been allowed to plead to one count with a statutory maximum of five years. She compared Mr. Littlejohn's plea offer to those of defendants in the January 6 cases who led otherwise law-abiding lives and faced decades in prison for committing a single, brief offense.

Judge Reyes asked the government to explain why the plea agreement did not include more counts and a higher statutory maximum penalty. The government lawyers outlined the timing of their investigation and Mr. Littlejohn's cooperation, explaining that DOJ had concerns about possible statute of limitations issues had he not come forward and agreed to plead guilty. The government lawyers also noted that Mr. Littlejohn had provided an extensive proffer fully accepting responsibility and explained that, in such cases, it was within standard DOJ practice to make a one count plea offer pre-indictment in cases that would otherwise be charged as multiple counts. After hearing this information, Judge Reyes indicated that she was still troubled by the plea—again emphasizing the fact that Mr. Littlejohn had stolen the tax returns of a sitting President. She ended the meeting by suggesting that defense counsel may wish to convey to her client the court's views of his conduct, and stated that she would see the parties the following day. This meeting/hearing was neither transcribed nor recorded.

The morning of the scheduled plea hearing, October 12, 2023, at 10:57 a.m., Judge Reyes's law clerk emailed government and defense counsel stating:

> At this afternoon's plea hearing, Judge Reyes plans to ask, as part of the factual basis for the plea, who the high-ranking public official was, to name any others,

2

> and the news organization. She will also ask for names of some of the private individuals and the second news organization. If the parties have an issue with this approach, please let us know, and we can schedule a phone conference to discuss between 12:30 and 1:30 p.m. today.

In response, at 11:25 a.m., counsel for each party jointly requested "the opportunity to discuss this matter in advance of the hearing this afternoon." The law clerk responded by email at 11:31 a.m. that the court would "schedule a call for 1 p.m., and it will be off the record[,]" and that the Courtroom Deputy would "circulate the dial-in information shortly." Soon thereafter, at 12:08 p.m., the Courtroom Deputy emailed a Zoom link to government and defense counsel for a videoconference from 1:00 to 1:45 p.m.

Present at the Zoom conference were government attorneys Jennifer Clarke and Lauren Castaldi, and defense counsel, Lisa Manning. Mr. Littlejohn was not present. Judge Reyes began the videoconference by stating that, during the plea hearing, she planned to ask Mr. Littlejohn the names of the victims of his crimes and she expected him to answer. Ms. Castaldi responded that the government had concerns about this approach because the victims had a right to privacy under the Crime Victims' Rights Act. Judge Reyes questioned the government about the applicability of the Act in a case that was already very public. She stated that the parties would not be able to get through the plea and sentencing without Mr. Littlejohn admitting to his conduct and who he had harmed. Judge Reyes also stated it did not make sense for the government to be so focused on privacy when the victims' names were all over the news, especially the fact that the media had already reported that the crime involved a sitting President. The government lawyers responded that the charge and privacy considerations would be the same regardless of the identity of the victim.

Judge Reyes asked whether she would be violating the Crime Victims' Rights Act if she asked Mr. Littlejohn to list the names of his targeted victims during the plea colloquy. Counsel

3

for both parties responded that they each wanted to make sure that they fully complied with the Crime Victims' Rights Act. Ms. Castaldi added that, based on her conversations thus far with victims of the ProPublica leak, she understood that most of them wanted to keep the matter private and not receive any additional publicity. Judge Reyes then asked whether the "Public Official" victim, former President Donald Trump, also wanted his name withheld. She directed government counsel to add one of Mr. Trump's lawyers to the Zoom conference. The government was unable to do so, but Ms. Castaldi indicated that she would try to contact President Trump's lawyer, Alina Habba, as soon as possible, and stated that Ms. Habba planned to be present at the plea hearing. The Zoom conference was neither transcribed nor recorded.

After the Zoom hearing, government counsel contacted counsel for President Trump, Alina Habba. At 1:44 p.m., government counsel relayed to Judge Reyes's chambers in an email that Ms. Habba did not object to Mr. Trump being identified in the hearing and "also said she would like to make a brief statement at the appropriate time."

On January 10, 2024, Judge Reyes's law clerk emailed counsel for both parties:

> In your sentencing briefs, Judge Reyes would like you to address whether, for sentencing purposes, the Court is legally entitled to consider the number of tax returns the Defendant stole. If the Defendant's position is that his sentence should be the same regardless of whether one or 1,000 tax returns were stolen, please provide specific support for that proposition. Judge Reyes is interested in whether she can take the number of tax returns stolen into account in considering a variance or upward departure.

On January 18, 2024, Judge Reyes's law clerk emailed counsel: "Could the parties please provide a more precise number for the number of individuals and entities whose tax returns were stolen (beyond just 'thousands')?" On January 19, 2024, government counsel, after coordinating the language of the response with defense counsel via phone and email, responded:

> The Court asked us for the number of tax returns stolen by Mr. Littlejohn. Because he copied the records from an IRS database using queries that produced large

4

tranches of tax data (rather than pulling specific records), the answer to the exact number of returns stolen is difficult to determine. Based on the government's analysis of IRS data and material recovered through Mr. Littlejohn's cooperation, the number of individuals and entities whose annual income tax returns were stolen is approximately 8,000. That would include about 7,600 individuals and slightly over 600 entities.

26 USC § 6103(b) broadly defines "return" as "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed" and defines "return information" as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." Using these definitions, the data stolen by Mr. Littlejohn included "returns" and "return information" for approximately 18,000 individuals and 73,000 businesses whose information was, in some form, linked to the above-referenced 8,000 taxpayers.

On January 23, 2024, at 9:31 p.m., Sean Clerget, Chief Oversight Counsel for the U.S. House of Representatives Committee on Ways and Means, emailed chambers a letter from Republican members of the committee regarding Mr. Littlejohn's sentencing. The letter is attached here as Exhibit A and publicly available.[1]

The next day, January 24, 2024, at 4:24 p.m., Judge Reyes's law clerk responded to Mr. Clerget's email:

> Judge Reyes asked that I thank you for forwarding this correspondence. Please convey to the Members that Judge Reyes is carefully considering all of the information she receives concerning this matter and appreciates them taking the time to convey their unique perspective.

---

[1] https://waysandmeans.house.gov/2024/01/24/ways-means-republicans-throw-the-book-at-irs-leaker/

Further, if neither the Committee nor the parties in this case object—and please confirm there are no objections before sending—please reply to this email with the November 8, 2023 Letter (from the Committee to DOJ) and the January 17, 2024 letter (from DOJ to the Committee) referenced in the correspondence.

At 5:07 p.m., Judge Reyes's law clerk sent an email to counsel for both parties concerning victim impact statements and Mr. Littlejohn's potential prison report date. The email stated:

1. We receive the attached victim impact statement in the mail this week, which we have redacted. Do the parties have a recommendation on what to do with this letter (and other letters we may receive this week)?

2. Given the health status of Mr. Littlejohn's father, please let the Court know whether, if Mr. Littlejohn is sentenced to a term of incarceration, he would request a delay in the reporting date for when his term of incarceration would begin.

Later that evening, at 8:54 p.m., government counsel responded to Mr. Clerget's email including chambers and defense counsel, "We do not object to the Committee sharing the two letters described in your below email."

At 8:59 p.m., the government responded to the law clerk's email about the victim impact statements:

Thank you for sharing that letter – we received it as well. As to that letter and other victim impact statements we have received, we would propose filing them under seal on the docket and also redacting identifiers associated with victims who wish not to share their names. In addition, we wanted to let you know that at least one victim does intend to speak at the sentencing hearing.

The next day, on January 25, 2024, at 12:00 p.m., defense counsel replied to Mr. Clerget's email including chambers and government counsel:

On behalf of Charles Littlejohn, we respectfully object to the January 23, 2024 Letter from the Republican Members of the Committee on Ways and Means, and to any other similar submissions to the Court in this case. The Republican Members of the Committee on Ways and Means are not parties to Mr. Littlejohn's case, nor are they victims. If, as a third party, they wish to submit their views in support of the government's sentencing position, they should be required, under Local Rule 7, to move the Court for leave to file an amicus brief. Local Rule 7(2) requires that motions by amici "*shall concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why an amicus brief*

6

*is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case.*" The Rule also requires the movant to first confer with each party in the case as to their position on the motion for leave to file the brief and, once filed, allow the parties 14 days to respond. Here, a third party should not be allowed to circumvent this rule by submitting argument to the Court, outside of the docket, days before sentencing, and not affording Mr. Littlejohn (or others) adequate chance to respond.

While the Court has broad discretion to consider sentencing materials properly submitted by the prosecution, defense, and probation, the Guidelines and Federal and Local Rules do not provide for consideration of advocacy and/or information submitted outside of the judicial record. *See, e.g.* FRCP 32 and Local Rule 32.2. It is improper for a third party to try to influence the Court in this way—especially where the third party is an entirely partisan group from the legislative branch that has also publicized its correspondence to the Court. *See* "*Ways & Means Republicans: 'Throw the Book' at IRS Leaker*" (Jan. 24,2024), available at https://waysandmeans.house.gov/ways-means-republicans-throw-the-book-at-irs-leaker/

Mr. Littlejohn should be treated like any other defendant who comes before this Court for sentencing. He pled guilty to one count of unauthorized disclosure of tax records pursuant to a pre-indictment plea agreement and is before the Court to be sentenced for that offense. The media and political interest in this case do not give license to Members of Congress, or any other third party, to try to improperly insert their political agenda into the sentencing process. There is no basis here for the Court to stray from its customary Rules and Procedures.

For these reasons, it is, respectfully, our position that the Court should disregard the January 23, 2024 Letter from the Republican Members of the House Committee on Ways and Means and any additional related submissions.

At 4:05 p.m., defense counsel responded to the law clerk's email about victim impact statements and a prison report date:

1. We have no objection to filing the victim impact statements under seal. As that likely means that I will not receive a copy through ECF, I would ask that the government kindly email the redacted statements to me when they are filed. We also thought it prudent to bring to the Court's attention that one of the victims in the case, Kenneth Griffin, recently served Mr. Littlejohn with a deposition subpoena (attached) in his pending civil suit against the IRS and Treasury Department, and that Mr. Griffin's counsel have indicated that they may add Mr. Littlejohn as a defendant to the lawsuit. I have previously notified the government of this litigation.

2. Mr. Littlejohn greatly appreciates the Court's consideration of his father's health

7

situation. To afford Mr. Littlejohn more time with his father, I intend to ask the Court at Sentencing to allow Mr. Littlejohn to self-report at a later date directly to the Federal Correctional Institution to which he is designated.

The next day, on January 26, 2024, at 1:08 p.m., defense counsel emailed government counsel and chambers stating that, due to serious health issues, Mr. Littlejohn's mother and stepfather would "no longer be able to travel to Washington to support Charles at sentencing or be able to update his father and stepmother on the proceedings." Defense counsel asked whether it was "possible for the Court to set up a private videoconference link on Monday so that Charles' parents and stepparents may at least be there remotely." Defense counsel had conferred with the government and it did not object to the request. In response, at 1:31 p.m., Judge Reyes's law clerk responded, "We are sorry to hear that and wish [his mother] a speedy recovery. Yes, Mr. Littlejohn's parents and stepparents may watch remotely. There may be some technical limitations with the viewing angle of the Courtroom, but I've copied my colleague . . . who will be able to coordinate the link."

At 3:58 p.m., Judge Reyes's law clerk emailed the parties asking when the government would be filing the victim impact statements, stating, "Judge Reyes is interested in reviewing them today." At 4:18 p.m., government counsel emailed the law clerk and chambers "the final sealed and redacted set of victim impact statements." The government indicated that it would send the law clerk a copy of the unredacted filing *ex parte*.

At 4:24 p.m., Mr. Clerget replied to his email correspondence: "We disagree with defense counsel's objection and characterization of our letter, but we will take no further action unless the court requests it." The defense was not privy to any further correspondence between chambers and Mr. Clerget.

Shortly thereafter, at 6:27 p.m., Judge Reyes's law clerk emailed the parties:

> The Court has reviewed the victim impact statements filed by the Government, and Judge Reyes plans to quote from some of them at the hearing—without, of course, using any identifying information. Mr. Jacobson, please let us know if there is any objection to that.
>
> And Ms. Manning, as the Court explained previously, Judge Reyes also plans to quote from the letters submitted on behalf of Mr. Littlejohn, again without using any identifying information.

On the afternoon of January 27, 2024, at 1:36 p.m., Judge Reyes's law clerk sent the following email to counsel for both parties:

> The Judge is interested to hear your views on Monday on the following question: is it *per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility. We have identified the following outside Circuit decisions, which you should be prepared to address. If there are other cases you wish to bring to the Court's attention please have hard copies available for the Court and opposing counsel on Monday. If possible, please give opposing counsel some time with any cases in advance of the hearing.
>
> The Judge has not made a sentencing decision and will of course hear all argument on the appropriate sentence, including the appropriate impact of Mr. Littlejohn's cooperation and acceptance of responsibility. She asked that I send this particular question in advance so that you can conduct your own legal research if you so choose.

Attached to the email were copies of *United States v. LePage*, 477 F.3d 485 (7th Cir. 2007), *United States v. Ortiz Alvarez*, 821 F. App'x 305 (5th Cir. 2020), and *United States v. Helton*, 370 F. App'x 709 (7th Cir. 2010). The government subsequently filed Government's Notice Concerning Sentencing, ECF No. 32, which purported to answer the court's question.

In response to the Government's Notice Concerning Sentencing, ECF No. 32, Judge Reyes's law clerk emailed counsel for the parties on the afternoon of January 28, 2024, at 3:28 p.m.:

> With respect to the Government's Notice Concerning Sentencing, Dkt. 32, the Court did not authorize this filing. The Judge has not reviewed this brief. The Court made clear how it wanted the question answered, which was at the hearing on Monday. Ms. Manning, if you would like to respond via a filing today, you are of

9

> course free to do so. If you would prefer instead for the Judge to not review the brief and make clear on the record tomorrow that she has not done so, please let me know that. Neither option will affect the Court's ultimate decision.

Defense counsel responded that evening, at 6:19 p.m.:

> On behalf of Mr. Littlejohn, we will stick with our plan to address the Court's *per se* reasonableness question at the hearing tomorrow. We defer to the Court as to the disposition of the Government's filing. We note that if the Notice Concerning Sentencing remains on the record, we will separately ask the Government to correct one of the factual statements made in the filing.

Judge Reyes's law clerk replied at 7:01 p.m.: "The Judge won't review the filing and will order it stricken tomorrow."

On the morning of the sentencing hearing, January 29, 2024, at 6:51 a.m., defense counsel emailed chambers asking for remote access to the sentencing hearing for additional family members, including his stepmother, three siblings, and an uncle, which the court allowed.

On April 15, 2024, at 1:47 p.m., Judge Reyes's law clerk emailed counsel for both parties:

> The Court understands that Mr. Littlejohn has a voluntary surrender date of May 1, 2024. The Court is sympathetic to Mr. Littlejohn's family situation. If there are extenuating circumstances that justify a later voluntary surrender date, the Court would quickly consider a motion filed by Mr. Littlejohn to push back the voluntary surrender date. If there is health information involved, Mr. Littlejohn may file the motion under seal.

On April 18, 2024, at 3:22 p.m., defense counsel responded declining the court's invitation to request a delayed report date. Defense counsel added, "If, at any point in the future, the Judge would be willing to consider a motion for a reduction in his period of incarceration and/or other sentencing alternatives, I would, of course, be happy to submit such a request to the Court." At 3:56 p.m., Judge Reyes's law clerk replied: "Judge Reyes would consider any such motion at an appropriate time. In particular, if Mr. Littlejohn would like a limited release to attend a family member's final days or funeral, the Judge would rule quickly on such a request, although we cannot guarantee what [the Bureau of Prisons] would do."

Mr. Littlejohn respectfully requests that the Court settle and approve the above statement to be included by the district clerk in the record on appeal.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
CELIA GOETZL
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
